

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>          Plaintiff,<br>    v.<br><br>APPLE INCORPORATED,<br>          Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-CV-1375-DMS-MDD<br><br>**PROTECTIVE ORDER GOVERNING CONFIDENTIAL MATERIAL**<br><br>Judge: Hon. Dana M. Sabraw<br><br>Magistrate Judge:  Hon. Mitchell D. Dembin |

Pursuant to the Parties' joint request to enter the foregoing Order and to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, adequately protect confidential materials, and ensure that protection is afforded only to material so entitled, and for good cause shown, pursuant to Fed. R. Civ. P. 26(c), it is hereby ORDERED THAT:

**1.    PURPOSE AND LIMITATIONS**

1.1    Protected Material designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" under the terms of this Protective Order shall be used by a Receiving Party solely for the above-captioned cases and all related appeals, and shall not be used directly or indirectly for any other purpose whatsoever, except as expressly provided for herein and/or agreed to by the producing party.

1.2    Nothing in this Protective Order shall be construed to require a Producing Party to produce or disclose information not otherwise required to be produced under the applicable rules or orders of the Court. Production or disclosure of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" information under this Protective Order shall not prejudice the right of any Producing Party making that production or disclosure to maintain the trade secret status or confidentiality of that information in other contexts. Similarly, no Producing Party waives any right to object on any ground to the admissibility of any of the Discovery Material, or portion thereof, covered by this Protective Order.

1.3    Disclosure and discovery activity in this Action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the Parties hereby stipulate to and

petition the Court to enter this Protective Order. The Parties acknowledge that this Protective Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

## 2. DEFINITIONS

2.1   Action:  *Qualcomm Incorporated v. Apple Inc.*, Case No.  3:17-CV-1375-DMS-MDD.

2.2   Challenging Party:  a Party or Non-Party that challenges the designation of information or items under this Protective Order.

2.3   Chip-Level Schematics:  include electronic drawings and symbolic representations that describe or depict digital or analog electrical or electronic circuits within integrated circuit chips.

2.4   "CONFIDENTIAL" Information or Items:  information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).  A Producing Party may designate any Disclosure or Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

2.5   Counsel (without qualifier):  Outside Counsel of Record and House Counsel (as well as their support staff).

2.6   Designating Party:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE."

2.7   Disclosure or Discovery Material:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including,

among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.8    Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its Outside Counsel of Record to serve as an expert witness or a litigation consultant in this Action (including any necessary support personnel of such person to whom disclosure is reasonably necessary for this litigation), and who is not a current employee of a Party or of a competitor of a Party, and who, at the time of retention, is not anticipated to become an employee of a Party or of a competitor of a Party.

2.9    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:  "Confidential Information or Items" that contain or reflect information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party. The Parties agree that the following information, if non-public, shall be presumed to merit the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation: trade secrets, pricing information, financial data, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

2.10 "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" Information or Items:  extremely sensitive "Confidential Information or Items" that include Source Code (as defined below) or Chip-Level Schematics (as defined above), disclosure of which to another Party or Non-Party would create a substantial risk of serious competitive harm that could not be avoided by less restrictive means.  Nothing in this Protective Order shall be construed as a representation or admission that Source Code or Chip-Level Schematics are properly

discoverable in this Action, or to obligate any Party to produce any Source Code or Chip-Level Schematics.

2.11   House Counsel:  attorneys who are employees in the legal department of a Party in this Action and who have responsibility for managing this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.12   Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

2.13   Outside Counsel of Record:  attorneys who are not employees of a Party to this Action but are retained to represent or advise a Party in connection with this Action and have entered an appearance on behalf of that Party in this Action, as well as other attorneys or support staff employed by the same firm as one of the attorneys who has entered an appearance on behalf of one of the Parties in this Action, to whom it is reasonably necessary to disclose the information for this Action.

2.14   Party:  any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.15   Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.16   Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.  For the avoidance of doubt, Professional Vendors does not include professional jury or trial consultants or mock jurors.

2.17   Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", or as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE", as provided for in this Protective Order.

2.18   Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

2.19   Relevant Technology: technology related to (a) envelope tracking for use in wireless communications; (b) carrier aggregation for use in wireless communications; (c) the boot process for a modem processor, including flashless boot processes; (d) reducing power consumption over any interface (including, e.g., a PCI bus) between an application processor and modem processor in a mobile device; (e) mixed-precision graphics processing; (f) power level shifting in memory versus logic circuit areas; (g) power saving modes relating to powering down portions of processors when not in active use; and (h) conserving power while making moving into and out of power saving modes quicker and with minimal processing delay.

2.20   Source Code:  includes human-readable programming language text that defines software, firmware, (collectively, "software Source Code") and integrated circuits ("hardware Source Code").   Text files containing Source Code shall hereinafter be referred to as "Source Code files."  Software Source Code files shall include, but are not limited to, files containing Source Code in "C," "C++," BREW, Java ME, J2ME, assembler, digital signal processor (DSP) programming languages, and other human readable text programming languages.  Software Source Code files further include ".include files," "make" files, "link" files, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, micro-controller, or DSP.  Hardware Source Code files include, but are not limited to, files containing Source Code in VDHL, Verilog, and other Hardware Description Language ("HDL") formats, including but not limited to, Register Transfer Level ("RTL") descriptions.

## 3.   SCOPE

3.1   The protections conferred by this Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted

from Protected Material; (2) all copies, excerpts, summaries, derivations or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

3.2    Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Protective Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material. Notwithstanding the foregoing, a Producing Party may not disclose its own Protected Material to the extent such Protected Material is also the Protected Material of any other party (*e.g.*, settlement discussions and agreements containing confidentiality obligations), without the prior written consent of such other party, unless compelled to do so by a Court of competent jurisdiction.

3.3    Nothing in this Protective Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party that is: (i) in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Protective Order, including becoming part of the public record through trial or otherwise; (ii) known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party; (iii) previously produced, disclosed and/or provided by the Designating Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Designating Party; or (v) pursuant to order of the Court.

3.4    Nothing in this Protective Order shall restrict a Producing Party's use or disclosure of Discovery Material it produces that is designated as Protected Material

by another Party or Non-Party, if it was previously disclosed, produced, or provided by the Designating Party to the Producing Party.

3.5  Nothing in this Protective Order shall be construed to preclude any Party's right to file any Protected Material with the Court under seal. This Protective Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Protective Order in any way, including, without limitation, an order that certain matter not be produced at all.

## 4.  DURATION

4.1  Even after final disposition of the Action, the confidentiality obligations imposed by this Protective Order shall remain in effect until a Designating Party agrees otherwise in writing, a court order otherwise directs, or that information otherwise becomes public.  Final disposition occurs after an order, mandate, or dismissal finally terminating the above-captioned Action with prejudice, including all appeals.

## 5.  DESIGNATING PROTECTED MATERIAL

5.1  Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates Discovery Materials for protection under this Protective Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

5.2  Mass, indiscriminate, or routinized designations are prohibited except as provided specifically in this order or any federal statute or regulation.

5.3  If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.4  Manner and Timing of Designations.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it

meets the requirements for such designations as provided for herein: "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE." Except as otherwise provided in this Protective Order (*see, e.g.*, Section 5.5), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Protective Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Protective Order requires:

> (a)    For information in documentary form (e.g., paper or electronically stored information ("ESI"), but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" to each page that contains protected material and also, for ESI, in the metadata field assigned to indicate the confidentiality designation.[1]

> (b)    A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or, in the case of Source Code or Chip-Level Schematics, "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE." After the inspecting Party has identified the

---

[1]   This section does not require the Producing Party to produce its Source Code in any particular documentary or ESI format. The production of Source Code is governed by Section 8 below.

documents it wants copied and produced, the Producing Party must determine which documents qualify for protection under this Protective Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL –– OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE") as set forth in the preceding paragraph.

(c) For electronic files and documents produced in native electronic format, that the Producing Party append to the file names or designators information indicating whether the files contains "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material, or shall use any other reasonable method for so designating Protected Materials produced in electronic format. When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an Expert, the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file.

(d) For testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify, either verbally on the record or in a writing served on all Parties and the court reporter within 14 days after the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection shall be covered by the provisions of this Protective Order. If no indication on the record is made, all information disclosed during a

deposition shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed, until the time within which it may be appropriately designated as provided for herein has passed. Any Party that wishes to disclose the transcript that has been deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" as a result of no designation having been made on the record at the time the testimony was given, or information contained therein, may provide written notice of its intent to treat the transcript as non-confidential, after which time, any Party that wants to maintain any portion of the transcript as confidential must designate the confidential portions within fourteen (14) days, or else the transcript may be treated as non-confidential. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order.

(e)     Each Party shall give the other Party notice if it reasonably expects a deposition, hearing or other proceeding to include Protected Material so that the other Party can ensure that only authorized individuals are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."

(f)     Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as

Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements.

(g)     In the event the video of a deposition is recorded, the original and all copies of the recording shall be marked by the video technician to indicate that the contents of the recording are subject to this Protective Order, substantially along the lines of "This recording contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the Parties."

(h)     Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, Outside Counsel of Record for other Parties, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

(i)     For all other information or tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the label   "CONFIDENTIAL,"   "HIGHLY   CONFIDENTIAL   –   ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE."

5.5     Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the

Designating Party's right to secure protection under this Protective Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Protective Order. Following a correction of a designation, the Producing Party shall provide re-labeled copies of the information or items to each Receiving Party reflecting the change in designation.

## 6.   CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1   Timing of Challenges.   Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2   Meet and Confer.   The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific section of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient) within fourteen (14) days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it

has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3    Judicial Intervention.  In the event of a dispute over a confidentiality designation under this Protective Order, a Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof.  Any motion brought by a Challenging Party pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding section.

6.4    The burden of persuasion in any challenge proceeding shall be on the Designating Party. Unless the Designating Party has waived the confidentiality designation by failing to file a response to a motion to challenge confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

## 7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles.  All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function. Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Protective Order or another Order of this Court. When the litigation has been terminated, a Receiving Party must comply with the provisions of Sections 4.1, 14.5 and 15.1 herein.  Nothing herein shall prevent the Parties from entering into an agreement for the cross-use and/or coordination of discovery materials in this Action and any other action.

7.2    Patent Prosecution Bar.  Absent the written consent of the Producing Party, any person who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" information shall not be involved, directly or indirectly, in any of the following activities:  (i) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to Relevant Technology, before any foreign or domestic agency, including the United States Patent and Trademark Office; and (ii) the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to Relevant Technology.  These prohibitions are not intended to and shall not (i) preclude Counsel from participating in proceedings on behalf of a Party challenging the validity of any patent or on behalf of a Party responding to a challenge to the validity of a patent, or (ii) preclude Counsel from participating directly or indirectly in reexamination, inter partes review, covered business method review, or reissue proceedings on behalf of a patentee.  These prohibitions shall begin when the affected individual first receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials until two (2) years after the date the affected individual ceases to have access to the materials.

(a)    Development Bar. Absent the written consent of the Producing Party, any Outside Counsel of Record or Expert who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" information shall not be involved in performing hardware or software development work or product development work directly or

indirectly intended for commercial purposes relating to Relevant Technology.  These prohibitions shall begin when the affected individual first has access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials until two (2) years after the date the affected individual ceases to have access to the materials.

7.3    Secure Storage, No Export.  The Parties acknowledge that certain Protected Material may be subject to U.S. government export control and economic sanctions laws.   To the extent required by such regulations or laws, including the U.S. Export Administration Regulations, Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order.   The Receiving Party shall ensure compliance with all applicable U.S. export control and economic sanction laws, and may not engage in the prohibited or restricted export, re-export, transport, transfer, or release of Protected Material without prior authorization by the Producing Party and the U.S. government, to the extent required by law.

7.4    Legal Advice Based on Protected Material. Nothing in this Protective Order shall be construed to prevent Counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided Counsel does not disclose the Protected Material itself except as provided in this Protective Order.

7.5    Disclosure of "CONFIDENTIAL" Information or Items.   Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record, and any copying or clerical litigation support services working at the direction of

such Outside Counsel of Record or employees thereof (1) who do not provide commercial advice (as opposed to legal advice) to the Receiving Party and (2) to whom it is reasonably necessary to disclose the information for this litigation;

(b)    Five (5) or fewer House Counsel identified and agreed upon between the Parties prior to any disclosure, (1) to whom disclosure is reasonably necessary for this litigation, (2) who are not involved in competitive decision-making (as opposed to legal advice), as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and (3) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), as well as their support staff to whom disclosure is reasonably necessary, provided that such support staff are not involved in competitive decision-making and have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)    Experts (as defined in this Protective Order) retained by the Receiving Party to whom disclosure is reasonably necessary for this litigation provided that (1) such Expert has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); (2) such Expert has no involvement in competitive decision-making (as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)) for the Receiving Party; (3) to the extent required by U.S. government export control and economic sanctions laws, including the U.S. Export Administration Regulations, such Expert accesses the Protected Material in the United States only, and does not transport such Protected Material to or access them from any foreign jurisdiction; and (4) no unresolved objections to such disclosure exist after proper notice has been given to

all Parties as set forth in Section 7.9;

(d)     professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);[2]

(e)     the Court and its personnel;

(f)     court reporters and their staff to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)     during their testimony or in preparation for their testimony, witnesses in this Action and their counsel to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Such disclosure may only occur for the purpose of assisting the preparation or examination of the witness;

(h)     the Designating Party or its employees, the author or recipient of a document containing the information, or a custodian or other person who otherwise possessed or knew the information;

(i)     any mediator who is assigned to hear this Action, and his or her staff, subject to the agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(j)     any other person with the prior written consent of the Designating Party.

---

[2]     To the extent that Protected Material is disseminated to mock jurors for the purpose of a limited duration mock jury exercise, the disseminating party shall take care to collect, destroy, and prevent the external use or collection of another party's Protected Material by any mock jurors.

7.6    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a)    the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record, and any copying or clerical litigation support services working at the direction of such Outside Counsel of Record or employees thereof (1) who are not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), (as opposed to legal advice) on behalf of a Party or a competitor of a Party, and (2) to whom it is reasonably necessary to disclose the information for this litigation;

(b)    Experts (as defined in this Protective Order) of the Receiving Party, retained to assist in this Action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (1) such Expert has agreed to be bound by the provisions of the Protective Order by signing a copy of "Acknowledgement and Agreement to Be Bound" (Exhibit A); (2) such Expert is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (3) to the extent required by U.S. government export control and economic sanctions laws, including the U.S. Export Administration Regulations, such Expert accesses the Protected Material in the United States only, and does not transport such Protected Material to or access them from any foreign jurisdiction; and (4) no unresolved

objections to such disclosure exist after proper notice has been given to all Parties as set forth in Section 7.9.

(c)     professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);[3]

(d)     the Court and its personnel;

(e)     court reporters and their staff to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)     the Designating Party or its employees, the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(g)     any mediator who is assigned to hear this Action, and his or her staff, subject to the agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(h)     any other person with the prior written consent of the Producing Party.

7.7     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" Information or Items.  To the extent production of Source Code or Chip-Level Schematics becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code or Chip-Level Schematics as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code or Chip-Level Schematics.  Nothing in this Protective Order shall be

---

[3]  To the extent that Protected Material is disseminated to mock jurors for the purpose of a limited duration mock jury exercise, the disseminating party shall take care to collect, destroy, and prevent the external use or collection of another party's Protected Material by any mock jurors.

construed as a representation or admission that Source Code or Chip-Level Schematics are properly discoverable in this Action, or to obligate any Party to produce any Source Code or Chip-Level Schematics. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, Discovery Material designated as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be subject to the provisions set forth in Section 8 below, and may be disclosed, subject to Section 8 below, solely to:

(a)     the Receiving Party's Outside Counsel of Record in this Action, as well as such Outside Counsel of Record's immediate paralegals and staff and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff (1) who is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), (as opposed to legal advice) on behalf of a Party or a competitor of a Party and (2) to whom it is reasonably necessary to disclose the information for this litigation;

(b)     Experts (as defined in this Protective Order) of the Receiving Party, retained to assist in this Action, provided that disclosure is only to the extent necessary to perform such work and provided that: (1) such Expert has agreed to be bound by the provisions of the Protective Order by signing a copy of "Acknowledgement and Agreement to Be Bound" (Exhibit A);  (2) such Expert is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (3) to the extent required by U.S. government export control and economic sanctions laws, including the U.S. Export Administration Regulations, such Expert accesses the Protected Material

in the United States only, and does not transport such Protected Material to or access them from any foreign jurisdiction; and (4) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Section 7.9;

(c)     Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     the Court and its personnel;

(e)     court reporters and their staff who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), with the exception that printouts of Source Code or Chip-Level Schematics used as exhibits in a deposition shall not be provided to the court reporter or their staff pursuant to Section 8.3(l) below;

(f)     any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(g)     any other person with the prior written consent of the Designating Party.

7.8    Procedures for Approving or Objecting to Disclosure of Protected Material.

(a)     Unless otherwise ordered by the court or agreed to in writing by the Designating Party, prior to disclosing any Protected Material to any person described in Sections 7.6(c),7.6(j), 7.7(b), 7.7(h), 7.8(b), or 7.8(g) (referenced below as "Person"), the party seeking to disclose such Protected Material first must make a written request to the Designating Party that:

i.     sets forth the full name of the Person and the city and

state of his or her residence, and

      ii.    states the present employer and the title of the Person;

      iii.    for any Expert, includes (a) an up-to-date curriculum vitae of the Person (including the Person's name and business/professional title and business address); (b) any previous or current relationship (personal or professional) with any of the Parties to this Action, including direct relationships and relationships through entities owned or controlled by the Person, including but not limited to an identification of any individual or entity with or for whom the Person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of Relevant Technology as defined in Paragraph 2.19, or relating to the acquisition of intellectual property assets relating to Relevant Technology as defined in Paragraph 2.19; (c) a list of other cases in which the Person has testified (at trial or deposition) within the last five (5) years; (d) a list of all companies by which the Person has been employed within the last four (4) years, the dates of the employment, and a brief description of the subject matter of the employment; (e) a list of all companies with which the Person has consulted within the last four (4) years, the dates of the consultancy, and a brief description of the subject matter of the consultancy; and (f) an identification of all pending patent applications on which the Person is named as an inventor, in which the Person has any ownership interest, or as to which the Person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing,

amending, or otherwise affecting the scope of the claims. This paragraph does not require the Disclosing Party to disclose aspects of any Expert's business or profession or companies with which the proposed expert has consulted or by which the proposed expert has been employed to the extent such information is subject to a non-disclosure agreement or other legal or contractual confidentiality obligations by the expert to a third party; in any such instance, the Disclosing Party will describe the confidential information / experience in such a manner as to enable the other parties to determine whether any valid concerns exist regarding the Disclosing Party's retention of that expert.

(b)     Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the Person. During the pendency of this Action, including all appeals, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of Relevant Technology as defined in Paragraph 2.19.

(c)     A Party that makes a request and provides the information specified in Sections 7.9(a) and 7.9(b) may disclose the subject Protected Material to the identified Person unless, within seven (7) days of delivering the request and providing all the information required to be disclosed by this section, the Party receives a written objection from the Designating Party. Any such objection must be in writing and set forth good cause for the objection. For purposes of this section, "good cause"

shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Protected Materials in a way or ways that are inconsistent with the provisions contained in this Protective Order.  In the absence of an objection at the end of the seven (7) day period, the Person shall be deemed approved under this Protective Order.  There shall be no disclosure of Protected Material to the Person prior to expiration of this seven (7) day period.

(d)     A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice-to-voice dialogue; other forms of communication are not sufficient) to try to resolve the matter by agreement within seven (7) days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Person may file a motion as provided in Civil Local Rule 7.1 seeking permission from the Court to do so.  Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Person is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

7.9     In any such proceeding, the Party opposing disclosure to the Person shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to the relevant Person.

## 8.    SOURCE CODE

8.1    Any Source Code or Chip-Level Schematics that are produced by Qualcomm Incorporated shall be made available for inspection in electronic format at the Los Angeles facility of Qualcomm's vendor, ProSearch, or any other location mutually agreed by the Parties. Any Source Code files or Chip-Level Schematics that are produced by Apple Inc. will be made available for inspection at the Silicon Valley office of its outside counsel, Fish & Richardson, P.C., or any other location mutually agreed by the Parties.  Any Source Code files or Chip-Level Schematics that are produced by the third-parties will be made available for inspection at the office of their outside counsel, or any other location mutually agreed by the Parties.  Source Code or Chip-Level Schematics will be made available for inspection between the hours of 9 a.m. and 4:30 p.m. on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

8.2    Prior to the first inspection of any Source Code or Chip-Level Schematics made available by the Producing Party, the Receiving Party shall provide ten (10) days' notice of the Source Code or Chip-Level Schematics that it wishes to inspect. The Receiving Party shall provide five (5) days' notice prior to any additional inspections.  To the extent practical and reasonable, the Parties agree to accommodate requests for inspection on a shorter timeframe, particularly when the needs of the case and case schedule require more immediate access by the Receiving Party to the requested Source Code or Chip-Level Schematics.  Similarly, the Receiving Party shall make good faith efforts to reasonably accommodate scheduling limitations identified by the Producing Party.  Moreover, nothing in this section shall limit the Receiving Party's access to any requested Source Code or Chip-Level Schematics made in pursuant to and in compliance with Inv. No. 337-TA-1065, Order No. 15.

8.3    Source Code or Chip-Level Schematics that are designated "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"

shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

(a)     All Source Code and Chip-Level Schematics shall be made available by the Producing Party to the Receiving Party's Outside Counsel and/or experts in a secure room on a secured computer in a configuration deemed secure by the Producing Party, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code or Chip-Level Schematics outside or away from the computer on which the Source Code or Chip-Level Schematics are provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The Producing Party shall install tools that are sufficient for viewing and searching the Source Code and Chip-Level Schematics produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's Outside Counsel and/or experts or consultants may request that commercially available software tools for viewing and searching Source Code or Chip-Level Schematics be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools, which approval shall not be unreasonably withheld; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code or Chip-Level Schematics consistent with all of the protections herein.  Prior to the first inspection of any requested Source Code or Chip-Level Schematics, the Receiving Party must provide the Producing Party with a CD or DVD (or via other appropriate means, e.g., flash/thumb drive or file transfer) containing

such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.  For the purposes of clarity, the Parties agree that the Receiving Party need only provide appropriate software tools to the Producing Party one time and can reasonably expect that the software tools will remain available for use on the inspection computer thereafter without further notice by the Receiving Party.  Appropriate software tools that the Receiving Party may request to have installed on the inspection computer include but are not limited to at least one text editor like SlickEdit that is capable of printing out Source Code with page and/or line numbers in either hard-copy or as a PDF, a source code comparison tool like Araxis Merge, and at least one multi-text file text search tool such as "grep" or reasonably similar programs.[4]

(b)　No recordable media or recordable devices, including without limitation sound recorders, computers, tablets, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room.

(c)　The Receiving Party's Outside Counsel and/or experts or consultants shall be entitled to take notes relating to the Source Code or Chip-Level Schematics but may not copy the Source Code or Chip-Level Schematics into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer. Each page of any such notes containing Source Code information or Chip-Level Schematics (and any additional notes, analyses, or descriptions relating

---

[4]　Apple has put Qualcomm on notice that its Source Code will likely be made available on an Apple computer running a current or recent version of Mac OS.  Based thereon, Qualcomm shall endeavor to identify and provide review tools commensurate with this paragraph that may be run with Mac OS.

thereto) must be marked as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."

(d)     The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code or Chip-Level Schematics review, but only to ensure that no unauthorized electronic records of the Source Code or Chip-Level Schematics and no information concerning the Source Code or Chip-Level Schematics are being created or transmitted in any way.

(e)     Access to and review of the Source Code or Chip-Level Schematics shall be strictly for the purposes of investigating the claims and defenses at issue in this Action. Unless otherwise agreed by the Parties in writing, no person shall review or analyze any Source Code or Chip-Level Schematics for purposes unrelated to this Action, and no person may use any knowledge gained as a result of reviewing the Source Code or Chip-Level Schematics in this Action in any other pending or future dispute, proceeding or litigation.

(f)     No copies of all or any portion of the Source Code or Chip-Level Schematics may leave the Source Code Review Room except as otherwise provided herein. Further, no other written or electronic record of the Source Code or Chip-Level Schematics is permitted except as otherwise provided herein.

(g)     The Source Code Computer shall be equipped to print PDF copies of Source Code and Chip-Level Schematics so that the Receiving Party can designate the portions of the Source Code and Chip-Level Schematics for which it would like hard copy printouts which shall be printed by the Producing Party on watermarked pre-Bates numbered paper, which shall be provided by the Producing Party.  Counsel for the

Producing Party shall retain the original printouts and, at the request of the Receiving Party to provide printed copies of such original printouts, shall either (i) deliver at least three (3) copy sets of such original printouts to one or more offices of the Receiving Party's Outside Counsel within four (4) business days of being notified that such original printouts have been made or designated or (ii) provide notice that the printed portions are not done for a permitted purpose.

(h)     Under no circumstances are original printouts of the Source Code or Chip-Level Schematics to be made except for directly onto the watermarked and numbered sides of the paper provided by the Producing Party. Printouts may be made only when necessary to prepare court filings or pleadings (pursuant to 8.3(m)), to prepare a testifying expert's expert report, or for use in a deposition (pursuant to 8.3(l)), and for no other purpose (such as to review at a later time elsewhere). Counsel for the Producing Party will keep the original printouts, and shall provide copies of such original printouts to counsel for the Receiving Party within four (4) business days of (1) any request by the Receiving Party, or (2) otherwise being notified that such original printouts have been made or designated. Counsel of Record may request up to 5 copies of each original printout per case in which it is used (with the Producing Party's consent) subject to the parties' agreement to reasonably cross-use discovery among the related actions. All printed Source Code or Chip-Level Schematics shall be logged by Receiving Party's Counsel of Record and/or other personnel of a Receiving Party in this Action. No additional electronic copies of the Source Code or Chip-Level Schematics shall be provided by the Producing Party. Any printed portion that consists of more than twenty-five (25) pages of a continuous

block of Source Code shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy. The Receiving Party may print out no more than 5% or two hundred (200) pages of the total Source Code or Chip-Level Schematics, whichever is greater. If the Receiving Party deems it necessary to print more than 5% or two hundred (200) pages of the total Source Code or Chip-Level Schematics, whichever is greater, or more than twenty-five (25) pages of a continuous block of Source Code, the Receiving Party and the Producing Party shall meet and confer to determine the appropriate amount of additional pages to be printed. If, after meeting and conferring, the Producing Party and the Receiving Party cannot come to an agreement, the Receiving Party shall be entitled to seek a Court resolution of whether the requested additional pages of printed Source Code or Chip-Level Schematics are narrowly tailored for a permitted purpose. The burden shall be on the Receiving Party to demonstrate that the requested additional pages are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.  The Receiving Party shall not print Source Code or Chip-Level Schematics in order to review blocks of Source Code or Chip-Level Schematics elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code or Chip-Level Schematics electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere, and that printing is permitted only when necessary to prepare court filings or pleadings (pursuant to 8.3(m)), to prepare a testifying expert's expert report, or for use in a deposition (pursuant to 8.3(l)). The

printed pages shall constitute part of the Source Code and Chip-Level Schematics produced by the Producing Party in this Action.

(i)    All persons who will review a Producing Party's Source Code or Chip-Level Schematics on behalf of a Receiving Party, including a Receiving Party's outside Counsel, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code or Chip-Level Schematics. Such identification shall be in addition to any other disclosure required under this Protective Order. All persons viewing the Source Code or Chip-Level Schematics shall sign on each day they view Source Code or Chip-Level Schematics a log that will include the names of persons who enter the locked room to view the Source Code or Chip-Level Schematics and when they enter and depart. The Producing Party shall be entitled to a copy of the log upon one (1) days' advance notice to the Receiving Party.

(j)    Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Protective Order, the Receiving Party's Outside Counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room. The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.  Proper identification of all authorized persons shall be provided prior to any access to the Source Code Review Room or the Source Code Computer.  Proper identification requires showing, at a minimum, a photo identification card sanctioned

by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

(k)     Other than as provided above, the Receiving Party will not copy, remove, or otherwise transfer any Source Code or Chip-Level Schematics from the Source Code Computer including, without limitation, copying, removing, or transferring the Source Code or Chip-Level Schematics onto any recordable media or recordable device. The Receiving Party will not transmit any Source Code or Chip-Level Schematics in any way from the Producing Party's facilities hosting the Source Code Computer.

(l)     The Receiving Party's Outside Counsel may not make paper copies of any portions of the Source Code or Chip-Level Schematics received from a Producing Party pursuant to Section 8.3(f), except for copies attached to court filings pursuant to 8.3(m) (up to five (5) copies), expert reports (up to five (5) copies), or used at depositions (up to five (5) copies), pursuant to Section 8.3(l), and shall maintain a log of all paper copies of the Source Code or Chip-Level Schematics. The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored. Upon one (1) day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(m)     The Receiving Party's Outside Counsel and any person receiving a copy of any Source Code or Chip-Level Schematics shall

maintain and store any paper copies of the Source Code or Chip-Level Schematics or any notes, analyses, or descriptions of Source Code or Chip-Level Schematics at their offices in a manner that prevents duplication of or unauthorized access to the Source Code or Chip-Level Schematics, including, without limitation, storing the Source Code or Chip-Level Schematics or any notes, analyses, or descriptions of Source Code or Chip-Level Schematics in a locked room or cabinet at all times when it is not in use. No more than a total of ten (10) individuals identified by the Receiving Party shall have access to the printed portions of the Producing Party's Source Code or Chip-Level Schematics (except insofar as such code appears in any court filing or expert report). This limitation shall be implemented on a per-case basis such that if the Producing Party produces or agrees to cross-use of its Source Code or Chip-Level Schematics in a particular Action (or any related matter), up to ten (10) persons authorized pursuant to the terms of this Order may have access to such Source Code or Chip-Level Schematics.

(n)     For depositions, the Receiving Party may bring printed copies of specific portions of the Source Code or Chip-Level Schematics it wishes to use at the deposition for the witness and Outside Counsel for the parties.  Copies of Source Code or Chip-Level Schematics that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code or Chip-Level Schematics brought to the deposition shall remain with the Producing Party's Outside Counsel following the deposition for secure destruction in a timely manner.

(o)     Except as provided in this sub-paragraph, absent express

written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code or Chip-Level Schematics from any paper copy of Source Code or Chip-Level Schematics for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code or Chip-Level Schematics to a PDF, photograph the Source Code or Chip-Level Schematics, or scan the Source Code or Chip-Level Schematics using optical character recognition ("OCR")). Subject to the foregoing exceptions, images or copies of Source Code or Chip-Level Schematics shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. If a Party reasonably believes that it needs to submit a portion of Source Code or Chip-Level Schematics as part of a filing with the Court, then the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code or Chip-Level Schematics and such Source Code or Chip-Level Schematics will not be filed absent agreement from the Producing Party that the confidentiality protections will be adequate. If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or Chip-Level Schematics or to provide written permission to the Receiving Party that an electronic or any other copy needs to be made for a Court filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of Source Code or Chip-Level Schematics (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code or Chip-Level Schematics under the provisions of this

Protective Order. Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code or Chip-Level Schematics, the Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code or Chip-Level Schematics in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored. Additionally, any such electronic copies must be labeled "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY – SOURCE CODE" as provided for in this Protective Order.

## 9.   COMPETITIVE DECISION-MAKING BAR

9.1    Absent written consent from the Designating Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" Information or Items shall not be involved in competitive decision-making for a Party, relating to the subject matter of the Information or Items accessed by the individual. This bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" Information or Items is first received by the affected individual and shall end one (1) year after the affected individual ceases to have access to such "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" Information or Items.

## 10.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

10.1    If a Party is served with a subpoena or a court order issued by any court, arbitral, administrative, or legislative body that compels disclosure of any information

or items designated in this Action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE," that Party must:

(a)     promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)     promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c)     cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected. If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its material designated as CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE". Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court or any arbitral, administrative, or legislative body.

## 11.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

11.1   The terms of this Protective Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Protective Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

11.2   In the event that a Producing Party is required, by a valid discovery request, to produce another Party or Non-Party's (for the purposes of this section only, a "Third Party's") confidential information in its possession, custody or control, and the Producing Party has a contractual or legal obligation not to produce the Third Party's confidential information, then the Producing Party shall:

(a)   promptly notify in writing the Requesting Party and the Third Party that some or all of the information requested is subject to a confidentiality agreement with or confidentiality obligation to a Third Party;

(b)   promptly provide the Third Party, if it is a Non-Party, with a copy of the Protective Order in this litigation and the relevant discovery request(s); and

(c)   make the information requested available for inspection by the Third Party.

11.3   If the Third Party fails to object or seek a protective order from this Court within fourteen (14) days of receiving the notice and accompanying information, the Producing Party may produce the Third Party's confidential information responsive to the discovery request. If the Third Party timely seeks a protective order, the

Producing Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with or confidentiality obligation to the Third Party before a determination by the Court. Absent a Court order to the contrary, the Third Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

## 12.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

12.1   If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure, (b) use its best efforts to retrieve improperly disclosed Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

## 13.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

13.1   When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). Any inadvertent production of privileged or otherwise protected material that satisfies Federal Rule of Evidence 502(b) shall not be deemed to have waived the privilege or protection.

13.2   Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery

Material and all copies to the Producing Party, or destroy such Discovery Material and certify that destruction to the Producing Party.

13.3   Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

**14.   MISCELLANEOUS**

14.1   Operability of This Protective Order.  This Protective Order supersedes all prior orders regarding the disclosure of protected materials.

14.2   Right to Further Relief.  Nothing in this Protective Order abridges the right of any person to seek its modification by the Court in the future.  By stipulating to this Protective Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

14.3   Right to Assert Other Objections.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.  This Protective Order shall not constitute a waiver of the right of any Party to claim in this Action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this Action or any other proceeding.

14.4   Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79.2. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the

specific Protected Material at issue. Pursuant to Civil Local Rule 79.2, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. However, nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code or Chip-Level Schematics.

14.5   Termination of Action and Retention of Jurisdiction.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned Action pursuant to Section 15.  The Court shall retain jurisdiction after Final Disposition of this Action to hear and resolve any disputes arising out of this Protective Order.

14.6   Successors.  This Protective Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

14.7   Burdens of Proof.  Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

14.8   Discovery Rules Remain Unchanged.  Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for Southern District of California, or the Court's own orders.  Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal

Rules of Civil Procedure, the Local Rules for the United States District Court for Southern District of California, or the Court's own orders.

14.9  Court Permission to File Under Seal.  No document shall be filed under seal unless counsel secures a court order allowing the filing of a document, or portion thereof, under seal. An application to file a document under seal shall be served on opposing counsel, and on the person or entity that has custody and control of the document, if different from opposing counsel. If opposing counsel, or the person or entity who has custody and control of the document, wishes to oppose the application, he/she must contact the chambers of the judge who will rule on the application to notify the Court that an opposition to the application will be filed.

14.10 Court Authority to Modify.  The Court may modify the Protective Order in the interests of justice or for public policy reasons on its own initiative.

## 15.  FINAL DISPOSITION

15.1  Unless otherwise ordered or agreed in writing, within 90 days after the final disposition of this Action, as defined in Section 4, each Receiving Party, including Outside Counsel for each Receiving Party, shall destroy or return all Protected Material, including Protected Material of any other Party or Non-Party included in work product, pleadings, motion papers, legal memoranda, correspondence, trial transcripts and trial exhibits admitted into evidence ("derivations"), with the exception that the obligation to destroy all copies of such Discovery Material shall not extend to copies stored in disaster recovery backups or other data sources that are not reasonably accessible.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Discovery Material. Whether the Discovery Material is returned or destroyed, the Receiving Party must submit a written certification to the respective outside counsel of the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90 day deadline that

(a) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (b) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Discovery Material.  Any such archival copies that contain or constitute Protected Material stored in disaster recovery backups or other sources that are not reasonably accessible remain subject to this Protective Order as set forth in Section 4.

IT IS SO ORDERED.

Dated:   March 12, 2018

Hon. Mitchell D. Dembin
United States Magistrate Judge

<u>EXHIBIT A—ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of perjury

that I have read in its entirety and understand the Protective Order that was issued

by the United States District Court for the Southern District of California on [date]

in the cases of *Apple Inc. v. Qualcomm Incorporated*, Case No. 3:17-CV-1375-

DMS-MDD.  I agree to comply with and to be bound by all the terms of this

Protective Order and I understand and acknowledge that failure to so comply could

expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject

to this Protective Order to any person or entity except in strict compliance with the

provisions of this Protective Order.

I further agree to submit to the jurisdiction of the United States District Court

for the Southern District of California for the purpose of enforcing the terms of this

Protective Order, even if such enforcement proceedings occur after termination of

this Action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and

telephone number] as my California agent for service of process in connection with

this Action or any proceedings related to enforcement of this Protective Order.

Date: _____

Location where sworn and signed: _____

Printed name: _____

Signature: _____