UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>APPLE INCORPORATED,<br><br>　　　　　　　　　Defendant.<br><br>APPLE INCORPORATED,<br><br>　　　　　　　　　Counter Claimant,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br><br>　　　　　　　　　Counter Defendant. | Case No.: 17cv1375 DMS(MDD)<br><br>**ORDER CONSTRUING CLAIMS** |

　　　This matter came before the Court for a claim construction hearing on August 7, 2018. David Nelson, Nathan Hamstra and Patrick Schmidt appeared on behalf of Qualcomm, and Juanita Brooks, James Dowd and Joseph Mueller appeared on behalf of Apple. After a thorough review of the parties' claim construction briefs and all other material submitted in connection with the hearing, the Court issues the following order construing the disputed terms of the patents at issue here.

1

# I.
# BACKGROUND

There are four Qualcomm patents at issue in this case, two of which contain claim terms that require construction: United States Patents Numbers 8,698,558 ("the '558 Patent") and 8,633,936 ("the '936 Patent").[1] There are three terms at issue in each of these Patents. In the '558 Patent, the disputed terms are "envelope signal," "based on" and "receive … a first supply voltage" / "receiving … the first supply voltage." Each of these terms is found in claim 6, which recites:

> An apparatus for wireless communication, comprising:
>
> a power amplifier operative to receive and amplify an input radio frequency (RF) signal and provide an output RF signal; and
>
> a supply generator operative to receive an envelope signal and a first supply voltage, to generate a boosted supply voltage having a higher voltage than the first supply voltage, and to generate a second supply voltage for the power amplifier based on the envelope signal and the boosted supply voltage, wherein the supply generator incorporates an operational amplifier (op-amp) operative to receive the envelope signal and provide an amplified signal, a driver operative to receive the amplified signal and provide a first control signal and a second control signal, a P-channel metal oxide semiconductor (PMOS) transistor having a gate receiving a first control signal, a source receiving the boosted supply voltage or the first supply voltage, and a drain providing the second supply voltage, and an N-channel metal oxide semiconductor (NMOS) transistor having a gate receiving the second control signal, a drain providing the second supply voltage, and a source coupled to circuit ground."

///

---

[1] The other Qualcomm Patents at issue are United States Patents Numbers 8,838,949 ("the '949 Patent") and 9,535,490 ("the '490 Patent"). The parties also briefed claim construction issues for another Qualcomm Patent, U.S. Patent No. 9,608,675 ("the '675 Patent"). However, the parties have since dismissed all claims related to the '675 Patent. Accordingly, the Court does not address any claim construction issues on that Patent.

In the '936 Patent, the disputed terms are "programmable streaming processor", "conversion instruction that ... converts graphics data ... from a first data precision to converted graphics data having a second data precision," and "graphics instruction." Each of these terms is found in claim 19, which recites:

> A device comprising:
>
> a controller configured to receive a graphics instruction for execution within a programmable streaming processor, wherein the indication of the data precision is contained within the graphics instruction and wherein the graphics instruction is a first executable instruction generated by a compiler that complies graphics application instructions, to receive an indication of a data precision for execution of the graphics instruction, and to receive a conversion instruction that, when executed by the programmable streaming processor, converts graphics data associated, with the graphics instruction, from a first data precision to converted graphics data having a second data precision, wherein the conversion instruction is different than the graphics instruction and wherein the conversion instruction is generated by the compiler; and
>
> a plurality of execution units within the processor,
>
> wherein the controller is configured to select one of the execution units based on the indicated data precision and cause the selected execution unit to execute the graphics instruction with the indicated data precision using the converted graphics data associated with the graphics instruction.

Four of the disputed terms at issue here were the subject of claim construction proceedings before the International Trade Commission ("ITC"), specifically, "envelope signal," "based on," "programmable streaming processor" and "conversion instruction that … converts graphics data … from a first data precision to converted graphics data having a second data precision." (*See* Qualcomm's Opening Claim Construction Br., Ex. 9.) The parties rely on the ITC's claim constructions in their arguments here, but the ITC's claim constructions are not binding on this Court. *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) (stating "that ITC decision are not binding on district court in subsequent cases brought before them[.]") With this background, the Court turns to the claim construction issues.

# II.
# DISCUSSION

Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), and it begins "with the words of the claim." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Generally, those words are "given their ordinary and customary meaning." *Id.* (citing *Vitronics*, 90 F.3d at 1582). This "'is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'" *Id.* (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)). "The person of ordinary skill in the art views the claim term in the light of the entire intrinsic record." *Id.* Accordingly, the Court must read the claims "'in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). In addition, "'the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.'" *Id.* (quoting *Phillips*, 415 F.3d at 1318).

**A.  The '558 Patent**

As stated above, there are three terms at issue in the '558 Patent: (1) "envelope signal," (2) "based on" and (3) "receive … a first supply signal" / "receiving … the first supply signal."

<u>1.  "Envelope signal"</u>

Turning to the first term "envelope signal," Qualcomm proposes the Court construe this term as "signal indicative of the upper boundary of the output RF signal." Apple proposes the Court construe this term according to its plain and ordinary meaning, or in the alternative, that the term be construed as "signal indicative of the upper boundary of another signal."

/ / /

Both sides rely on the specification to support their proposed constructions. Qualcomm relies specifically on Figure 2C, which depicts an envelope tracker receiving "an envelope of the RFout signal[.]" ('558 Patent at 4:22-24.) However, this sole embodiment does not warrant imposition of Qualcomm's proposed limitation into the claim language. As Qualcomm concedes, another portion of the specification refers to "the envelope of the RFin signal[.]" (*Id.* at 3:64-65.) Accordingly, the Court adopts Apple's proposed construction of "envelope signal" as "signal indicative of the upper boundary of another signal."

2. "Based on"

The second term at issue is "based on." Qualcomm asserts this term should be construed according to its plain and ordinary meaning. Apple argues the term is indefinite as used in claim 7 of the '558 Patent.[2]

Claim 7 depends from claim 6, which is set out above. Whereas claim 6 recites "a second supply voltage for the power amplifier based on the envelope signal *and* the boosted supply voltage[,]" (emphasis added), claim 7 provides: "The apparatus of claim 6, wherein the supply generator is operative to generate the second supply voltage based on the envelope signal *and either* the boosted supply voltage *or* the first supply voltage." (emphasis added). In *Multilayer Stretch Cling Film Holding, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350 (Fed. Cir. 2016), the court discussed claims with a structure similar to claims 6 and 7 here, and that were subject to a similar challenge of indefiniteness. There, the independent claim was construed to be limited to the four resins recited therein, while the dependent claim included a different type of resin. *Id.* at 1360-62. The district court found the dependent claim was invalid, and the Federal Circuit affirmed that decision, stating: "A dependent claim that contradicts, rather than narrows, the claim from which it depends is invalid." *Id.* at 1362.

---

[2] Outside of claim 7, it appears the parties agree that "based on" should be construed according to its plain and ordinary meaning.

Neither side cited this case in its briefs, but it appears to be dispositive of the issue presented here. Contrary to the requirement of 35 U.S.C. § 112 ¶ 4,[3] claim 7 does not "specify a further limitation" on claim 6. Rather, it expands the scope of claim 6 to include another possible combination as the basis for the second supply voltage. Under these circumstances, and the reasoning set out in *Multilayer Stretch*, the term "based on" is indefinite as used in claim 7.

### 3. "Receive … a first supply voltage" / "receiving … the first supply voltage"

The third term at issue here is "receive/receiving … a/the first supply voltage." Qualcomm proposes that the Court construe this term according to its plain and ordinary meaning. Apple proposes that the term be construed as "connect to a first supply voltage."

Apple fails to explain why this term needs construction. On its face, the term "receive" or "receiving" has a clear meaning, and Apple admits "that in most contexts 'receive' and 'connect to' are not synonymous." (Apple's Opening Claim Construction Br. at 8.) Nevertheless, Apple urges the Court to replace "receive" and "receiving" with the words "connect to." There is nothing in the patent, however, that requires deviation from the plain meaning of "receive" or "receiving." Accordingly, the Court adopts Qualcomm's position here, and construes this term according to its plain and ordinary meaning.

## B. The '936 Patent

Turning to the '936 Patent, there are three terms at issue: (1) "programmable streaming processor," (2) "conversion instruction that … converts graphics data … from a first data precision to converted graphics data having a second data precision" and (3) "graphics instruction."

---

[3] Section 112 ¶ 4 states, "a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed." 35 U.S.C. § 112 ¶ 4. This statute was replaced by § 112(d) of the America Invents Act, but the substance remained the same. *Multilayer Stretch*, 831 F.3d at 1362 n.8.

1. "Programmable streaming processor"

The first term at issue in the '936 Patent is "programmable streaming processor." Qualcomm proposes the Court construe this term as "instruction-based processor capable of concurrently executing threads of instructions on multiple data streams." Apple proposes the Court construe the term as "processor with multiple execution units, each capable of executing instructions on a data stream."

In reviewing the parties' proposals, it is clear they agree that a "programmable streaming processor" must be capable of executing instructions. Apple's proposal that the processor have "multiple execution units" is also unnecessary as that limitation is set out explicitly in claim 19. ('936 Patent at 19:17.) Thus, the dispute here centers on Qualcomm's inclusion of the word "concurrently" in its proposed construction.

Apple argues the processor is not required to execute instructions "concurrently," therefore it would be inappropriate and improper to include that limitation in the claim. However, Qualcomm is not requesting that a concurrency requirement be imported into the claim. As indicated in its proposed construction, Qualcomm is requesting only that the processor be "capable of" executing instructions concurrently, a point Apple does not appear to dispute. Indeed, it appears the parties agree the processor described in the '936 Patent is capable of executing instructions both concurrently and sequentially.

At oral argument, it appeared the main point of contention here is the meaning of "concurrently," with Qualcomm arguing that "concurrently" includes "simultaneously" and Apple arguing to the contrary. This argument runs afield of the actual claim language, but to the extent the parties dispute this issue, the Court agrees with Qualcomm that the concept of "concurrently" includes "simultaneously."

With these understandings, the Court declines to adopt either side's proposed construction of this term, and instead construes "programmable streaming processor" according to its plain and ordinary meaning consistent with the above discussion.

///

///

## 2. "Conversion instruction that … converts graphics data … from a first data precision to converted graphics data having a second data precision"

The second term at issue in the '936 Patent is "conversion instruction that … converts graphics data … from a first data precision to converted graphics data having a second data precision." Qualcomm proposes this term be construed according to its plain and ordinary meaning, or as "an instruction that when executed converts graphics data having one data precision to graphics data having a different data precision." Apple proposes that the term be construed as "an explicit instruction that converts, within the same data type, graphics data from one data precision to converted graphics data having a different data precision." As evident from these competing proposals, the disputes here are twofold: First, must the conversion instruction be "explicit," and second, must the conversions occur within the same data type.

On the first dispute, the claim language is clear that "the conversion instruction is different than the graphics instruction[.]" That the conversion instruction is different, however, does not mean it is "explicit," as Apple proposes. For that limitation, Apple relies on the prosecution history, and argues Qualcomm disclaimed the concept of "implicit" instructions when it distinguished the Uchida and Bhargava references during prosecution. However, the Court disagrees. Although Qualcomm mentioned the "implicit" nature of the conversion of data in Uchida and Bhargava, that discussion did not amount to a clear and unmistakable disclaimer of "implicit" instructions. Thus, the Court rejects that proposal.

The Court agrees, however, with Apple's argument that the conversion of graphics data must occur within the same data type. This argument finds support, first and foremost, in the claim language, which speaks in terms of converting graphics data from one data precision to another. ('936 Patent at 19:12-14.) The prosecution history also supports Apple's argument that Qualcomm disclaimed data type conversions. In the prosecution history, Qualcomm clearly, and repeatedly, distinguished Bhargava on the ground it did "not disclose converting graphics data from a first precision level to a second data precision

8

17cv1375 DMS(MDD)

level. Instead, Bhargava discloses data type conversions." (Decl. of Mark Selwyn in Supp. of Apple's Opening Claim Construction Br., Ex. 12, ECF No. 230-13 at 55.) (*See also id.* at 81.) That Qualcomm later distinguished Bhargava on other grounds does not affect these earlier disclaimers, which were clear and unmistakable.

Thus, consistent with the above, the Court construes "conversion instruction that … converts graphics data … from a first data precision to converted graphics data having a second data precision" the same way that term was construed in the ITC proceedings, namely as "an instruction that when executed converts, within the same data type, graphics data having one data precision to graphics data having a different data precision."

3. "Graphics instruction"

The final term at issue here is "graphics instruction." Qualcomm proposes that the Court construe this term according to its plain and ordinary meaning. Apple contends the term is indefinite.

Title 35 United States Code § 112(b) provides the basis for the definiteness requirement of United States patents. This statute states: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). The purpose of this requirement is "to inform the public of the bounds of the protected invention, *i.e.*, what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). Absent this information, "competitors cannot avoid infringement, defeating the public notice function of patent claims." *Id.* (citing *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996)).

In *Nautilus v. Biosig Instruments, Inc.*, ___ U.S. ___, 134 S.Ct. 2120 (2014), the Supreme Court set out a new standard for determining indefiniteness of patent claims. In that case, the Court set out three aspects of the inquiry into indefiniteness.

> First, definiteness is to be evaluated from the perspective of someone skilled in the relevant art. Second, in assessing definiteness, claims are to be read in

light of the patent's specification and prosecution history. Third, "[d]efiniteness is measured from the viewpoint of a person skilled in [the] art at the time the patent was filed."

*Id.* at 2128 (citations omitted). The Court incorporated these aspects into its holding that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124.

Here, Apple has not met its burden to show, by clear and convincing evidence, that "graphics instruction" is indefinite. Apple argues a person of ordinary skill in the art would be unable "to distinguish between a 'graphics instruction' and any other processor instruction, including the 'different' claimed 'conversion instruction.'" (Apple's Opening Claim Construction Br. at 25.) However, the Court disagrees. The claim language itself sets out the differences between a "graphics instruction" and a "conversion instruction." For example, a "graphics instruction" contains an indication of data precision, and is a "first executable instruction generated by a compiler that compiles graphics application instructions[,]" ('936 Patent at 19:5-8), whereas a "conversion instruction" "converts graphics data associated, with the graphics instruction, from a first data precision to converted graphics data having a second data precision[.]" (*Id.* at 19:11-14.) Apple has not met its burden to show this term is indefinite. Accordingly, the Court adopts Qualcomm's proposal that this term be construed according to its plain and ordinary meaning.

### III.
### CONCLUSION

For the reasons stated above, the disputed terms are interpreted as set forth in this Order.

**IT IS SO ORDERED**.

Dated: September 18, 2018

_____
Hon. Dana M. Sabraw
United States District Judge