UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>  Plaintiff,<br><br>v.<br><br>APPLE INCORPORATED,<br><br>  Defendant.<br><br>APPLE INCORPORATED,<br><br>  Counter Claimant,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br><br>  Counter Defendant. | Case No.:  17cv1375 DMS(MDD)<br><br>**ORDER CONSTRUING CLAIMS** |

   This matter came before the Court for a claim construction hearing on September 5, 2018.  Juanita Brooks, Katie Prescott, Christopher Green and Frank Albert appeared on behalf of Apple, and William Devitt, Keith Davis and John Michalik appeared on behalf of Qualcomm.  After a thorough review of the parties' claim construction briefs and all other material submitted in connection with the hearing, the Court issues the following order construing the disputed terms of the patents at issue here.

# I.
# BACKGROUND

There are eight Apple patents at issue in this case: United States Patents Numbers 7,355,905 ("the '905 Patent"), 7,760,559 ("the '559 Patent"), 8,098,534 ("the '534 Patent"), 8,443,216 ("the '216 Patent"), 8,271,812 ("the '812 Patent"), 8,656,196 ("the '196 Patent"), 7,383,453 ("the '453 Patent") and 8,433,940 ("the '940 Patent"). In these eight patents, the parties dispute twelve terms. Those terms are: From the '905, '559 and '534 Patents, (1) "integrated circuit," (2) "received on a first/second input to the integrated circuit"/ "receiving power from at least one first/second input to the integrated circuit" and (3) "during use." From the '453 Patent, (4) "core," (5) "area," and (6) "wherein in a normal operation mode:...the core voltage is a first value that is sufficient to maintain the state information of the instruction-processing circuitry." From the '940 Patent, (7) "power area" and (8) "real-time clock." From the '812, '216 and '196 Patents, (9) "performance domain," (10) "power management unit" and (11) "establish a ... performance state."[1]

# II.
# DISCUSSION

Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), and it begins "with the words of the claim." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Generally, those words are "given their ordinary and customary meaning." *Id.* (citing *Vitronics*, 90 F.3d at 1582). This "'is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'" *Id.* (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)).

---

[1] Prior to the hearing, the parties also disputed another term from the '812, '216 and '196 Patents: "a prior performance state at which the processor was operating prior to entering the sleep state." At the hearing, Qualcomm agreed to Apple's proposed construction of this term. Therefore, the Court does not address that term in this Order.

"The person of ordinary skill in the art views the claim term in the light of the entire intrinsic record." *Id.* Accordingly, the Court must read the claims "'in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). In addition, "'the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.'" *Id.* (quoting *Phillips*, 415 F.3d at 1318).

A.   The '905, '559 and '534 Patents

The first three patents at issue are the '905, '559 and '534 Patents, which share a common specification. As stated above, there are three terms at issue in these Patents: (1) "integrated circuit," (2) "received on a first/second input to the integrated circuit"/ "receiving power from at least one first/second input to the integrated circuit" and (3) "during use."

1.   "Integrated circuit"

This term appears in claim 1 of the '905 Patent, claims 1, 2 and 3 of the '559 Patent, and claims 1, 3 and 4 of the '534 Patent. Apple proposes this term be construed as "one or more circuit elements that are integrated onto a single semiconductor substrate." Qualcomm proposes the term be construed as "a chip made up of connected circuit elements."

The Court adopts Apple's proposed construction because it is more consistent with the plain language of the term ("integrated"), and the specification. (*See* '905 Patent at 2:61-63) ("The integrated circuit 10 may generally comprise the logic circuits 12 and the memory circuits 14 integrated onto a single semiconductor substrate (or chip).")[2] In

---

[2] The Court has also reviewed the prosecution history cited by Qualcomm in support of its proposed construction. (*See* Decl. of Kelly V. O'Donnell in Supp. of Qualcomm's Opening

contrast, Qualcomm's proposed construction substitutes the concept of "integrated" with "connected," and describes the "integrated circuit" as the chip itself rather than multiple circuit elements *integrated onto* a chip.  For these reasons, the Court adopts Apple's proposed construction of "integrated circuit."

    2.    <u>"Received on a first/second input to the integrated circuit"/"Receiving power from at least one first/second input to the integrated circuit"</u>

These terms appear in claim 1 of the '905 Patent and claim 1 of the '559 Patent. Apple urges the Court to construe the first term as "provided to the integrated circuit on a first/second input," and the second term as "provided power from at least one first/second input to the integrated circuit."  Qualcomm requests the Court construe the first term as "generated external to the integrated circuit and connected to the integrated circuit on a first/second input," and the second term as "supplied by a first/second supply voltage generated external to the integrated circuit and connected to the integrated circuit on at least one first/second input."

The Court has reviewed the parties' arguments on these terms, as well as the intrinsic evidence cited by the parties, and declines to adopt either party's proposed construction. Apple's proposed constructions simply substitute "provided" for "received," and otherwise just rearrange the terms.  Qualcomm's proposed constructions substitute "supplied" for "received," and add a new concept, namely that the supply voltage be "generated external to the integrated circuit," which is the parties' main point of disagreement.  Qualcomm relies on the prosecution history to support the inclusion of this concept in its proposed construction, but the prosecution history does not provide that support.  Nevertheless, that concept is inherent in the use of the word "input," and is thus unnecessary.  Therefore, the Court declines to adopt either party's proposed constructions of these terms, and instead

---

Claim Construction Br., Ex. S.)  That evidence, however, does not support Qualcomm's proposal.

construes these terms according to their plain and ordinary meaning and consistent with the discussion above.

3. "During use"

The final disputed term from these Patents is "during use." This term appears in claim 1 of the '905 Patent, claim 1 of the '534 Patent and claims 1 and 2 of the '559 Patent. Apple urges the Court to construe this term according to its plain and ordinary meaning, or as "while operating." Qualcomm argues the term is indefinite.

To satisfy its burden on indefiniteness, Qualcomm must "demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010) (citing *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008)). That burden is not met here, and thus the Court rejects Qualcomm's argument that the term "during use" is indefinite. Rather, the Court finds this term should be construed in accordance with Apple's proposal, namely that the plain and ordinary meaning applies.

**B.    The '453 Patent**

Turning to the '453 Patent, there are three terms at issue: (1) "core," (2) "area," and (3) "wherein in a normal operation mode: ...the core voltage is a first value that is sufficient to maintain the state information of the instruction-processing circuitry." Each of these terms appears in claims 1, 2 and 4 of the '453 Patent.

1.    "Core"/"Area"

The parties discuss the first two terms, "core" and "area," together. Apple asserts "core" should be construed according to its plain and ordinary meaning, or as "a logical or physical instruction processing mechanism." As for "area," Apple proposes it be construed as "a portion of the processor excluding a core." Qualcomm contends each of these terms is indefinite.

///

As with the term "during use," Qualcomm has not shown that either of these terms is indefinite. Indeed, Qualcomm concedes both terms can be construed according to their functions or by their respective power supply. Therefore, the Court rejects Qualcomm's indefiniteness argument. Instead, the Court adopts the plain and ordinary meaning of "core," and Apple's proposed construction of the term "area."

2. <u>"Wherein in a normal operation mode … the core voltage is a first value that is sufficient to maintain the state information of the instruction-processing circuitry"</u>

The only other disputed term in the '453 Patent is "sufficient to maintain the state information of the instruction-processing circuitry."[3] Apple argues this term should be construed as "at least a value that maintains the state information of the instruction-processing circuitry." Qualcomm proposes the term be construed as "a minimum value that maintains state information of the instruction-processing circuitry, which minimum value is not sufficient to allow instruction processing to continue."

The Court has reviewed the intrinsic evidence cited by the parties in support of their respective proposed constructions of this term, including the prosecution history, and finds Apple's proposed construction is more accurate. As Apple points out, the phrase "sufficient to" allows for a range of values, not just one minimum value, as proposed by Qualcomm. Furthermore, Qualcomm's proposed construction reads the term out of context. Specifically, claim 1 states that in normal operation mode "the core is active," which means the core is processing instructions. Qualcomm's proposed construction does not allow for this possibility, and thus it cannot be correct. Accordingly, the Court adopts Apple's proposed construction of this term.

/ / /

/ / /

---

[3] Apple asserts the term in dispute includes more than just this language. However, the Court disagrees. The actual dispute here concerns only the language set out above.

### C. The '940 Patent

The next two terms at issue appear in claims 9 and 11 of the '940 Patent. The terms are "power area" and "real-time clock."

#### 1. "Power area"

For the first term, "power area," Apple proposes that it be construed according to its plain and ordinary meaning, or as "grouping related to receiving power." Qualcomm proposes the term be construed as "arrangement of elements connected to the same power supply."

Although the parties' propose different constructions of this term, their constructions appear to share the same concept, namely, that a "power area" receives power from one source. Qualcomm's proposed construction introduces the notion of a power "supply," which Apple takes issue with, but ultimately the parties agree that the source of power for each "power area" has to be the same. With this understanding, the Court construes this term according to its plain and ordinary meaning.

#### 2. "Real-time clock"

The next disputed term is "real-time clock." Apple proposes this term be construed according to its plain and ordinary meaning, or as "provider of time-of-day services." Qualcomm proposes the term be construed as "circuit that provides time-of-day services to the processor."

Here, the Court agrees with Apple that Qualcomm is attempting to limit the "real-time clock" to a "circuit," and that this limitation is not provided for in the specification. Indeed, the specification differentiates between the "real-time clock" and the "clock distribution circuitry." (*See* '940 Patent at 3:46-47.) Thus, although it appears the "real-time clock" may have a circuit component, it is not itself a "circuit," as Qualcomm proposes. Accordingly, the Court construes this term according to its plain and ordinary meaning, consistent with the above discussion.

/ / /

/ / /

**D.     The '812, '216 and '196 Patents**

The final three disputed terms appear in the '812, '216 and '196 Patents. Those terms are "performance domain," "power management unit," and "establish a … performance state."

### 1.     "Performance domain"

This term appears in claim 8 of the '812 Patent, claim 1 of the '216 Patent and claims 1, 2 and 3 of the '196 Patent. Apple proposes this term be construed as "one or more components that may be controlled as a unit or independently for performance configuration purposes." Qualcomm proposes the term be construed as "one or more components that may be controlled by the power management unit as a unit for performance configuration purposes."

The specification clearly allows for control of the components within a "performance domain" by either the power management unit ("PMU") or software, (*see* '812 Patent at 2:16-19), and thus Qualcomm's limitation of power control by a PMU only cannot be correct. The specification also allows for control of components within a performance domain as a unit or independently, (*see id.* at 4:22-25, 5:20-28), and thus Qualcomm's limitation of control of the performance domain as a unit only also cannot be correct. Accordingly, the Court adopts Apple's proposed construction of this term.

### 2.     "Power management unit"

This term appears in claim 8 of the '812 Patent, claims 1 and 2 of the '216 Patent and claim 1 of the '196 Patent. Apple proposes this term be construed according to its plain and ordinary meaning, or as "hardware and/or a combination of hardware and software that causes a performance domain to transition to a performance state."[4] Qualcomm proposes the term be construed as "a circuit that manages power consumption

---

[4] In the briefing, Apple proposed this term be construed as "hardware and/or software," but at oral argument, Apple agreed that the PMU could not be software only. The proposed construction set out above incorporates this change.

by automatically transitioning in hardware the performance states of a plurality [of] performance domains."

As with the term discussed immediately above, Qualcomm is attempting to import limitations into the claim, *i.e.*, that the PMU is a "circuit," that it manages power consumption by "automatically transitioning" the performance states "in hardware," and that it do so in a "plurality" of performance domains. The specification does not support importing these limitations, and thus the Court adopts Apple's proposed construction of this term as "hardware and/or a combination of hardware and software that causes a performance domain to transition to a performance state."

3.  "Establish a … performance state"

The final term at issue here is "establish a … performance state." This term appears in claim 8 of the '812 Patent, claim 1 of the '216 Patent and claim 1 of the '196 Patent. Apple proposes this term be construed according to its plain and ordinary meaning, or as "set the … one or more performance characteristics to the appropriate values for the performance state." Qualcomm proposes the term be construed as "to cause the performance domain to apply the performance state to that domain."

The claim language, specifically, the word "establish," is more consistent with Apple's use of "set" than Qualcomm's use of "apply." Qualcomm's position that the PMU must do more than simply "set" the performance state is correct, as the claim itself says the PMU is also configured to "transition" a performance domain from one state to another. However, the explicit requirement that the PMU be configured to make this transition is separate from the "establish" requirement, which counsels against Qualcomm's proposed construction. Accordingly, the Court construes this term according to its plain and ordinary meaning, consistent with the above discussion.

/ / /

/ / /

/ / /

/ / /

## III.
## CONCLUSION

For the reasons stated above, the disputed terms are interpreted as set forth in this Order.

**IT IS SO ORDERED**.

Dated:  October 11, 2018

Hon. Dana M. Sabraw
United States District Judge