David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Randall E. Kay (SBN 149369)
rekay@jonesday.com
**JONES DAY**
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (844) 345-3178

*[Additional counsel identified on signature page]*

*Attorneys for Plaintiff and Counterclaim Defendants*
QUALCOMM INCORPORATED AND
QUALCOMM TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 3:17-cv-1375-DMS-MDD <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF QUALCOMM'S MOTION TO EXCLUDE IN PART THE EXPERT OPINIONS AND TESTIMONY OF APPLE EXPERTS APSEL, FUCHS, LIN AND PROWSE** |
| AND RELATED COUNTERCLAIMS | Judge:  Hon. Dana M. Sabraw <br><br> Hearing Date: January 11, 2019 |

03536-00034/10550712.14

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   LEGAL STANDARD .................................................................................... 2

III.  APPLE'S TECHNICAL EXPERTS FAIL TO ESTABLISH THAT THE LICENSES APPLE'S DAMAGES EXPERT RELIES ON ARE TECHNOLOGICALLY COMPARABLE ......................................................... 2

   A.   Apple's Experts Applied The Wrong Legal Standard To Assess Technological Comparability ....................................................................... 4

   B.   Apple's Experts' Conclusory And Flawed Opinions Of Technological Comparability Should Be Excluded ........................................................... 5

      1.   The '949 Patent .................................................................................. 5

      2.   The '490 Patent .................................................................................. 7

      3.   The '936 Patent .................................................................................. 7

      4.   The '558 Patent .................................................................................. 8

IV.  DR. PROWSE'S REASONABLE ROYALTY OPINIONS SHOULD BE EXCLUDED ................................................................................................... 9

   A.   The Apple-NPE Licensing Agreements ..................................................... 9

      1.   The ████████████████ ............................................................... 10

      2.   The ███████████████████████ ................................................... 11

      3.   The ████████████████ ............................................................... 11

      4.   The ███████████████ ................................................................. 12

   B.   Dr. Prowse's Reasonable Royalty Opinion Should Be Excluded Because He Failed To Perform Any Economic Comparability Analysis ........................ 13

      1.   Dr. Prowse Failed To Account For The Differences Between The NPEs and Qualcomm ........................................................................................ 13

      2.   Dr. Prowse Failed To Account For The Fact That ███████████████ ████████████ .................................................................................. 16

      3.   Dr. Prowse Failed To Perform Any Analysis Of The Economic Circumstances Underlying The Agreements ............................................................. 19

V.   THE COURT SHOULD EXCLUDE OPINIONS REQUIRING "ACTUAL USE" FOR INFRINGEMENT OF THE '936 PATENT ................ 21

   A.   The '936 "Configured To" Claims Do Not Require Actual Use ..................... 21

   B.   Dr. Fuchs's Non-Infringement Opinions Violate The Law .............................. 22

VI.  CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

**Page**

### CASES

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
314 F.3d 1313 (Fed. Cir. 2003) ........................................................................23

*ART+COM Innovationpool GmbH v. Google Inc.,*
155 F. Supp. 3d 489 (D. Del. 2016) ..........................................................17, 19

*AVM Techs., LLC v. Intel Corp.,*
927 F. Supp. 2d 139 (D. Del. 2013) .........................................................17, 21

*Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.,*
2016 WL 4426681 (D. Md. Aug. 22, 2016), *aff'd,* 721 F. App'x 983 (Fed. Cir. 2018) ........................................................................................................17, 19

*DataQuill Ltd. v. High Tech Computer Corp.,*
2012 WL 1284381 (S.D. Cal. Apr. 16, 2012) .................................8, 9, 15, 20

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) ............................................................................................2

*Finjan, Inc. v. Secure Computing Corp.,*
626 F.3d 1197 (Fed. Cir. 2010) ........................................................................9

*Flexuspine, Inc. v. Globus Med., Inc.,*
2016 WL 9276023 (E.D. Tex. July 6, 2016) ...............................................5, 6

*Intelligent Verification Sys., LLC v. Microsoft Corp.,*
2015 WL 1518099 (E.D. Va. Mar. 31, 2015) ..................................................4

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
694 F.3d 51 (Fed. Cir. 2012) .........................................................3, 4, 17, 19

*Lucent Techs., Inc. v. Gateway, Inc.,*
580 F.3d 1301 (Fed. Cir. 2009) ........................................................................3

*M2M Sols. LLC v. Motorola Sols., Inc.,*
2016 WL 767900 (D. Del. Feb. 25, 2016) ....................................8, 15, 18, 19

*MAZ Encryption,*
2016 WL 4490706 (relying on *Virnetx, Inc. v. Cisco Systems, Inc.,* 767 F.3d 1308, 1326 (Fed. Cir. 2014) ............................................................................17

*Multimedia Patent Tr. v. Apple Inc.,*
2012 WL 12868264 (S.D. Cal. Nov. 20, 2012) .........................................5, 6, 7

*Parkervision, Inc. v. Qualcomm Inc.,*
2013 WL 12152672 (M.D. Fla. Oct. 11, 2013) ..............................................21

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017) ................................................................. 18

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ..................................................................... 3

*Skyhook Wireless, Inc. v. Google, Inc.*,
   2015 WL 13620764 (D. Mass. Feb. 18, 2015) ............................................. 5

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*,
   2015 WL 456154 (D. Del. Jan. 30, 2015) ............................................ 15, 21

*Texas Advanced Optoelectric Solutions, Inc. v. Renesas Electronics Am., Inc.*,
   888 F.3d 1322 (Fed. Cir. 2018) ........................................................... 21, 23

*USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ................................................................... 9

*Versata Software, Inc. v. SAP Am., Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013) ................................................................. 22

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ................................................................... 9

## <u>STATUTES</u>

Fed. R. Evid. 702 ............................................................................................... 2

## I.     INTRODUCTION

Plaintiff Qualcomm Inc. moves to exclude (i) Apple's technical experts' testimony and opinions regarding the technological comparability of Apple agreements, (ii) the expert testimony and opinions of Apple damages expert Dr. Prowse related to his affirmative reasonable royalty opinions; and (iii) certain of Dr. Fuchs's non-infringement opinions regarding the '936 Patent.

For each of the patents-in-suit, Apple's technical experts selected a single license agreement that they contended licensed comparable technology and on which Apple based its damages calculation.  But each of the four agreements is "radically different" from the claimed technology at issue in this case.  For the '936 Patent, Apple's expert did not even opine that the *license* at issue is comparable – only that three of the 18 licensed *patents* are technologically related to the '936 invention (only one even mentions graphic data in its claims).  Similarly, for the '949 Patent, Apple's expert opinions are limited to a perfunctory analysis of two of the patents in the portfolio license.  And for the '490 and '558 Patents, Apple's experts made no findings about the relationship between the licensed technology and the claimed inventions or the manner that Apple implements the licensed technology (if at all).  Apple's technical experts skirted the facial dissimilarities between the four agreements and Qualcomm's inventions by relying exclusively on high-level analysis of the licensed patents' disclosures, without any comparison of the patent claims, the manner in which the licensed technology is practiced, or the technological differences in the patents.  This approach violates Federal Circuit law and should be excluded.

Dr. Prowse's ███████ reasonable royalty is based *solely* on the payment amounts in the four agreements that Apple's technical experts opined licensed technically comparable patents.  All four agreements are between Apple and ███ ██████████████████████████████.  Dr. Prowse opines that each of those agreements are, coincidentally, also economically comparable to the hypothetical license—so much so that he did not make *a single adjustment*.  Dr. Prowse just took the

amounts from those agreements and concluded Qualcomm and Apple would have agreed to pay the exact same amounts at the hypothetical negotiation.  Notwithstanding that Dr. Prowse's purported economic comparability license analysis is the ***entire basis*** of his damages number, the totality of it is set forth in *four* short paragraphs of his 333 paragraph report.  Those conclusory four paragraphs contain virtually no analysis of any of the issues relevant to assessing economic comparability.  Dr. Prowse's reasonable royalty opinions should be excluded because he failed to analyze, much less account for, *any* of the economic differences in the purportedly comparable agreements, as the law requires.  His failure to do so requires exclusion of his opinion.

Finally, certain of Dr. Fuchs's non-infringement opinions should be excluded because they rest on the legally erroneous assumption that evidence of actual use is required to prove infringement of "configured to" claims.  His position violates established law and would, therefore, be highly misleading to the jury and prejudicial to Qualcomm if admitted.

## II.    LEGAL STANDARD

Expert testimony is admissible only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  "[T]rial judges [have] the responsibility of acting as gatekeepers to exclude unreliable expert testimony."  Fed. R. Evid. 702, committee notes on rules, 2000 amendment.  The Court's gatekeeping function is critical; indeed, the jury may believe the Court has put its "stamp of authority on a witness's opinion" simply because the Court designates the witness as an "expert"  *Id.*; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

## III.   APPLE'S TECHNICAL EXPERTS FAIL TO ESTABLISH THAT THE LICENSES APPLE'S DAMAGES EXPERT RELIES ON ARE TECHNOLOGICALLY COMPARABLE

Apple's damages number is based entirely on four agreements between Apple and █████—none of which licensed the patents-in-suit.  For each of the four patents-in-suit, Apple's technical experts identified one—and only one—agreement they opine licensed one or more technologically comparable patents.  But each of the four agreements is "radically different from the hypothetical agreement under consideration" and Apple's experts have proffered insufficient evidence to demonstrate their technical comparability or permit a trier of fact to "ascertain from the evidence presented the subject matter of the agreements."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327–28 (Fed. Cir. 2009) ("Lucent's brief characterizes the four agreements as covering 'PC-related patents,' as if personal computer kinship imparts enough comparability to support the damages award . . . .").

The Federal Circuit "has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit."  *ResQNet.com*, 594 F.3d at 869.  "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice."  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).  For example, in *Lucent*, the Federal Circuit held that a patentee's reliance on "various licenses in the same general computer field without proving a relationship to the patented technology of the accused products" was insufficient as a matter of law.  580 F.3d at 1325, 1332.  Likewise, in in *Laser Dynamics*, the Federal Circuit held the District Court erred in failing to exclude licenses that the proffering party had not demonstrated were "commensurate with what the defendant has appropriated."  694 F.3d at 79–80 (citing *ResQNet*, 594 F.3d at 872).  The Circuit cautioned that admitting licenses without requiring a demonstration of comparability at the *Daubert* stage risks allowing a party to manipulate "the reasonable royalty analysis with conveniently selected licenses without a . . . link to the technology in question."  *Id*.

Apple's technical experts have not offered opinions sufficient to support

technological comparability of the prior Apple license agreements upon which Apple relies. Instead, they cherry-picked patents from the four agreements and offer limited analysis of those patents' general disclosure and field of art. Apple's experts made no effort to address the differences between the technologies, their widely divergent time periods, or the manner in which Apple uses the allegedly comparable technology. They also repeatedly failed to assume (as the law requires) that the asserted patents are valid and infringed. The licenses Apple relies on fail to meet the threshold showing of comparability required for admissibility under Federal Rules of Evidence 403 and 702. *LaserDynamics*, 694 F.3d at 79–80; *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 1518099, at *2–5 (E.D. Va. Mar. 31, 2015) ("*IVS*") ("[T]he correct focus is on how the patented technology is practiced within the license."), *aff'd sub nom. Intelligent Verification Sys., LLC v. Majesco Entm't Co.*, 628 F. App'x 767 (Fed. Cir. 2016).

### A. Apple's Experts Applied The Wrong Legal Standard To Assess Technological Comparability

Each of Apple's experts limits his/her technological comparability analysis to three to four paragraphs that recite disclosures from the licensed patents. (*See, e.g.*, Ex. 1 ('490 Lin Rebuttal Report)[1] at ¶ 425; Ex. 2('949 Lin Rebuttal Report) at § XV; Ex. 3 ('558 Apsel Rebuttal Report) at ¶¶ 430-435; Ex. 4 ('936 Fuchs Rebuttal Report) at ¶¶ 462-465). Not a single expert analyzed the claims of the licensed patents, much less compared them to the asserted claims. Similarly, not a single expert offered any opinions regarding the products in which the licensed technology is used, much less how it is implemented by Apple.

Because their opinions are aimed at establishing ***license*** comparability, the scope and nature of the technology to which rights have been granted under the agreement must be evaluated. An assessment limited to the disclosures of the licensed patents is insufficient as a matter of law. *IVS*, 2015 WL 1518099, at *2–5. "Although the patent

---

[1] All cited exhibits are to the Declaration of Zachary Flood, filed herewith.

disclosure does have some role to play in the comparability analysis, it is not a role that can swallow the license agreement entirely." *Id*. In *IVS*, the court found that expert analysis that "focuses on the patent disclosures" is "not sufficient to establish comparability"—in part because "consideration of the [licensed] patent disclosures is theoretical in nature" and provides no evidence of the manner in which the licensed technology is used by the licensee. *Id*. at \*4. As a result, "hiding behind the language of the patent disclosures" improperly "ignores the role that the technological comparison plays within the license comparability analysis." *Id*. Since the technological considerations are supposed to establish "***license*** comparability," the "the correct focus is on how the patented technology is practiced within the license." *Id*.; *see also Multimedia Patent Tr. v. Apple Inc.*, 2012 WL 12868264, at \*9 (S.D. Cal. Nov. 20, 2012) (even licenses to the patents-in-suit may be non-comparable based on differences in how the technology is implemented).

**B.** **Apple's Experts' Conclusory And Flawed Opinions Of Technological Comparability Should Be Excluded**

Apple's experts' technical comparability opinions should be precluded for the related reason that they were predicated exclusively on their conclusory opinions that the "comparable" licensed patents relate to the same general field of art as the patents-in-suit – an approach rejected by a multitude of courts as both conclusory and "insufficient to demonstrate license comparability." *Skyhook Wireless, Inc. v. Google, Inc.*, 2015 WL 13620764, at \*2 (D. Mass. Feb. 18, 2015); *see also Flexuspine, Inc. v. Globus Med., Inc.*, 2016 WL 9276023, at \*5 (E.D. Tex. July 6, 2016). Their opinions in this regard are incomplete, fail to address salient technological distinctions identified by Qualcomm's experts, and in multiple instances are based on legally erroneous assumptions regarding the invalidity (or non-infringement) of the asserted patents.

**1.** The '949 Patent.

Dr. Lin's analysis of the allegedly comparable ████████ license agreement between Apple and ████████████████████ is

-5-

1  entirely perfunctory.  Dr. Lin opined that █████████████████████████

2  ████████████████████████ is "technologically comparable" to the '949 Patent merely

3  because it relates to generally to ███████████████████████████████

4  ██████████ (Ex. 2 ('949 at ¶ 867).  Dr. Lin provided no analysis regarding the manner

5  in which the ██████████ relates to the other licensed patents nor did he conclude the

6  agreement as a whole (as opposed to just one constituent patent) is technologically

7  comparable.

8       Dr. Lin  acknowledged  ██████████████████████████████████████

9  ██████████████████ (*id.* at ¶ 869) which has no discernible relationship to the

10  inventions of the '949 patent or the EBL bootloader used by the accused products'

11  modem.[2]  *See, e.g.*, *Flexuspine*, 2016 WL 9276023 at *5 (refusing to admit licenses in

12  the same alleged "field of use" in view of obvious differences in practical application);

13  *Multimedia  Patent  Tr.*,  2012  WL  12868264,  at  *9  (differences  in  technological

14  implementation support finding of non-comparability).  Although Dr. Lin noted this

15  difference, he provided no analysis about how it impacted comparability.  Similarly, Dr.

16  Lin noted there is a ██████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ██████████—other than to parrot his *invalidity* position that the '949 Patent "claims nothing

19  more than a standard way to use ELF files."  (Ex. 2 at ¶ 417).  Dr. Lin cannot premise

20  his comparability analysis on his invalidity opinion—doing so violates the predicate of

21  the hypothetical negotiation that the patents are assumed valid.

22       Finally, Dr. Lin's opinion that the ██████████ would be "at least as valuable as

23  the '949 Patent" because ███████████████████████████████████████████

24  ███████████████████████████████████████████████████████████ should

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [2]  *Compare* ████████████████████

27  ████████████████████████████████████████████████████████████████

28  *with* Ex. 28 (U.S. Patent 8,838,949) at cl. 1; abstract ("In a multi-processor system, an
    executable software image including an image header and a segmented data image is
    scatter loaded from a first processor to a second processor.").

1   be excluded because it is not supported by any factual evidence.  (*Id*. at ¶ 415).  Dr. Lin

2   offered no evidence to support the alleged "improvement" provided by ███████████—

3   much less to demonstrate it is "greater" than the '949 invention.

4              2.      The '490 Patent.

5          Dr. Lin's opinion regarding the comparability of the technology covered by the

6   ████████████ agreement between Apple and ████████████████████████████

7   ████████████ to the '490 Patent is similarly deficient because it is based entirely

8   on his conclusion that ██████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████

10  (Ex. 1 at ¶ 425).  Such a loose connection falls far short of linking the asserted claims to

11  the allegedly comparable technologies.  *See Skyhook*, 2015 WL 13620764 at *2.  Dr. Lin

12  made no effort to rebut the technical differences identified by Qualcomm's expert—

13  including that the ████████████ are significantly older, are not directed to mobile devices,

14  and would have no application to inter-processor communications in the accused

15  multiprocessor systems.  (Ex. 6 (Baker Report Appendix A) at ¶¶ 64-66).

16             3.      The '936 Patent.

17         Dr. Fuchs never opines that the ████████████████ license and settlement

18  agreement between Apple and ██████████████████████████████████████████

19  ████████████ is technologically comparable.  Instead, he limited his opinion to ████

20  ████████████████████████.  (*See* Ex. 4 at ¶ 462).  He concludes two of the patents,

21  the ████████████, are comparable merely because they generally relate to power

22  management circuitry.  (*Id*. at ¶¶ 463, 465).  But none of the claims of either patent say

23  anything about graphics processing, rendering them completely inapposite.  ██████████

24  ████████████████████████████████.  *See Multimedia Patent Tr*, 2012 WL

25  12868264 at *9 (excluding license that covered distinct technology from the asserted

26  patent).  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

█

While Dr. Fuchs identified what he contends to be certain "technical similarities" between the licensed patents and the '936 Patent, he made no effort to address the technological differences identified by Qualcomm's expert or the substantial age difference in the licensed technology (which predates introduction of the iPhone █ █ (*Compare* Ex. 4 at ¶¶ 463-465, *with* Ex. 10 (Annavaram Report Appendix A) at ¶¶ 102-104; *see also M2M Sols. LLC v. Motorola Sols., Inc.*, 2016 WL 767900, at *8-9 (D. Del. Feb. 25, 2016) (*citing DataQuill Ltd. v. High Tech Computer Corp.*, 2012 WL 1284381, at *2 (S.D. Cal. Apr. 16, 2012) (failure to address differences in the technology renders comparability analysis insufficient)).   Additionally, in comparing the relative value of the three licensed patents to the '936 patent , Dr. Fuchs opines that "because the '936 patent is invalid (and not infringed), the █ █ would offer more value to Apple than the '936 patent."  (Ex. 4 at ¶ 14).  Dr. Fuchs's relative value opinion runs afoul of black letter law that the asserted patents are assumed valid and infringed in the hypothetical negotiation construct.

4.   The '558 Patent.

Dr. Apsel's opinions regarding the comparability of certain patents licensed in █ █ to the '558 Patent are limited to her identification of a handful of common circuitry elements (*e.g.*, "transistors," "amplifiers," and "input and output signals") that ***could*** (according to the disclosure in some of the SPH patents) be implemented in a "small computer," "mobile communication system" or "portable phone."  (*See* Ex. 3 at ¶¶ 430-434).  Dr. Apsel provided no rationale for why these few, tenuous similarities between the disclosures of the '558 Patent and █ render those patents "technically comparable." (Ex. 3 at ¶¶ 430-434).  Dr. Apsel's failure to address any of the differences between █ █ and the claimed invention, as well as her disregard for how █ are practiced (or not practiced) by Apple, renders her conclusion that one of █

█████████████ is technically comparable deficient as a matter of law.  Dr. Apsel further opined these patents would be worth more than the '558 Patent based solely on her legally improper assumption that the '558 is invalid and not infringed.  (*Id.* at ¶¶ 430-434).[3]

## IV.   DR. PROWSE'S REASONABLE ROYALTY OPINIONS SHOULD BE EXCLUDED

An expert opining on the proper reasonable royalty for patent infringement may not rely on license agreements that are "radically different from the hypothetical agreement." *USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011).  The "use of past patent licenses *must* account for differences in the technologies and economic circumstances of the contracting parties." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) (emphasis added); *see also Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010).  "The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. 2011) (excluding reasonable royalty opinion with "no analysis at all of the economic differences" between the allegedly comparable agreements "and the license reached at the hypothetical negotiation").

### A.   The Apple-NPE Licensing Agreements

Dr. Prowse's reasonable royalty is based *entirely* on the four agreements Apple's technical experts identified as licensing some technically comparable patents, which Dr. Prowse conveniently concluded were all also economically comparable without the need

---

[3]   In his report, Dr. Prowse relied on Dr. Apsel's claim that the comparable patents would offer more value than the '558 patent because the '558 was invalid and not infringed.  (Ex. 11 (Prowse Rebuttal Report) at ¶ 196).  Apparently recognizing this error, at deposition Dr. Prowse voluntarily withdrew a sentence of his report that relied on Dr. Apsel's improper opinion. (Ex. 12 (Prowse Dep. Tr.) at 9:13-10:20).  Dr. Prowse testified that doing so did not impact his opinions (*id.* at 206:8-10).  While Dr. Prowse withdrew his reliance on Dr. Apsel's legally incorrect opinion – he continues to rely on opinions from Dr. Fuchs (regarding the '936 Patent) and Dr. Lin (regarding the '949 Patent) that suffer from the same legal error – *i.e.*, they fail to assume the asserted patents are valid and infringed.  (*See* Section II.B.1-2 *supra*).

1  for a single adjustment.  (*See* Ex. 11 at ¶ 206-07, 322; Ex. 12 at 95:21-96:3, 97:10-98:3).

2  Dr. Prowse lifted the ███████████████████ from the four agreements with

3  virtually no analysis of the licensor parties, or the economic circumstances surrounding

4  these agreements.  Notably, although Apple was a party to the agreements, Dr. Prowse

5  made no effort to speak with anyone at Apple about any of them, or their underlying

6  circumstances.  (Ex. 12 at 129:20-130:14).

7       1.   The ███████████████

8       The sole basis for Dr. Prowse's ████ reasonable royalty for the '949 Patent

9  is the allegedly comparable ████████████.  (*Id*. at 154:24-155:14).  Pursuant to

10  this agreement, Apple paid ████████████████████████████████████

11  ████████████ (Ex. 13 (████████████); Ex. 11 at ¶ 201-05).

12  ████████████████████████████████████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ████████████  Dr. Prowse's report makes no mention of the unique posture of

17  ████████████████████████, nor does it contain any economic

18  comparability analysis of those differing circumstances versus the hypothetical

19  negotiation.  At deposition, Dr. Prowse admitted he had not looked into the licensing

20  entity or the circumstances surrounding this license.   (Ex. 12 at 150:24-151:7).

21  According to Dr. Prowse, these facts were not relevant:

22  ████████████████████████████████████

23  ████████████████████████████

24  ████████████████

25  ████████████████████████████

26  ████████████████████████████████

27  ████████████████████████

28  (*Id*. at 145:11-146:4).  Dr. Prowse also dismissed the fact that ████████████

1   was executed ███████ years before the hypothetical negotiation,[4] as well as other

2   differences, with a single conclusory sentence and made no adjustments for any of them.

3   (Ex. 11 at ¶ 206).

4          2.   <u>The</u> ████████████████████

5       The sole input into Dr. Prowse's ██████ reasonable royalty for the '490 Patent

6   is the allegedly comparable ████████████.   (*Id.* at ¶ 322; Ex. 12 at 169:13-16).

7   Pursuant to this agreement, Apple paid ██████████████████████████████

8   ████████████████████████████ Ex. 11 at ¶ 198).

9   ████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████ (Ex. 17 (Whitt Dep. Tr.) at 159:22-8, 165:21-166:19). █

12  ████████████████████████████████████████████████

13  ██████████████████████████████████ (Ex. 12 at 159:22-

14  160:15).   Dr. Prowse's report contains virtually no discussion of the economic

15  circumstances surrounding the ███████████, much less any analysis of how those

16  differing circumstances impact the economic comparability of the agreement.  (Ex. 11

17  at ¶ 198-99, 202-06).  Dr. Prowse dismissed other economic differences with a single

18  conclusory sentence and made no adjustments for any of them.  (*Id.* at ¶ 206).

19         3.   <u>The</u> ████████████████

20      The sole input into Dr. Prowse's ██████ reasonable royalty for the '936 Patent

21  is the allegedly comparable ████████████ (Ex. 12 at 138:5-138:16).  As part of

22  that settlement agreement, Apple paid ████████████████████████████

23  ████████████████████████████████████████████

24  ██████████ (*Id.* at ¶ 187; Ex. 18 (████████████) at 4).  ████████████

25  ████████████████████████████████████ (Ex. 11 at ¶ 189;

26

27      [4]   Dr. Prowse and Qualcomm's damages expert, Dr. Kennedy, agree that the

28  hypothetical negotiation would have occurred in September 2016 for the '558 and '949 Patents, September 2017 for the '936 Patent, and January 2017 for the '490 Patent.  (Ex. 11 at ¶ 142.)



Ex. 18).  When asked what value Apple placed on the allegedly comparable, ███████

████████████████████████████████████████████████████████████████████████

██████████████████████████████ (Ex. 12 at 137:4-20).  For the ██████████

█████████, and the other purportedly comparable agreements, Dr. Prowse provided no

analysis that purports to tie his damages to the value of the patented technology.

Dr. Prowse's report contains no discussion of the economic circumstances

surrounding the ██████████████████████████████████████████, much less any

analysis of how the differing circumstances impact the economic comparability of the

agreement.  (Ex. 11 at ¶ 187-90, 202-06).  Dr. Prowse dismissed these, and other

differences, and made no adjustments for any of them.  (*Id*. at ¶ 206).

4.   The ████████████████████

The sole basis for Dr. Prowse's ██████ reasonable royalty for the '558 Patent

is ██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████

Under ██████████████████████, Apple collectively paid ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████ Notwithstanding this web of agreements, Dr.

Prowse based his ████████ reasonable royalty exclusively on only one —the agreement

with the smallest dollar amount.[5]  The agreement relied upon by Dr. Prowse provided

for ████████████████████████████████████████████████████████. (Ex. 21

at 8, 14-15).

When asked about the scope of certain terms in the agreements and whether he

understood the terms of the other agreements (for six times as much) to cover any of the



_____

5  ████████████████████████████████████████████████████████████████████████████

technology licensed under the allegedly comparable agreement, Dr. Prowse testified he ███████████████████████████████ (Ex. 12 at 178:8-182:12). He insisted the ███████████ and scope of the agreements were irrelevant to his analysis:



(*Id*. at 189:13-190:2; *see also id*. at 186:20-187:9).

Dr. Prowse's report contains no discussion or analysis of the other agreements, their relationship to one another ████████████████████████████ ████ *See* (Ex. 11 at ¶ 195-97, 202-06). Nor does Dr. Prowse adjust for the differences in the licensor entities, ██████████████████████████████ ████████████████████ (Ex. 11 at ¶ 202-06; Ex. 12 at 190:3-25). Dr. Prowse testified the reason he could consider the agreements separately was because he understood they were distinct and related to different types of technology. (Ex. 12 at 173:5-174:23). Dr. Prowse testified he learned this from the deposition testimony of Ms. Whitt, Apple's 30(b)(6) licensing witness. (*Id*. at 173:15-174:23, 183:20-184:1). But Ms. Whitt never said that; rather, when asked if she knew ██████████████████████████ ███████████████████████ she testified ██████████ (Ex. 17 at 202:19-25).

Again, Dr. Prowse dismissed these differences, and others, with a single conclusory sentence and made no adjustments for any of them. (Ex. 11 at ¶ 206).

**B. Dr. Prowse's Reasonable Royalty Opinion Should Be Excluded Because He Failed To Perform Any Economic Comparability Analysis**

1. Dr. Prowse Failed To Account For The Differences Between The NPEs and Qualcomm

Dr. Prowse readily acknowledged all four agreements on which his reasonable royalty relies were ████████████████████ (Ex. 12 at 140:18-19, 128:13-23,

159:22-23, 171:20-22).  He also agreed that █████████████████

█████ generally is a factor to be considered in assessing economic comparability.  (*Id.* at 105:13-106:4).  Notwithstanding that, ***Dr. Prowse did nothing to account for the differences between these*** █████████ ***and Qualcomm***—a $65 billion corporation on the forefront of research and development in the telecommunications and semiconductor industries that sells products and has a long history and complex business relationship with Apple.  (Ex. 17 at 50:12-25).  As Apple's Director of IP Transactions and 30(b)(6) licensing witness Jayna Whitt testified, Qualcomm ████████████████████

████████████████████████████████████████  Conversely, ███████████████

████████████████████████████████████████████████

██████████████  (*Id.* at 197:14-17).

According to Dr. Prowse, for his purposes, ***Qualcomm is indistinguishable from***



(Ex. 12 at 42:25-43:8, 232:24-233:23).  Rather than actually analyze the differences between Qualcomm and █████████ in terms of bargaining power, sophistication, cash reserves, willingness and ability to litigate, or existing relationships with Apple, Dr. Prowse rests his opinion solely on the fact that both Qualcomm and ████████████ █████████████████  (Ex. 11 at ¶ 202; *see also* Ex. 12 at 42:25-43:8).

The consequences of Dr. Prowse's abbreviated conclusion are implausible.  For example, notwithstanding that ███████████████████████████████ ██████████████████████████ (*see supra* at section A.1), Dr. Prowse concluded it is economically indistinguishable from Qualcomm for purposes of the hypothetical negotiation.  (Ex. 12 at 112:9-24).  He reached the same conclusion

1  with regard to the other three ███████████ (*Id*. at 126:2-127:3, 161:19-162:6, 172:17-

2  173:4).  Dr. Prowse doubled down at deposition, testifying that, if anything, ██████████

3  ████████████████ would have *more* bargaining power than Qualcomm in a

4  negotiation with Apple.  (*Id*. at 112:25-113:5).  He testified the same was true of the

5  three other ███████████ (*Id*. at 126:2-127:2; 161:19-24; 172:17-25).[6]  Dr. Prowse's

6  contention that these ████████████ would have more bargaining power against Apple

7  than Qualcomm is not only facially implausible, it is wholly unsupported by expert

8  analysis or factual evidence and is contrary to Apple 30(b)(6) testimony.

9      An expert may not account for the "economic circumstances" of the parties to an

10  agreement solely by answering the simple binary question whether they compete with

11  the other party.  *See M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 677 (D. Del.

12  2016) (excluding opinion based on "nebulous statements of comparability" that two

13  parties were similarly situated because both were NPEs).  ██████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████ *Sprint Commc'ns Co. L.P. v. Comcast IP*

16  *Holdings, LLC*, 2015 WL 456154, at *2 (D. Del. Jan. 30, 2015) (excluding reasonable

17  royalty opinion that failed to account for economic differences where purported

18  comparable license was "between Comcast and a non-practicing entity, meaning that

19  there were likely major economic differences between the negotiating parties").

20      In *DataQuill Ltd. v. High Tech Computer Corp.*, this court excluded a similar

21  opinion that likewise suffered from a false equivalence between NPEs and large

22  corporations.  887 F. Supp. 2d at 1023-24.  There, the damages expert for Dataquill—

23  an NPE—relied on a set of "significant patent agreements" defendant HTC had entered

24  into with large players in the industry.  *Id*. at 1023.  The court excluded Dataquill's

25  damages expert's opinion because the expert "appear[ed] to have no analysis at all of

26

27

28

---

[6]  Dr. Prowse did not disclose these conclusory opinions in his report.  Indeed, his report provides no background on any of the four NPEs and contains no analysis of them or their bargaining power vis-a-vis Apple or as compared to Qualcomm.

the economic differences between the 'significant patent agreements' and the license reached at the hypothetical negotiation," had "failed to establish economic comparability," and had "not presented sufficient evidence to allow the jury to weigh the economic differences between the licenses." *Id*. at 1023-24.  The court found the expert's lack of analysis particularly "troubling" given "'the significant patent agreements' appear[ed] to be licenses between HTC and heavyweights in the telecommunications industry such as Qualcomm . . . ." *Id*.

Further confirming the unreliability of Dr. Prowse's opinion is the contradictory testimony of Apple's 30(b)(6) witness, who testified ███████████████████ ████████████████████████████████████████████ ████████████████████ (Ex. 17 at 47:18-48:4; *see also id.* at 52:4-8 (████████ ████████████████████████████████████████████ ████████████████████████████).  Dr. Prowse's failure to address the economic differences between ███████████████ and Qualcomm renders his reasonable royalty opinion unreliable as a matter of law.

    2.    Dr. Prowse Failed To Account For The Fact That ████████ ████████████████████

Two of the four allegedly comparable agreements, ███████████████ ████████████████████████. (Ex. 11 at ¶ 192, FN 449; Ex. 12 at 124:25-125:6).  However, Dr. Prowse made no adjustment whatsoever for the fact that ██ ████████████████████████████████████████████. (Ex. 11 at ¶ 322; Ex. 12 at 120:1-18).  His report contains no analysis of ███████████ ████████ and at deposition he confirmed he had done no such analysis. (*Id*. at 120:19-121:13, 163:16-25, 187-90, 195-97).  This is an independent basis requiring exclusion of Dr. Prowse's reasonable royalty opinions for the '936 and '558 patents.

"The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable" as such agreements "are tainted by the coercive environment of patent litigation [and] unsuitable to prove a reasonable royalty," the

"premise of which assumes a voluntary agreement will be reached between a willing licensor and willing licensee, with validity and infringement of the patent not being disputed." *LaserDynamics*, 694 F.3d at 77. Where an expert chooses to rely on a settlement agreement, they must establish a "minimum relevance threshold" "to survive a *Daubert* motion." *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*, 2016 WL 4426681, at *24 (D. Md. Aug. 22, 2016), *aff'd*, 721 F. App'x 983 (Fed. Cir. 2018). "For a settlement agreement to meet this minimum threshold of relevance, the expert must provide *some* analysis on the litigation underlying the settlement. Without this analysis, the factfinder cannot accurately assess comparability." *Id.* (emphasis in original).[7]

Courts require at least ***some*** analysis of the underlying litigation because, for starters, the hypothetical negotiation presumes validity and infringement, which are uncertain in litigation, and the "damages amount arrived at in [a] settlement agreement [must] be translated into a damages number that the same parties would have arrived at just before infringement began had they, instead, assumed that the patent was infringed and valid." *MAZ Encryption*, 2016 WL 4490706, at *2 (relying on *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014)). To do this translation, investigation of the underlying litigation is necessary.

For example, the stage of the litigation at the time it was settled—and the posture based on the rulings to date—can materially influence the settlement amount. *See, e.g.*, *LaserDynamics*, 694 F.3d at 78 (settlement agreement "executed shortly before a trial" "ostensibly reflects not the value of the claimed invention but the strong desire to avoid further litigation under the circumstances"). In such circumstances, "the probative value

---

[7]   Relying on "a single settlement agreement on a different patent without any analysis of the settlement context is not a reliable method for calculating damages." *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 143 (D. Del. 2013). An expert's failure to provide this context to the factfinder requires exclusion. *See, e.g.*, *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 511–12 (D. Del. 2016) (excluding opinion relying on settlement agreements because expert failed "to undertake any analysis of the underlying litigation that led to the settlement"); *MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 4490706, at *1–2 (D. Del. Aug. 25, 2016) (excluding opinion on settlement agreement comparability where expert failed to analyze the underlying litigation).

1  of the []settlement agreement is dubious in that it has very little relation to demonstrated

2  economic demand for the patented technology[.]"  *Id*.; *see also Prism Techs. LLC v.*

3  *Sprint Spectrum L.P.*, 849 F.3d 1360, 1370 (Fed. Cir. 2017) ("[T]he litigation costs still

4  to come at the time of settlement may loom large in parties' decisions to settle."). █████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  ██████████████████.  It is a central task of a damages expert to "carefully tie proof

9  of damages to the claimed invention's footprint in the market place."  *LaserDynamics*,

10  694 F.3d at 67.  Dr. Prowse wholly failed to do so.

11       There is no dispute Dr. Prowse undertook no analysis of ████████████████

12  (Ex. 12 at 119:1-25; 133:24-134:23; 173:24-174:6; 177:10-178:7).  He did not even

13  know ████████████████████████████████████████████████████

14  ██████████████████████████████████████ (*Id*. at 134:4-23,

15  173:24-174:6.)  In fact, when asked how he generally went about analyzing ███████

16  ████████████████████████████████████████████████████████████

17  ██████████████████████████████████████ (*Id*. at 99:15-

18  21).  Dr. Prowse's understanding of what is required of him in order to ████████

19  ██████  is directly contrary to law.

20       Courts routinely exclude reasonable royalty opinions ██████████████

21  ████████████████████████████████████████████.  In *M2M*

22  *Solutions*, the defendant's expert relied on two settlement agreements for his reasonable

23  royalty.  *M2M*, 167 F. Supp. 3d at 677.  In excluding the comparability opinion, the court

24  noted the expert's analysis "virtually ignores the fact that these two licenses resulted

25  from litigation settlements, providing a drastically different backdrop than the

26  hypothetical negotiation involving two willing licensors."  *Id*. at 678.  In excluding an

27  opinion ██████████████████████████, the court explained:

28

[the expert] makes no effort to account for the fact that these agreements were litigation settlements.  He provides no background information about the litigation preceding these agreements or the overall context of the settlements.  Instead, [he] ignores the settlement context altogether and focuses on the fact that the licenses were between [defendant] and a non-practicing entity.  Under [the expert's] rationale, any license between [defendant] and a non-practicing entity would be economically comparable to a hypothetical negotiation between [defendant] and a different non-practicing entity, regardless of the specific technology or whether the license results from litigation settlements.  These unsubstantiated conclusions about economic comparability, lacking in analysis, again provide nothing more than *ipse dixit*."

*Id.* at 678.

As in *M2M*, ████████████████████████████████████████

███████████████████████. (Ex. 12 at 118:1-119:25).  And just as in *M2M*,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

3.     <u>Dr. Prowse Failed To Perform Any Analysis Of The Economic Circumstances Underlying The Agreements</u>

Dr. Prowse's failure to account for the facial differences between the licensor parties and Qualcomm and failure to analyze ████████████████ are part of a foundational flaw in his opinion:   he performed no analysis of myriad economic

---

[8]     Similarly, in *ART+COM*, the court excluded an expert who, ████████████ "fail[ed] to undertake any analysis of the underlying litigation that led to the settlement." 155 F. Supp. 3d at 511–12.  The court held that "[w]ithout such analysis, [the expert's] economic comparability conclusion cannot be based on sound economic and factual predicates."  *Id.*  The *Baltimore Aircoil* court likewise excluded an expert who, "[b]eyond acknowledging the actual terms of the settlement agreement," offered "no detail as to the litigation posture."  2016 WL 4426681, at *24.  The court explained that "[n]o amount of cross-examination can cure this defect, as the report does not provide any information on the parties' positions in regards to claim construction, validity, or infringement, and [the expert] did not supplement this information during her deposition."  *Id.*  "Without this information, the factfinder cannot assess to what degree the settlement agreement was 'tainted by the coercive environment of patent litigation.'"  *Id.* (quoting *LaserDynamics*, 694 F.3d at 77).



1  differences between the agreements he relies on and the hypothetical license, much less

2  makes a single adjustment.[9]

3       When asked about his failure to ████████████████████████████

4  ████████  and the hypothetical negotiation, Dr. Prowse testified ███████████████

5  ████████████████████████████████████████████████████████████████

6  ████████████  (Ex. 12 at 152:7-153:24).[11]

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████

12      Dr. Prowse's failure to address the difference in time periods between any of the

13 four agreements and the hypothetical negotiation—ranging from approximately ████████

14 ████████—further renders his opinions speculative and unreliable.  *See Parkervision,*

15

16    [9]  When questioned about his report's lack of any actual economic comparability

17 analysis, Dr. Prowse consistently contended he was being "conservative," claiming ████
   ███████████████████████████████████████████████████  (Ex. 12 at

18 91:21-92:13, 94:1-95:6, 112:25-113:14, 120:19-121-13, 124:9-24, 132:14-133:23,
   137:4-25, 151:17-23, 154:17-23, 159:11-21).  Dr. Prowse's "conservative" claim is no

19 excuse for failing to conduct the required analysis.  Failing to properly assess and
   account for the differences in bargaining power between ███████████████████ and a $65

20 billion corporation is not conservative.  Had Dr. Prowse actually performed any analysis
   on this, he would have had to conclude ███████████ had nowhere near the bargaining power

21 Qualcomm would at the hypothetical negotiation, requiring an *upward* adjustment to his
   reasonable royalty.  Similarly, adjustments for ██████████████████████████████

22 ██████████████████████████████████████████.  Further, his "conservative"
   excuse is at odds with the central task of an expert—to provide neutral analyses to assist

23 the trier of fact in assessing comparability, not to craft an inaccurate, "conservative"
   opinion.  Courts have rejected similar efforts to substitute analysis with claims of a

24 "conservative" approach.  *See, e.g., DataQuill*, 887 F. Supp. 2d at 1024 ("[T]he Federal
   Circuit in *Uniloc* made clear that a faulty damages analysis cannot be cured 'simply by
   asserting a low enough royalty rate.'").

25    [10]  Dr. Prowse and Qualcomm's damages expert, Dr. Kennedy, agree that the
   hypothetical negotiation would have occurred in September 2016 for the '558 and '949

26 Patents, September 2017 for the '936 Patent, and January 2017 for the '490 Patent.  (Ex.
   11 at ¶ 142.)

27    [11]  This opinion was not disclosed in Dr. Prowse's report.  (Ex. 12 at 153:25-154:16).

28    [12]  *See* https://www.apple.com/newsroom/2015/09/09Apple-Introduces-iPhone-6s-
   iPhone-6s-Plus/ at FN 4 (2009 Apple press release noting iPhone availability through
   "AT&T, Sprint, T-Mobile or Verizon").

*Inc. v. Qualcomm Inc.*, 2013 WL 12152672, at *5 (M.D. Fla. Oct. 11, 2013) (reasonable royalty opinions based on evidence from "seven years before the hypothetical negotiation [were] too speculative and unreliable to be helpful to the jury"); *AVM Techs.*, 927 F. Supp. 2d at 143 (D. Del. 2013) ("To say that one litigation settlement agreement relating to a different patent and executed five years after the hypothetical negotiation would have taken place—even assuming [technical comparability]—is the basis for an opinion is completely speculative without, at a minimum, some analysis of the litigation that led to the settlement."); *Sprint*, 2015 WL 456154, at *1-2 (excluding opinion based on "vague allegations of comparability . . . especially where the agreement occurred seven years after the hypothetical negotiation date.").

## V.   THE COURT SHOULD EXCLUDE OPINIONS REQUIRING "ACTUAL USE" FOR INFRINGEMENT OF THE '936 PATENT

The Court should exclude certain non-infringement opinions of Dr. Henry Fuchs, Apple's technical expert for the '936 Patent, because Dr. Fuchs applied the wrong legal standard in evaluating direct infringement of the asserted apparatus claims.  Rather than look to the ***configuration*** of the accused products—*i.e.*, their ***ability*** to receive and execute the instructions required by the asserted claims—Dr. Fuchs admits that his non-infringement opinions are based on the assumption that Qualcomm was required to show that such instructions are ***actually*** received and executed.  Dr. Fuchs's analysis is improper under established Federal Circuit law.

### A.   The '936 "Configured To" Claims Do Not Require Actual Use

The asserted '936 Patent claims are apparatus claims requiring a "controller" that is "configured" to perform certain functionality, including receiving and executing "graphics instructions" and "conversion instructions."  (*See* Ex. 26 (U.S. Patent 8,633,936), cl. 19).  Where, as here, functional language describes the configuration of a claimed apparatus, evidence of ***actual use*** is not required for a finding of infringement. *Texas Advanced Optoelectric Solutions, Inc. v. Renesas Electronics Am., Inc.*, 888 F.3d 1322, 1346 (Fed. Cir. 2018) ( "*TAOS*"); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d

1201, 1216-17 (Fed. Cir. 2014).  Rather, the focus is on whether the hardware and compiler software are configured to enable receipt and execution of the claimed instructions.  *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013) ("[A]n accused product may be found to infringe if it is reasonably capable of satisfying the claim limitation . . . .") (quotation & citation omitted).

**B.     Dr. Fuchs's Non-Infringement Opinions Violate The Law**

As a predicate for certain non-infringement positions, Dr. Fuchs asserts there is no evidence that the claimed functionality is ***actually*** used by the accused products:

(Ex. 4 at ¶ 165.)  This paragraph is emblematic of Dr. Fuchs' flawed methodology. According to Dr. Fuchs,

(*Id.*; *see also id.* at ¶¶ 136, 147, 155).

At deposition, Dr. Fuchs confirmed his flawed methodology, testifying that

(Ex. 27 (Fuchs Dep. Tr.)  at 156:16-22 (emphasis added); *see also id.* at 151:12-18, 155:25-156:13.[13]   This methodology cannot be squared with the governing legal standard.

Confirming and compounding his methodological error, Dr. Fuchs further testified

---

[13]     Dr. Fuchs applied this same flawed methodology in evaluating whether Qualcomm's products practice the '936 Patent.  (*E.g.*, Ex. 4 at ¶ 326.)  These opinions should also be excluded for the same reasons.

1  that 

8  (*Id.* at 166:24-167:13 (emphases added); *see also id.* at 167:24-168:3).  This approach

9  violates the principle that claims be construed identically for purposes of validity and

10  infringement.  *See, e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313,

11  1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both

12  invalidity and infringement.").

13      The Court should exclude Dr. Fuchs' non-infringement opinions based on the

14  incorrect legal understanding that Qualcomm was obligated to demonstrate that the

15  accused products ***actually*** receive and executed the instructions recited in claim 19.  Dr.

16  Fuchs admitted he applied an "actual use" infringement standard that is at odds with the

17  governing law set forth by the Federal Circuit in *TAOS*.  This renders Dr. Fuchs'

18  opinions unreliable and misleading.

## VI.   CONCLUSION

20      For the foregoing reasons, the motion be granted and the opinions of Apple's

21  technical experts should be excluded as set forth above.

1  DATED:  November 27, 2018          Respectfully Submitted,

2

3                                     By */s/ Valerie Lozano*

4                                     JONES DAY
                                      Karen P. Hewitt (SBN 145309)
5                                     kphewitt@jonesday.com
                                      Randall E. Kay (SBN 149369)
6                                     rekay@jonesday.com
                                      John D. Kinton (SBN 203250)
7                                     jkinton@jonesday.com
                                      Kelly V. O'Donnell (SBN 257266)
8                                     kodonnell@jonesday.com
                                      4655 Executive Drive, Suite 1500
9                                     San Diego, California 92121
                                      Telephone: (858) 314-1200
10                                    Facsimile: (858) 345-3178

11                                    QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
12                                    David A. Nelson (*pro hac vice*)
                                      (Ill. Bar No. 6209623)
13                                    davenelson@quinnemanuel.com
                                      Stephen Swedlow (*pro hac vice*)
14                                    (Ill. Bar No. 6234550)
                                      stephenswedlow@quinnemanuel.com
15                                    500 West Madison St., Suite 2450
                                      Chicago, Illinois 60661
16                                    Telephone: (312) 705-7400
                                      Facsimile: (312) 705-7401

17

18                                    Scott L. Watson (SBN 219147)
                                      scottwatson@quinnemanuel.com
19                                    Valerie A. Lozano (SBN 260020)
                                      valerielozano@quinnemanuel.com
20                                    865 South Figueroa Street, 10th Floor
                                      Los Angeles, CA 90017
21                                    Telephone: (213) 443-3000
                                      Facsimile: (213) 443-3100

22                                    Richard W. Erwine (*pro hac vice*)
                                      (N.Y. Bar No. 2753929)
23                                    richarderwine@quinnemanuel.com
                                      Alexander Rudis (*pro hac vice*
24                                    forthcoming)
                                      (N.Y. Bar No. 4232591)
25                                    alexanderrudis@quinnemanuel.com
                                      Patrick D. Curran (SBN 241630)
26                                    patrickcurran@quinnemanuel.com
                                      51 Madison Avenue, 22nd Floor
27                                    New York, NY 10010
                                      Telephone: (212) 849-7000
28                                    Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Michelle A. Clark (SBN 243777)
michelleclark@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar. No. 2784817)
aryan@cravath.com
David R. Marriott (*pro hac vice*)
(N.Y. Bar. No. 2682565)
dmarriott@cravath.com
Worldwide Plaza, 825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

JODIE W. CHENG, P.C.
Jodie W. Cheng (SBN 292330)
jwcheng@jwc-legal.com
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Telephone: (415) 293-8308

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Attorneys for Plaintiff and
Counterclaim Defendants
QUALCOMM INCORPORATED and
QUALCOMM TECHNOLOGIES, INC.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 27, 2018 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on November 27, 2018 at Los Angeles, California.

*s/ Valerie Lozano*
_____