Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Frank J. Albert, SBN 247741, albert@fr.com
Joanna M. Fuller, SBN 266406, jfuller@fr.com
Robert M. Yeh, SBN 286018, ryeh@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Phone: 858-678-5070 / Fax: 858-678-5099

Mark D. Selwyn, SBN 244180, mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Phone: 650-858-6000 / Fax: 650-858-6100

[Additional counsel listed in signature block on last page]

Attorneys for *Defendant/Counterclaim-Plaintiff APPLE INC.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>Plaintiff,<br>v.<br><br>APPLE INCORPORATED,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-CV-1375-DMS-MDD<br><br>**APPLE INC.'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF DRS. PRINCE, KENNEDY, BROGIOLI, AND KELLEY**<br><br>Date:          January 11, 2019<br>Time:          1:30 pm<br>Courtroom:  13A<br>Judge:         Hon. Dana M. Sabraw<br><br>**REDACTED** |

# TABLE OF CONTENTS

**Page**

I. The Court Should Exclude Dr. Prince's Opinions ................................................. 1

    A. Dr. Prince's Survey Is Not Tied to the Patented Claims .......................... 1

    B. Dr. Prince's Survey Is Not Properly Apportioned ................................... 4

    C. Qualcomm's Suggestion that Apple Has Taken Inconsistent Positions on these Issues Ignores Important Distinctions Between the Challenged Conjoint Surveys .......................... 5

II. The Court Should Exclude Dr. Kennedy's Opinions ......................................... 6

III. The Court Should Exclude Dr. Brogioli's Opinions ........................................... 7

IV. Dr. Kelley's "Power Savings" opinions are based on unsound methodology ............................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 12-cv-630-LHK, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014) ........................... 2, 5

*Apple Inc. v. Wi-LAN Inc.*,
  No. 3:14-cv-02235-DMS-BLM (S.D. Cal.) ........................................................................ 5

*Gen. Elec. v. Joiner*,
  522 U.S. 136 (1997) .......................................................................................................... 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................... 10

*NetAirus Techs., LLC v. Apple, Inc.*,
  No. LACV1003257, 2013 WL 12322092 (C.D. Cal. Oct. 23, 2013) ......................... 2, 3

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
  561 F. App'x 909 (Fed Cir. 2014) .................................................................................... 9

*Shalaby v. Irwin Industrial Toll Co.*,
  No. 07-cv-2107-MMA (BLM), 2009 WL 7452756 (S.D. Cal. July 28,
  2009) ................................................................................................................................. 8

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) .............................................................................. 4, 5, 10

*TV Interactive Data Corp. v. Sony Corp.*,
  929 F. Supp. 2d 1006 (N.D. Cal. 2013) ........................................................................... 5

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ........................................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(D) ........................................................................................................ 8

In its opposition, Qualcomm ignores the flaws in its experts' reports, relying instead on strawman arguments and legal mischaracterizations. The Court should grant Apple's motion.

## I. THE COURT SHOULD EXCLUDE DR. PRINCE'S OPINIONS

Dr. Prince's survey is not tied to the facts of the current case, and therefore is fundamentally flawed. This stems from Dr. Prince's decision to import into the case results from a survey designed for a different case involving different issues and different technology—indeed, in that case, Qualcomm is not even asserting patent infringement claims. As a result, the survey is not designed to reflect the claimed technology at issue here, nor can Dr. Prince offer principled reasons for why he selected all of the surveyed features. Nothing Qualcomm says in its opposition justifies these flaws; to the contrary, the cases cited by Qualcomm only highlight Dr. Prince's flawed methodology here. Dr. Prince's opinions should be excluded.

### A. Dr. Prince's Survey Is Not Tied to the Patented Claims

Qualcomm does not dispute that the allegedly infringing functionality for the '936, '558, and '490 patents is relevant only in limited use cases.[1] (Opp. 7-8.) Critically, Dr. Prince's survey does not address those specific use cases. Instead, Dr. Prince measured ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████ (Dkt. 464-G [Prince Rep., Att. E] at 12).) Indeed, Dr. Prince made **no** attempt to draft his survey questions to reflect the claim limitations, but instead lifted the results wholesale from a survey designed for an entirely different proceeding involving different issues and different technology. (Dkt. 464-F [Prince Rep.] ¶¶ 4, 14; Dkt. 464-N [Prince Dep.] at 41:7-17.) As a result, at best the survey measures how much

---

[1] Specifically, for the '936 patent, when 3D graphics are displayed; for the '558 patent, in certain circumstances, such as when the user is connected to a distant tower; and for both the '558 and '490 patent, when the user is connected via cellular networks rather than through Wi-Fi. (Mot. 1-2, 10-11.)

respondents value a flat improvement in battery life under essentially any usage circumstances ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, which is not relevant to how much the respondents value improvements under the specific, narrow usage conditions allegedly covered by the asserted claims.

This is not a "quibble" or mere dissatisfaction with the description of the patented language. (Opp. 2, 7.) Instead, it is a fundamental problem with Dr. Prince's methodology—a problem with the value he is trying to measure. Dr. Prince does not attempt to capture the value of the claimed inventions, but rather a much broader swath of user behavior, with no attempt to distinguish between claimed and unclaimed functionalities. As a result, the survey results are not tied to the patented features.

The court's reasoning in *Apple, Inc. v. Samsung Elecs. Co.*, cited by Qualcomm, is instructive. No. 12-CV-00630-LHK, 2014 WL 794328, at *18 (N.D. Cal. Feb. 25, 2014). In that case, the court considered whether Apple's survey ought to be excluded because of differences between the asserted claim, which required **three** background synchronization components, and the survey description, which "suggested to survey respondents that the patent covered only **one** synchronization component." *Id.* at *18-*19 (emphasis added). The court reasoned that the survey was admissible, but only because Apple could present evidence showing "the relevant choice" was "between a device with background synchronization and a device without background synchronization (not a choice between three-component background synchronization and one-component background synchronization)"—*i.e.*, because the survey captured the distinction between patented and unpatented behavior. *Id.* at *19. Qualcomm has made no such showing here.[2] Indeed, Qualcomm does not dispute that the asserted claims are significantly narrower than the survey's description of ▬▬▬▬▬▬

---

[2] Because the survey in *Apple* distinguished between patented and unpatented features, unlike Dr. Prince's survey, Apple's position here is consistent with Apple's position in the -630 case. (*See* Opp. 7 (citing Dkt. 504-29).)

As a result, Dr. Prince's survey questions, as in *NetAirus* and *Fractus*, "do not measure how consumers value the purported advantages" of the patented inventions. *Fractus*, No. 6:09-CV-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011); *see also NetAirus Techs., LLC v. Apple, Inc.*, No. LACV1003257, 2013 WL 12322092, at *3-4 (C.D. Cal. Oct. 23, 2013). Qualcomm attempts to distinguish these cases, claiming *Fractus* is not relevant because it was a short, unpublished opinion from a court outside of the Ninth Circuit and *NetAirus* is not relevant because it involved a "contingent valuation" survey rather than a conjoint survey. (Opp. 8-9.) But the *Fractus* reasoning has been cited approvingly by courts in this Circuit, *see Apple*, 2014 WL 794328, at *18, and the *NetAirus* court excluded the results of the survey not because it found the "contingent valuation" methodology unreliable, but because the survey was drafted so as to "seek[] to value something that is significantly broader than the claimed invention without adequate justification," 2013 WL 12322092, at *4, the exact scenario in this case.

Dr. Kennedy's later "apportionment" cannot correct this mismatch. (Opp. 8.) Ultimately, Dr. Kennedy's analysis rests entirely on Dr. Prince's estimates of the value of additional minutes of ▮▮▮▮▮▮ battery life. (Dkt. 464-E [Kennedy Rep.] at ¶¶ 101-105.) But the claimed technology does not provide a flat increase in battery life, without regard to the circumstances of that use; rather, it purportedly provides improvement in certain usage conditions, which may or may not be valuable to any particular user. The value a user places on additional battery life in all conditions does not speak to the value he places on additional battery life when displaying 3D graphics, or when connected far from a cell tower, or when connected via a cellular rather than Wi-Fi connection. Because Dr. Kennedy's analysis rests on a flawed premise, later apportionment cannot correct for this fundamental error. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion."). By contrast, the expert

analysis permitted in *Summit 6* did not involve a flawed conjoint survey and did not begin from a flawed premise.  *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1297 (Fed. Cir. 2015).  Dr. Prince's survey results are fundamentally flawed and should therefore be excluded.

### B. Dr. Prince's Survey Is Not Properly Apportioned

In its opposition, Qualcomm casts Apple's position as one that "would render conjoint surveys inadmissible in all smartphone cases, where the product has hundreds of features," and then criticizes Apple itself for relying on conjoint surveys in other proceedings.  (Opp. 9.)  This is a strawman, easily rejected.  It is true, as Apple's expert Dr. Simonson testified, that selecting just six or seven features from a smartphone (where there may be hundreds of relevant features) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. 506 (Ex. 32) [Simonson Dep. Tr.] at 15:7-14.)  But Apple does not contend that all such conjoint surveys are necessarily unreliable—just that care must be taken in designing such a survey to ensure that it properly apportions the value of the claimed features relative to all unclaimed features.  Dr. Prince has not taken that necessary care here.

Dr. Prince's failure to apportion is shown in the survey results themselves—that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  (Mot. 12-13 (citing Dkt. 464-O [Prince Rep., Ex. 12]).)  These results, which do not include hundreds of unsurveyed features, demonstrate the unreliability of Dr. Prince's survey.

Qualcomm attempts to compensate for Dr. Prince's unreliable survey results by citing arguments Apple made in the context of other cases and other expert reports, for example that willingness-to-pay values cannot simply be added together in this way. (Opp. 6.)  But here, that is exactly how Qualcomm's experts use these willingness-to-pay numbers—Dr. Prince converts them ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which Dr. Kennedy then uses to estimate how much of Apple's profits are purportedly

associated with the claimed inventions. (*See* Mot. 13-14 (citing Dkt. 464-F [Prince Rep.] ¶ 72)); *see also* Dkt. 464-E [Kennedy Rep.] ¶¶ 105-108.) Under this methodology, unreasonably high willingness-to-pay values will correlate directly with unreasonably high incremental profit estimates.

Dr. Prince's report also shows that Qualcomm's assertions that "Dr. Prince went to great lengths to identify an appropriate set of features to survey," and that he "first established a 'principled basis for choosing the [] features which would be tested alongside [patented features]' and then measured the '[patented] values relative to the other features'" are wrong. (Opp. 10 (alterations in original).) Dr. Prince spent only a few lines explaining his selection, and his only rationale for including ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was that "they were features of interest in [his] previous report" in a different proceeding. (Dkt. 464-F [Prince Rep.] ¶ 26 & n.32.) This case is similar to *Oracle*,[3] both with its "irrational" results and because "the expert offered no principle[d] basis for selecting" two of the non-patented features. *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1026 (N.D. Cal. 2013).

### C. Qualcomm's Suggestion that Apple Has Taken Inconsistent Positions on these Issues Ignores Important Distinctions Between the Challenged Conjoint Surveys

Instead of confronting Apple's arguments head-on, Qualcomm devotes a major portion of its brief to excoriating Apple for alleged inconsistencies in other proceedings that involved different parties, different technology, and different expert reports. But each case is judged on its merits. Indeed, as discussed above, because the underlying

---

[3] Qualcomm's argument that Apple previously distinguished *Oracle* on similar facts in *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-630-LHK (N.D. Cal.) (Opp. 10-11), ignores the differences between Apple's expert's analysis in *Samsung* and Dr. Prince's analysis here, including that Apple's expert in *Samsung* properly selected the tested features by "researching what features are promoted by sellers of Samsung phones," rather than ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Dkt. 504-29 at 7 n.7.) This, in addition to Dr. Prince's failure to tie the survey questions to the patented technology, also distinguishes this Motion from that in *Apple Inc. v. Wi-LAN Inc.*, No. 3:14-cv-02235-DMS-BLM (S.D. Cal.). (*See* Opp. 6 & n.9.)

5     Case No. 3:17-CV-1375-DMS-MDD

1  facts in these cases were different, if anything the cases cited by Qualcomm only
2  emphasize the flaws in Dr. Prince's analysis here.  *See, e.g.*, *supra* at 2-5, n.2 & n.3.  That
3  Apple is a frequent litigant (and often, defendant) in patent litigation matters, that Apple
4  has submitted conjoint surveys of its own, and that Dr. Prince has frequently (and indeed,
5  near-universally) submitted expert reports counter to Apple do not render Dr. Prince's
6  unreliable survey somehow immune from criticism.

## II.     THE COURT SHOULD EXCLUDE DR. KENNEDY'S OPINIONS

Dr. Kennedy did not, as Qualcomm claims, provide a "thorough bargaining power analysis supported by multiple analytic methods."  (Opp. 11.)  Instead, at best, Dr. Kennedy combined his Rubinstein analysis with a recitation of a few additional financial metrics and a discussion of Apple's litigation history with an economically distinct competitor of Apple in the smartphone market.  (Opp. 13 (citing Dkt. 464-E [Kennedy Rep.] ¶¶ 205-207, 218-223).)  Qualcomm does not claim that Dr. Kennedy:



.  (*See* Mot. 15-16.)  These are major flaws in Dr. Kennedy's analysis.

Given Dr. Kennedy's failure to consider these critical aspects of the hypothetical negotiations, Qualcomm cannot show that his analysis differed from the analysis that was excluded in *Limelight Networks, Inc. v. XO Communications, LLC*.  Qualcomm does not even address the *Limelight* court's criticism that "using WACC as a proxy for patience in the Rubinstein model does not consider the actual stakes in the hypothetical negotiation or even the specific patents negotiated"—criticism that applies equally to Dr. Kennedy's

1  profit-splitting analysis here. No. 3:15-CV-720-JAG, 2018 WL 678245, at *3 (E.D. Va.
2  Feb. 2, 2018). Instead, Qualcomm claims only that Dr. Prowse "relied" on the
3  Rubinstein model in *Limelight*, while Dr. Kennedy considered the model in context of a
4  few additional financial metrics and unrelated litigation. (Opp. 15.) This is a distinction
5  without a difference; Dr. Kennedy's analysis, like the analysis in *Limelight*, did not take
6  into account the specifics of the hypothetical negotiations like the stakes at issue or the
7  specific patents under negotiation.
8      Nor does *Content Guard Holdings, Inc. v. Amazon.com, Inc.* support a different
9  conclusion, as Qualcomm suggests. (Opp. at 15-16 (citing No. 2:13-CV-1112-JRG, 2015
10  WL 11089749 (E.D. Tex. Aug. 6, 2015)).) The court in *Content Guard* specifically noted
11  that the plaintiff "articulate[d] each premise of the Rubenstein model and cite[d] to
12  specific evidence from Teece's report that supports the premise." 2015 WL 11089749,
13  at *8. Qualcomm did not do so here, instead arguing only that the premises underlying
14  Dr. Kennedy's analysis are "rooted in common sense and basic financial economics,"
15  without citation to specific evidence from Dr. Kennedy's report—evidence that does not
16  exist. (Opp. 14.) Because Dr. Kennedy's profit splitting analysis ignores entirely critical
17  aspects of the hypothetical negotiations, Dr. Kennedy's ultimate fifty-fifty split should
18  be excluded.

19  **III.  THE COURT SHOULD EXCLUDE DR. BROGIOLI'S OPINIONS**
20      Qualcomm's opposition fails to adequately address either of the two primary
21  reasons for excluding Dr. Brogioli's opinions. **First**, they do not relate to any triable
22  issues in this case—a thematic statement by Apple in the CMS (Dkt. 115) about
23  Qualcomm's competitive position does not warrant Dr. Brogioli's review and
24  regurgitation of Apple's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
25  Despite Qualcomm's assertion that Apple intends to introduce evidence on
26  "anticompetitive" issues, Apple's own experts **never** provided opinions on
27  anticompetitive behavior in their opening reports, where they had the burden of opining
28

1  in the first instance. None of Apple's statements in its CMS, its withdrawn equitable
2  defenses (Dkt. 462-7 & 462-9), or the **rebuttal** expert report of Dr. Prowse (Dkt. 462-8)
3  warrants Dr. Brogioli's "rebuttal" expert opinions. The relevance standard under *Daubert*
4  requires a tie to actual issues the jury will decide, and none of the ostensible grounds
5  identified by Qualcomm qualifies. *See, e.g.*, *Shalaby v. Irwin Industrial Toll Co.*, No. 07-cv-
6  2107-MMA (BLM), 2009 WL 7452756, at *10 (S.D. Cal. July 28, 2009) ("Relevancy
7  requires opinions that would assist the trier of fact in reaching a conclusion necessary to
8  the case."). **Second,** Dr. Brogioli's opinions are not based on specialized knowledge, but
9  rather are recitations of documents for which he has no specialized knowledge or
10 regurgitations of attorney conclusions. *See, e.g.*, (Mot. at 6-7) (█████████████
11 ███████████████████████████████████████████████████████
12 ████████). Qualcomm tries to justify Dr. Brogioli's opinions on █████ because they are
13 "technical," but complexity alone does not justify otherwise unqualified expert opinions.
14 (*Id.* at 21.) Qualcomm also seeks to explain away ALJ Pender's exclusion of Dr. Brogioli's
15 opinions in the ITC Investigation on the grounds that he had other reasons beyond those
16 argued here for doing so, but that does not detract from the finding that Dr. Brogioli's
17 nearly identical report submitted there involved no specialized knowledge and merely
18 summarized documents.
19      The Court, however, may not need to reach these *Daubert* issues at all, because Dr.
20 Brogioli's report should be stricken as an improper rebuttal. The independent legal bases
21 of Apple's separate motion to strike (Dkt. 409) is the unambiguous rule (Dkt. 152, ¶ 17
22 & Fed. R. Civ. P. 26(a)(2)(D)) that an expert rebuttal is "solely to contradict or rebut
23 evidence on the same subject matter identified in an expert report submitted by another
24 party." Qualcomm's argument here (Opp. at 19) that "Dr. Brogioli's testimony serves
25 to rebut those [anticompetitive behavior] theories … with a detailed analysis of facts
26 demonstrating ███████████████████████████████████████
27 █████" confirms Apple's argument that Dr. Brogioli's opinions are **not rebutting** any of
28

8   Case No. 3:17-CV-1375-DMS-MDD

Apple's experts' opinions. None of Apple's experts' opening opinions relates to anticompetitive conduct or alleged misuse of Qualcomm information.

## IV. DR. KELLEY'S "POWER SAVINGS" OPINIONS ARE BASED ON UNSOUND METHODOLOGY

Apple's challenges to Dr. Kelley's "power savings" opinions address two fundamental flaws in the methodology for arriving at those opinions.

***First***, Dr. Kelley estimated the "benefit" of the '558 patent ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (Dkt. 464-L [Kelley Rep.] ¶¶ 321, 323-328.) This is methodologically unsound because the "aim of the [damages] calculation is to measure the market value of the invention itself—what it is worth to potential users, compared to their using only noninfringing technologies." *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 561 F. App'x 909, 912 (Fed Cir. 2014) (denying interlocutory review of decision to exclude expert testimony due to the "serious flaw[]" of failing to properly apportion revenue to "the features actually causing the alleged infringement"). This fundamental error in Dr. Kelley's methodology results in an incorrect and overstated "power savings" estimate.[4] *See Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997) ("[C]onclusions and methodology are not entirely distinct from one another. . . . A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

***Second***, Dr. Kelley's methodology attributes as a "benefit" of the '558 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ The output range alleged by Qualcomm is not used by the accused ET mode exclusively. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. (Ex. XX [Qorvo Programming

---

[4] Contrary to Qualcomm's argument (Opp. at 24), named '558 inventor Thomas Marra testified ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. (Ex. ■ [Marra 1065 Trial Tr.] at 44:13-21.) Dr. Kelley thus could have ■■■■■■■■■■■■■■■■■■■■■■■■■■■■ but simply chose not to do so. (Dkt. 464-13 [Kelley Dep.] at 174:5-175:9; 203:11-207:5.)

9     Case No. 3:17-CV-1375-DMS-MDD

1  Guide] at -4655, Figure 16.)  The programming guide therefore supports Ron
2  Dimpflmaier's testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮  (Ex. XX [Dimpflmaier Dep.] at 22:3-23.)  Dr. Kelley's methodology is thus
4  unreliable because "the data used is not sufficiently tied to the facts of the case"—namely,
5  it is not tied to the percentage of time the accused devices operate in the accused ET
6  mode, and instead ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ within the alleged "benefit."  His
7  opinions based on this methodology should thus be excluded.  *Summit 6, LLC v. Samsung*
8  *Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d
9  1301, 1333 (Fed. Cir. 2009).

By: /s/ *Robert M. Yeh*

Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Frank Albert, SBN 247741, albert@fr.com
Joanna M. Fuller, SBN 266406, jfuller@fr.com
Robert M. Yeh, SBN 286018, ryeh@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Phone: 858-678-5070 / Fax: 858-678-5099

Katherine D. Prescott, SBN 215496,
prescott@fr.com
Betty H. Chen, SBN 24056720,
betty.chen@fr.com
Esha Bandyopadhyay, SBN 212249
esha@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Phone: 650-839-5070 / Fax: 650-839-5071

Ruffin B. Cordell, DC Bar No. 445801,
*appearing pro hac vice,* cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421,
*appearing pro hac vice,* degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Phone: 202-783-5070 / Fax: 202-783-2331

Mark D. Selwyn, SBN 244180,
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Phone: 650-858-6000 / Fax: 650-858-6100

11   Case No. 3:17-CV-1375-DMS-MDD

1 | William F. Lee, MA Bar No. 291960, appearing *pro hac vice*, william.lee@wilmerhale.com
2 | Joseph J. Mueller, MA Bar No. 647567, appearing *pro hac vice*, joseph.mueller@wilmerhale.com
3 | Timothy Syrett, MA Bar No. 663676, appearing *pro hac vice*, timothy.syrett@wilmerhale.com
4 | Sarah B. Petty, appearing *pro hac vice*, sarah.petty@wilmerhale.com
5 | Jonathan W. Woodard, *pro hac vice*, jonathan.woodard@wilmerhale.com
6 | Louis W. Tompros, appearing *pro hac vice*, louis.tompros@wilmerhale.com
7 | Bradley M. Baglien, appearing *pro hac vice*, bradley.baglien@wilmerhale.com
8 | Dominic E. Massa, appearing *pro hac vice*, dominic.massa@wilmerhale.com
9 | WILMER CUTLER PICKERING HALE AND DORR LLP
10 | 60 State Street
11 | Boston, MA 02109
12 | Phone: 617-526-6000 / Fax: 617-526-5000
13 |
14 | Nina S. Tallon, DC Bar No. 479481, *appearing pro hac vice*, nina.tallon@wilmerhale.com
15 | WILMER CUTLER PICKERING HALE AND DORR LLP
16 | 1875 Pennsylvania Avenue NW
17 | Washington, DC 20006
18 | Phone: 202-663-6000 / Fax: 202-663-6363
19 |
20 | Matthew Leary, appearing *pro hac vice*, matthew.leary@wilmerhale.com
21 | WILMER CUTLER PICKERING HALE AND DORR LLP
22 | 1225 Seventeenth Street, Suite 2600
23 | Denver, CO 80202
24 | Phone: 720-274-3135 / Fax: 720-274-3133
25 |
26 | William A. Isaacson, DC Bar No. 414788, *appearing pro hac vice*, wisaacson@bsfllp.com
27 | Karen L. Dunn, DC Bar No. 1002520, *appearing pro hac vice*, kdunn@bsfllp.com

| | |
|---|---|
| 1 | BOIES SCHILLER FLEXNER LLP |
| | 1401 New York Avenue, N.W. |
| 2 | Washington, DC 20005 |
| 3 | Phone: 202-237-2727 / Fax: 202-237-6131 |
| 4 | Benjamin C. Elacqua, TX SBN 24055443 |
| 5 | *appearing pro hac vice,* elacqua@fr.com |
| | John P. Brinkman, TX SBN 24068091 |
| 6 | *appearing pro hac vice,* brinkman@fr.com |
| 7 | Tony Nguyen, TX SBN 24083565 |
| | *appearing pro hac vice*, nguyen@fr.com |
| 8 | FISH & RICHARDSON P.C. |
| 9 | One Houston Center, 28th Floor |
| | 1221 McKinney |
| 10 | Houston, TX 77010 |
| 11 | Phone: 713-654-5300 / Fax: 713-652-0109 |
| 12 | Brian P. Boyd, GA SBN 553190, |
| | *appearing pro hac vice,* bboyd@fr.com |
| 13 | Christopher O. Green, |
| 14 | *appearing pro hac vice*, cgreen@fr.com |
| | FISH & RICHARDSON P.C. |
| 15 | 1180 Peachtree St. NE, 21st Floor |
| 16 | Atlanta, GA 30309 |
| | Phone:  404-892-5005 / Fax:  404-892-5002 |
| 17 | |
| 18 | Daniel Sternberg, *pro hac vice*, sternberg@fr.com |
| | FISH & RICHARDSON P.C. |
| 19 | One Marina Park Drive, Floor 16 |
| 20 | Boston, MA 02210 |
| | Phone:  617-542-5070 / Fax:  617-542-8906 |
| 21 | |
| 22 | Phillip W. Goter, appearing pro hac vice, |
| | goter@fr.com |
| 23 | FISH & RICHARDSON P.C. |
| 24 | 60 South Sixth Street, 3200 RCB Plaza |
| | Minneapolis, MN 55402 |
| 25 | Phone:  612-335-5070 / Fax:  612-288-9696 |
| 26 | |
| 27 | Joshua H. Lerner, SBN 220755, |
| | jlerner@durietangri.com |
| 28 | Ragesh K. Tangri, SBN 159477, |

13     Case No. 3:17-CV-1375-DMS-MDD

|   |   |
|---|---|
| 1 | rtangri@durietangri.com |
| | DURIE TANGRI LLP |
| 2 | 217 Leidesdorff Street |
| | San Francisco, CA 94111 |
| 3 | Phone: 415-362-6666 / Fax: 415-236-6300 |
| 4 | |
| 5 | Henry Huttinger, SBN 312843, |
| | hhuttinger@durietangri.com |
| 6 | Peter S. Horn, SBN 321358, |
| | phorn@durietangri.com |
| 7 | DURIE TANGRI LLP |
| 8 | 530 Molino Street, Suite 111 |
| | Los Angeles, CA 90013 |
| 9 | Phone: 213-514-5518 / Fax: 415-236-6300 |

Attorneys for *Defendant/Counterclaim-Plaintiff APPLE INC.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 4, 2019 via electronic mail pursuant to Fed. R. Civ. Proc. 5(b) to all counsel of record in this action:

Karen P. Hewitt / kphewitt@jonesday.com
Randall E. Kay / rekay@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178
**Service email:** Qualcomm-JonesDay-SDCal1375@jonesday.com

David A. Nelson / davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
**Service email**: qequalcommapple@quinnemanuel.com

Evan R. Chesler / echesler@cravath.com
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza, 825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
**Service email**: Service-CSM-QC-Apple-CM@cravath.com

Mark D. Selwyn
Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

William F. Lee
Joseph J. Mueller
Timothy Syrett
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Nina S. Tallon
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

**Service email:** WHQualcomm-AppleSDCal1375ServiceList@wilmerhale.com

Executed on January 4, 2019 at San Diego, California.

*/s/ Robert M. Yeh*
Robert M. Yeh