UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>APPLE INCORPORATED,<br><br>　　　　　　　　　　Defendant.<br><br>APPLE INCORPORATED,<br><br>　　　　　　　　Counter Claimant,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br><br>　　　　　　　Counter Defendant. | Case No.: 17cv1375 DMS(MDD)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART APPLE'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DRS. PRINCE, KENNEDY, BROGIOLI, AND KELLEY AND (2) GRANTING IN PART AND DENYING IN PART QUALCOMM'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF APPLE EXPERTS APSEL, FUCHS, LIN AND PROWSE** |

    This case comes before the Court on the parties' Daubert motions. These motions came on for hearing on January 11, 2019. For the reasons discussed below, the Court grants in part and denies in part Apple's motion and grants in part and denies in part Qualcomm's motion.

/ / /

/ / /

# I.

# APPLE'S MOTION

The Qualcomm experts at issue in Apple's motion are Jeffrey T. Prince, Ph.D., Patrick F. Kennedy, Ph.D., Michael C. Brogioli, Ph.D. and Arthur W. Kelley, Ph.D. Dr. Prince is a survey expert and Dr. Kelley is a technical expert on the '558 Patent. The opinions of both of these experts are incorporated into the analysis and opinions of Qualcomm's damages expert Dr. Kennedy. Dr. Brogioli was designated as a technical expert "to opine on the design, development, and/or implementation of cellular features and technologies in baseband chipsets incorporated in Apple's cellular-enabled products." (Decl. of Robert Yeh in Supp. of Apple's Mot., Ex. K at 191.)

**A.  Dr. Brogioli**

Turning to Dr. Brogioli first, Apple argues his opinions should be excluded because they are irrelevant and not the proper subject of expert testimony.[1] Qualcomm responds that Dr. Brogioli's testimony is relevant to Apple's assertions that Qualcomm has engaged in anticompetitive conduct. Qualcomm also disputes that Dr. Brogioli's opinions are not proper expert testimony.

After reviewing the parties' briefs and hearing oral argument from counsel, it appears any assertions or allegations that Qualcomm is or was engaged in anticompetitive conduct are not relevant to this case, and that any evidence or arguments to that effect would be subject to exclusion under Federal Rule of Evidence 403. Those issues are being litigated in two other cases, one brought by the Federal Trade Commission, *see FTC v. Qualcomm Inc.*, Case No. 5:17cv00220-LHK, United States District Court for the Northern District of California, and the other brought by Apple. *See Apple Inc. v. Qualcomm Inc.*, Case No. 17cv0108 GPC (MDD), United States District Court for the Southern District of California. This case, by contrast, involves allegations of patent infringement. Thus,

---

[1] Apple has also moved to strike Dr. Brogioli's expert report on the ground it is an improper rebuttal report. In light of the ruling below, the Court denies that motion as moot.

absent a further showing of relevance, evidence and argument that Qualcomm is engaged in anticompetitive conduct is not admissible here. With that ruling, Dr. Brogioli's opinions are also not relevant, and thus, not admissible. Accordingly, the Court grants Apple's motion to exclude Dr. Brogioli's opinions.

**B.     Dr. Prince**

As for Drs. Prince and Kennedy, the Court is familiar with Dr. Prince and his survey methodology and how that methodology is used by damages experts in calculating a reasonable royalty. *See Apple Inc. v. Wi-LAN, Inc.*, Case No. 14cv2235 DMS (BLM). Here, Apple raises essentially two arguments for the exclusion of Dr. Prince's survey results. First, it argues the surveyed features are not tied to the asserted claims. Second, Apple asserts Dr. Prince did not apportion. The Court rejects both of these arguments.

Unlike in *Wi-LAN*, the surveyed features in this case are tied to the asserted claims. In *Wi-LAN*, that piece was missing. There, the technical expert erroneously equated the benefits of the patented invention with VOLTE call quality despite the inventor's testimony that he did not invent VOLTE. Dr. Prince then took that erroneous presumption and input it into his survey, rendering the survey unreliable. In this case, by contrast, Apple does not challenge the opinions of Qualcomm's technical experts about the benefits of the patented inventions.

Those experts opine that one of the benefits of the patented inventions is improved battery life. (*See* Decl. of Zachary Flood in Supp. of Opp'n to Mot., Ex. 3 at 20[2]; Ex. 4 at 170.) Apple argues the improved battery life provided by the patents in suit occurs only under certain circumstances, and that Dr. Prince did not limit his survey question to those circumstances. However, this is a far cry from the problem identified in *Wi-LAN*, where the alleged benefit of the patented invention was mischaracterized and overstated. Here, there appears to be no dispute that one of the benefits of the patents in suit is improved

---

[2] The page numbers cited here, and in the other citations to Mr. Flood's Declarations, refer to the page number of the underlying exhibit.

battery life, and that this benefit is one of the features Dr. Prince attempted to value through his survey.

There is also no dispute that Dr. Prince did not ask about the value of improved battery life, as a whole, but rather asked about improved battery life during "heavy use" of the phone. Apple's assertion that "heavy use" does not correspond to the specific circumstances under which the benefits of the patents in suit would be achieved goes more to the framing of the survey questions, which "is generally an issue of weight, not admissibility." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 5:12-cv-00630-LHK, 2014 WL 794328, at *18 (N.D. Cal. Feb. 25, 2014).[3] Accordingly, these arguments do not warrant exclusion of Dr. Prince's survey results.

Apple's only other argument for exclusion of Dr. Prince's opinion is that he failed to apportion the value of patented versus unpatented features of the phones. Apple suggests this process of apportionment requires valuing the claimed features "relative to all unpatented features." (Apple's Mem. of P. & A. in Supp. of Mot. at 12.) However, there is no authority that imposes such a burdensome requirement. *See TV Interactive Data Corp. v. Sony Corp.*, 929 F.Supp.2d 1006, 1025-26 (N.D. Cal. 2013) ("the literature on conjoint analysis condones testing six or fewer variables to produce results with a better predictive value[.]") Here, again, Apple's arguments go to the weight of Dr. Prince's survey results, not their admissibility. Thus, the Court denies Apple's motion to exclude Dr. Prince's survey results.

**C. Dr. Kennedy**

Turning to Dr. Kennedy, Apple offers two arguments for why his opinions should be excluded.[4] First, it argues Dr. Kennedy's 50-50 profit split opinion is untethered to the

---

[3] The same may be said of Apple's argument that Dr. Prince valued battery savings in terms of hours rather than minutes.

[4] Apple offers a third argument, namely that Dr. Kennedy's opinions should be excluded because they rely on Dr. Prince's survey results. For the reasons set out above, the Court rejects that argument.

4

17cv1375 DMS(MDD)

facts of the case. Second, Apple asserts Dr. Kennedy's methodology in calculating the cost of adding a 32 MB SLC NAND to Apple devices is inherently unreliable. Neither of these arguments is persuasive.

Contrary to Apple's position, Dr. Kennedy's analysis of the parties' bargaining power is based on the facts of this case. (*See* Yeh Decl., Ex. E at 69-77.) Specifically, Dr. Kennedy relies on the parties' financial metrics, (*id.* at 70), and litigation history, (*id.* at 75), among other factors. Apple's assertion that Dr. Kennedy's opinion is untethered to the facts of the case is factually incorrect, and does not warrant exclusion of Dr. Kennedy's opinion.

Apple's second argument concerning Dr. Kennedy's methodology in calculating the cost of 32 MB SLC NAND devices is equally unavailing. As set out in Qualcomm's opposition to the motion, Qualcomm attempted to obtain more precise information about the cost of these devices directly from Apple, but that information was not provided. This left Dr. Kennedy to determine the cost of these devices himself, which he did. Apple has not shown that Dr. Kennedy's methodology in determining these costs was unreliable. Accordingly, Apple's request to exclude Dr. Kennedy's opinions is denied.

**D.     Dr. Kelley**

Apple's final request is to exclude Dr. Kelley's opinions on "power savings" provided by the '558 Patent. Apple asserts Dr. Kelley's methodology for determining power savings attributable to the '558 Patent is unreliable because it does not account for "ET without the claimed invention … and ET with the claimed invention." (Apple's Mem. of P & A. in Supp. of Mot. at 22.) Qualcomm's response, however, demonstrates Dr. Kelley's methodology was reliable, and that Apple's arguments go to the weight of Dr. Kelley's opinions, not its admissibility. Accordingly, the Court denies Apple's request to exclude Dr. Kelley's power savings opinions.

/ / /

/ / /

/ / /

## II

## QUALCOMM'S MOTION

The Apple experts at issue in Qualcomm's motion are Dr. Alyssa Apsel, Henry Fuchs, Ph.D., Bill Lin, Ph.D. and Stephen D. Prowse, Ph.D. Dr. Lin is a technical expert on the '949 Patent and the '490 Patent. He offers an opinion on the technological comparability of these patents and certain patents covered by Apple license agreements with third parties ███████████ and ███████████████████████. Dr. Fuchs is a technical expert on the '936 Patent. He offers an opinion on the technological comparability of the '936 Patent and one of the patents covered by a license agreement between Apple and ███████████████████████████████ He also offers a noninfringement opinion for the '936 Patent. Dr. Apsel is a technical expert on the '558 Patent. She offers an opinion on the technological comparability of the '558 Patent and several patents covered by license agreements between Apple and ████████. Each of these "technological comparability" opinions factors into the damages opinion of Apple's expert Dr. Prowse. Qualcomm moves to exclude these "technological comparability" opinions, Dr. Fuchs's noninfringement opinion on the "configured to" claim of the '936 Patent and Dr. Prowse's reasonable royalty opinion.

### A. The License Agreements

Before turning to the legal issues raised by Qualcomm's motion, the license agreements at issue deserve mention. As stated above, Apple relies on four license agreements in its reasonable royalty analysis. Those agreements are as follows:

1. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████;

2. ███████████████████████████████████████████████████████████████████████████████████████████████;

1       3.  ████████████████████████████████
2  ███████████████████████████████████████████
3  ███████████████████████████████████████████
4  ████████████████████████████████████;
5       4.  ████████████████████████████████
6  ███████████████████████████████████████████
7  █████████████████████████████  ████████████
8  ███████████████████████████████████████████
9  ██████████████████████████████

### B. Technological Comparability

Turning to the legal issues raised by Qualcomm's motion, the first question is whether Apple's technical experts have shown that any patents underlying these License Agreements are technologically comparable to the patents at issue here. The Federal Circuit has cautioned "that 'district courts performing reasonable royalty calculations [must] exercise vigilance when considering past licenses to technologies other than the patent in suit,' and 'must account for differences in the technologies and economic circumstances of the contracting parties[.]'" *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (citations omitted). "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). *See also Commonwealth Scientific and Indus. Research Organisation v. Cisco Systems, Inc.*, 809 F.3d 1295, 1302 n.2 (Fed. Cir. 2015) (citations omitted) (excluding licenses as insufficiently comparable where they were part of a litigation settlement agreement and the patented technology lacked a relationship to the licensed technology.)

District courts have interpreted this language in different ways. One court held that "[t]o establish technological comparability, a party must show that the licensed technology is 'substantially similar' to the technology claimed by the asserted patents." *Skyhook*

*Wireless, Inc. v. Google, Inc.*, No. 10-11571-RWZ, 2015 WL 13620764, at *2 (D. Mass. Feb. 18, 2015). But another court has stated there is:

> no law requiring a technical expert to discuss the similarities and differences in scope between the scope of the licensed claims and the patents-in-suit or to go through every claim of the licensed patent in order to reliably opine that the licensed patents are "comparable" to the patents-in-suit, as Georgia Pacific factor 2 requires[.]

*Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 393858, at *5 (N.D. Cal. Jan. 29, 2015).

Here, Apple's experts have gone through the License Agreements and found at least one patent from each Agreement that they believe is technologically comparable to the patents in suit. Qualcomm's motion goes directly to those opinions, and asserts they are conclusory and do not meet the standard for technological comparability. The Court agrees.

First, the experts' opinions are conclusory in that they simply recite the claims and specifications of the licensed patents and then state that technology is comparable to the technology underlying the patents in suit. (*See* Flood Decl., Ex. 1 at 217-23; Ex. 2 at 171-73; Ex. 3 at 205-09; Ex. 4 at 174-76.) For instance, Dr. Lin states ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, is technologically comparable to the '949 Patent because they are both ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Flood Decl., Ex. 2 at 173.) In other words, the patents are "technologically related" because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at 174.) However, Dr. Lin fails to account for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. He also fails to account for any other differences in the patents, namely that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ while the '949 Patent relates "to booting a cellular device that includes a separate application processor and modem processor." (Rep. Tr. at 28-29, Jan. 22, 2019.) In sum, Dr. Lin's opinion is too "loose" and "vague" to demonstrate technological comparability between ▓▓▓▓▓▓▓▓ and the '949 Patent. The same may be said for Dr. Lin's opinions on the technological comparability of the '490 Patent and the patents covered by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ (Flood Decl., Ex. 1 at 217-23.) Indeed, the concluding paragraph of Dr. Lin's analysis of ▓▓▓▓▓▓▓▓ is nearly identical to the concluding paragraph of his discussion of ▓▓▓▓▓▓▓▓. (*Compare id.* at 220 *with* 223.)

The opinions of Drs. Apsel and Fuchs fare no better. Although Dr. Apsel finds a total of five patents covered by the ▓▓▓▓▓▓▓▓ are technologically comparable with the '558 Patent, her analysis of each of those five patents is only one paragraph, and her analysis is perfunctory and wanting. (Flood Decl., Ex. 3 at 206-09.) For instance, her opinion that ▓▓▓▓▓▓▓▓ is technologically comparable to the '558 Patent is based on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at 206.) As with Dr. Lin, Dr. Apsel fails to discuss ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ and the '558 Patent, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Dr. Fuchs finds three patents covered by the ▓▓▓▓▓▓▓▓ are technologically comparable to the '936 Patent, but his analysis of each patent also consists of only one conclusory paragraph, and he fails to address ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and the '936 Patent, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Flood Decl., Ex. 4 at 175-76.)

As the party relying on these License Agreements, Apple bears the burden to show the technology covered by these Agreements is comparable to the technology covered by the patents in suit. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009). The opinions of Apple's technical experts do not meet that burden. Rather, they

///

///

9

17cv1375 DMS(MDD)

1 describe only a "loose or vague" comparability between the technologies. Accordingly, the Court grants Qualcomm's motion to exclude these opinions.[5]

C. "Configured to" Claim

The final issue in Qualcomm's motion concerns Dr. Fuchs's opinion that Apple does not infringe the '936 Patent. Qualcomm argues this opinion must be excluded because Dr. Fuchs applied the wrong legal standard in determining infringement of claim 19 of the '936 Patent, which describes a controller that is "configured to" do certain things. Apple disputes that Dr. Fuchs applied the wrong legal standard, and that his opinions should therefore be excluded.

The Court agrees with Apple. In his report, Dr. Fuchs opines that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Flood Decl., Ex. 4 at 101.) Elsewhere in his rebuttal report he also discusses why ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*Id.* at 31-42.) It is not clear from this evidence or the evidence cited by Qualcomm that Dr. Fuchs applied an incorrect legal standard in analyzing infringement of claim 19 of the '936 Patent. Thus, the Court denies Qualcomm's request to exclude these opinions of Dr. Fuchs.

///
///
///

---

[5] To the extent Dr. Prowse relies on these License Agreements as part of his reasonable royalty opinions, those opinions must also be excluded. This ruling obviates the need for the Court to address Qualcomm's argument that Dr. Prowse's reasonable royalty opinions should be excluded because he failed to analyze whether the License Agreements were economically comparable to the hypothetical license in this case. However, it appears Dr. Prowse did perform that analysis, and in doing so, addressed the issues Qualcomm complains of, namely ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*See* Flood Decl., Ex. 11 at 74-87.) Clearly, Qualcomm disagrees with Dr. Prowse's analysis of those issues, but that disagreement does not render his opinions inadmissible on that ground.

10

# III.
# CONCLUSION

For the reasons set out above, the Court grants in part and denies in part Apple's motion, and grants in part and denies in part Qualcomm's motion.

**IT IS SO ORDERED**.

Dated: January 18, 2019

_____
Hon. Dana M. Sabraw
United States District Judge