David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Scott L. Watson (SBN 219147)
scottwatson@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Randall E. Kay (SBN 149369)
rekay@jonesday.com
**JONES DAY**
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (844) 345-3178

*[Additional counsel identified on
signature page]*

*Attorneys for Plaintiff and
Counterclaim Defendants*
QUALCOMM INCORPORATED
AND
QUALCOMM TECHNOLOGIES,
INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>    Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 3:17-cv-1375-DMS-MDD<br><br>**QUALCOMM INCORPORATED'S
TRIAL BRIEF**<br><br><br><br>**Judge:** Hon. Dana M. Sabraw<br>**Trial Date:** March 4, 2019<br>**Time:** 9:00 A.M. |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     DISPUTED ISSUES ............................................................................. 2

    A.      APPLE HAS WILLFULLY INFRINGED THE ASSERTED
          PATENTS ...................................................................................... 2

          1.      Apple Directly Infringes the Asserted Claims of the '949
                  Patent................................................................................... 3

          2.      Apple Directly Infringes Asserted Claim 31 of the '490
                  Patent................................................................................... 6

          3.      Apple Directly Infringes the Asserted Claims of the '936
                  Patent................................................................................... 9

          4.      Apple Actively Induces Infringement of the Asserted
                  Patents ............................................................................... 13

          5.      Apple Is Liable for Contributory Infringement of the
                  Asserted Patents................................................................ 14

          6.      Apple's Infringement Is Willful .................................................. 15

    B.      THE ASSERTED PATENTS ARE VALID AND
          ENFORCEABLE ......................................................................... 16

          1.      The '949 Patent Is Valid and Enforceable.................................... 18

          2.      The '490 Patent Is Valid and Enforceable.................................... 21

          3.      The '936 Patent Is Valid and Enforceable.................................... 24

    C.      QUALCOMM'S PRODUCTS PRACTICE THE ASSERTED
          PATENTS .................................................................................... 27

    D.      QUALCOMM IS ENTITLED TO DAMAGES FOR APPLE'S
          WILLFUL INFRINGEMENT ................................................... 29

III.    PROCEDURAL ISSUES ................................................................... 30

IV.     EVIDENTIARY ISSUES.................................................................... 30

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

**Pages**

3

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
  261 F.3d 1329 (Fed. Cir. 2001) ................................................................. 2

4

*Amgen, Inc. v. Chugai Pharmaceutical Co.*,
  927 F.2d 1200 (Fed. Cir. 1991) ............................................................... 21

5

*Apple Inc. v. Samsung Elecs. Co.*,
  258 F. Supp. 3d 1013 (N.D. Cal. 2017) .............................................. 15, 16

6

*Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) ............................................................... 15

7

*BASF Corp. v. Johnson Matthey Inc.*,
  875 F.3d 1360 (Fed. Cir. 2017) ............................................................... 13

8

*Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*,
  No. 07-cv-0894-DMS(POR) (S.D. Cal. Dec. 2, 2008) ............................. 28

9

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005) ............................................................... 14

10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002) ............................................................................. 9, 12

11

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
  110 F.3d 1573 (Fed. Cir. 1997) ............................................................... 20

12

*Gonzalez v. Millard Mall Servs., Inc.*,
  No. 09CV2076-AJB WVG, 2012 WL 727867 (S.D. Cal. Mar. 6, 2012) ............. 28

13

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
  339 U.S. 605 (1950) ................................................................................. 3

14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) ............................................................................ 15

15

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001) ................................................................... 28

16

*Hess v. Advanced Cardiovascular Sys., Inc.*,
  106 F.3d 976 (Fed. Cir. 1997) ................................................................. 20

17

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 (2011) .............. 14

18

*Int'l Rectifier Corp. v. IXYS Corp.*,
  361 F.3d 1363 (Fed. Cir. 2004) ............................................................... 20

19

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
  821 F.3d 1359 (Fed. Cir. 2016) ............................................................... 17

20

*KCJ Corp. v. Kinetic Concepts, Inc.*,
  223 F.3d 1351 (Fed. Cir. 2000) ............................................................... 12

21

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ............................................................... 13

22

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ................................................................... 16

*Microsoft Corp. v. i4i Ltd. P'ship,*
  564 U.S. 91 (2011)....................................................................................16

*Mintz v. Dietz & Watson, Inc.,*
  679 F.3d 1372 (Fed. Cir. 2012) ...............................................................17

*Net MoneyIN, Inc. v. VeriSign, Inc.,*
  545 F.3d 1359 (Fed. Cir. 2008) ...............................................................17

*New Hampshire v. Maine,*
  532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) ..........................28

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.,*
  No. 2:16-1032, 2017 WL 8727249 (E.D. Tex. Sept. 22, 2017) ...............16

*Plantronics, Inc. v. Aliph, Inc.,*
  724 F.3d 1343 (Fed. Cir. 2013) ...............................................................17

*Progme Corp. v. Comcast Cable Commc'ns LLC,*
  No. 17-1488, 2017 WL 5070723 (E.D. Pa. Nov. 3, 2017)........................16

*Read Corp. v. Portec, Inc.,*
  970 F.2d 816 (Fed. Cir. 1992) .................................................................16

*Regents of Univ. of California v. Synbiotics Corp.,*
  No. 93-822GT, 1993 WL 645929 (S.D. Cal. Oct. 13, 1993) ...................21

*Texas Advanced Optoelectric Solutions, Inc. v. Renesas Electronics Am., Inc.,*
  888 F.3d 1322 (Fed. Cir. 2018)................................................................11

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011) ...............................................................29

*United States v. Ibrahim,*
  522 F.3d 1003 (9th Cir. 2008) .................................................................28

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,*
  520 U.S. 17 (1997).....................................................................................3

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.,*
  418 F.3d 1326 (Fed. Cir. 2005) ...............................................................11

*WMS Gaming, Inc. v. Int'l Game Tech.,*
  184 F.3d 1339 (Fed. Cir. 1999) ...............................................................17

*ZitoVault, LLC v. Int'l Bus. Machines Corp.,*
  No. 16-962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018) ...............16

### Statutory Authorities

35 U.S.C. § 271 ...............................................................................................2

35 U.S.C. § 271(b) ........................................................................................13

35 U.S.C. § 271(c) ........................................................................................14

35 U.S.C. § 282 .............................................................................................16

35 U.S.C. § 284 .............................................................................................29

### Rules and Regulations

Local Rule 16.1(f)(9)(a).................................................................................1

1         Pursuant to Local Rule 16.1(f)(9)(a) and paragraph 6 of the Court's February

2 11, 2019 Order Regarding Trial (Dkt. 593), Plaintiff Qualcomm Incorporated

3 ("Qualcomm") respectfully submits this trial brief.

4 **I.   INTRODUCTION**

5         Qualcomm is a San Diego communications technology company founded in 1985,

6 which has grown into a multinational corporation with nearly 20,000 employees in the

7 United States and operations worldwide. Qualcomm has had a central role in the most

8 fundamental innovations in modern telecommunications, including the design and

9 development of modern cellular communications standards (*e.g.*, 4G LTE) as well as the

10 technological features that have turned cellphones into "smartphones"—including

11 advanced multimedia and graphics processing, modem processor development,

12 photographic/video image enhancement, and technology for allowing the many

13 components of the phone to communicate with each other effectively and efficiently.

14 Today's cellular communication system would not exist without Qualcomm.

15 Qualcomm's contributions to cellular and related technology are the result of substantial

16 financial investment by Qualcomm in research and development over the course of three

17 decades. Through its research and development, including specifically for work

18 requested by Defendant Apple Inc. ("Apple"), Qualcomm's engineers have developed

19 inventions that advance technology for sending, processing, and displaying data on a

20 mobile device. Qualcomm owns U.S. Patent Nos. 8,838,949 ("the '949 Patent"),

21 9,535,490 ("the '490 Patent"), and 8,633,936 ("the '936 Patent") (collectively, the

22 "Asserted Patents"), which claim some of these inventions.

23         Apple is the world's most profitable seller of mobile devices, including the

24 enormously successful iPhone. Starting around 2010, Qualcomm began providing

25 baseband modems to Apple that enable the iPhones to communicate over cellular

26 networks. Over the years, Qualcomm has devoted incredible resources to developing

27 these baseband modems specifically to meet Apple's technical requirements and

28 providing Apple a level of support and access to Qualcomm's technology that is greater

than Qualcomm has provided to any other customer.  The Qualcomm technological developments shared directly with Apple include some of the patented inventions at issue in this case.

Since 2016, Apple has also sold identically-branded iPhones that use Intel baseband chipsets rather than Qualcomm baseband chipsets.  Despite the investment Qualcomm has put into developing products for and working with Apple, Apple has elected to use Qualcomm's patented inventions in many Intel-based iPhones without a license or permission from Qualcomm.

At trial, Qualcomm will demonstrate that Apple has willfully infringed claims 1, 2, and 8 of the '949 Patent, by making, selling, offering for sale, and importing into the United States iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, and iPhone X devices using Intel baseband chipsets (the "Accused Products"); that Apple has willfully infringed claim 31 of the '490 Patent by making, selling, offering for sale, and importing into the United States the Accused Products; and that Apple willfully infringed claims 19, 25, and 27 of the '936 Patent by making, selling, offering for sale, and importing into the United States iPhone 8, iPhone 8 Plus, and iPhone X devices using Intel baseband chipsets ("'936 Accused Products").  Qualcomm will further establish that it is entitled to a reasonable royalty for Apple's sales of its infringing iPhones and that Apple's infringement was and continues to be willful.

## II.    DISPUTED ISSUES

### A.    APPLE HAS WILLFULLY INFRINGED THE ASSERTED PATENTS

Qualcomm will show by a preponderance of the evidence that the accused iPhone products meet every limitations of the asserted claims of the Asserted Patents, either literally or under the doctrine of equivalents, and therefore Apple has directly infringed these claims by making, selling, offering for sale, and importing into the United States the Accused Products.  35 U.S.C. § 271; *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001) ("[T]he plaintiff must establish by

a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents.").  Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)).

### 1. Apple Directly Infringes the Asserted Claims of the '949 Patent

The evidence at trial will show the Accused Products meet each limitation of claims 1, 2, and 8 of the '949 Patent, and thus Apple directly infringes these claims by making, selling, offering for sale, and importing into the United States the Accused Products.

The '949 Patent teaches an implementation of "flashless boot" in a multi-processor architecture.  With flashless boot, a secondary processor, such as a modem processor, does not have to have its own non-volatile (flash) memory to store the software image it needs to boot up each time the device is turned on, and instead the image for booting the modem processor can be stored on the primary, *i.e.* application, processor.  The '949 Patent teaches a technique of scatter loading the software image directly into the modem processor's memory that improves the speed and performance of flashless boot over techniques that were available before.

1  ███████████████████████████████████████████████████████

2  ███████████████████████████████████  The use of the invention in

3  the iPhone achieves Apple's desired ends of loading a boot image quickly, so that the

4  user does not have to wait to use the modem when they turn the device on, and

5  eliminating the need for a dedicated flash memory for the modem.  Eliminating the flash

6  device saves Apple the cost of buying such a device for each iPhone, installing it on the

7  circuit board, and allowing the space to be used for other features like increasing battery

8  and/or processing capacity.  Eliminating the flash also simplifies the manufacturing

9  process.

10      Although Qualcomm developed this technology to improve the boot performance

11  of its baseband chipsets and the iPhones using them, the evidence will show Apple

12  copied and continues to use the invention of the '949 Patent in the Accused Products to

13  improve the boot performance of Intel modem processors.  Each of the Accused Products

14  incorporates an Apple application processor and an Intel baseband processor

15  interconnected by a PCIe bus with identical functionality across products, and behaves

16  in substantially the same way for purposes of infringement of '949 Patent.  The evidence

17  will show the secondary processor, i.e., the Intel baseband processor, in the Accused

18  Products includes ███████████████████████████████████████

19  ███████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████

21  ███████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████

25  ███████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████

28  ████████████  This will be shown by evidence including the testimony of Qualcomm's

1 expert Dr. Martin Rinard, Apple and Intel technical documentation relating the boot
2 process of the Intel modem, and testimony of Intel engineers.

3      Apple's first non-infringement argument for the '949 Patent is that the limitation
4 that the "scatter loader controller" be "configured . . . to scatter load ***each received data***
5 ***segment based at least in part on the loaded image header***" is not literally met because
6 ██████████████████████████████████████████████████████████████
7 ██████████████████████████████████████████████████████████████
8 ████████████████████████████████████████████████ Dkt. 521 at 48
9 (emphasis in original).  First, Qualcomm does not accuse ████████████████
10 ██████████████████████████████████████████████████████████████
11 ███████████████████████████ Second, even if Apple were correct ████████████
12 ████████████████████████████████████████████████████████, the evidence
13 will show the Accused Products still literally infringe because, ████████████████
14 ██████████████████████████████████████████████████████
15 ████████████████████████████████████████████.  Third, ████████████████
16 ████████████████████████████████████████████, the evidence will
17 show the limitation is still met under the doctrine of equivalents.  The Intel baseband
18 processor in each Accused Product performs the same function, in the same way, to
19 achieve the same result as scatter loading each received data segment because ██████
20 ██████████████████████████████████████████████████████████████
21 ██████████████████████████████████████████████████████████████
22 ██████████████████████████████████████████████████████.  The
23 evidence will also show Qualcomm is not estopped from relying on the doctrine of
24 equivalents for this limitation.

25      Apple's second argument is that ██████████████ do not include an "image header"
26 that meets the parties' agreed construction of the term, *i.e.* "a header associated with the
27 entire image that specified where the data segments are to be placed in the system
28 memory," because Apple argues ████████████████████████████████████

1  ████████████████████████████████████ In fact, headers regularly

2  contain multiple structures, including nested structures and the '949 Patent expressly

3  calls out ELF as an exemplary type of image several times, including in the '122

4  provisional.  Headers, like the combination of the ███████████████████████,

5  are generally accessed before the remainder of the file and are generally read and

6  processed to extract information (such as the information about the structure and location

7  of data in the file) that is required to correctly access and process the data in the file.

8  Headers are also generally separated from the data in the file that they describe. Headers

9  are therefore generally accessed separately and before the remaining data in the file.  In

10  view of all this, the combination of the ████████████████████████ is an

11  "image header."  Even if Apple were correct that the claim language would not be met

12  literally, the evidence will show the ████████████████ would meet

13  the limitation under the doctrine of equivalents because they perform the same function,

14  in the same way, and produce the same result as the claimed "image header."  The

15  evidence will also show that Qualcomm is not estopped from relying on the doctrine of

16  equivalents for this limitation.

### 2.    Apple Directly Infringes Asserted Claim 31 of the '490 Patent

18  The evidence at trial will show that the Accused Products meet each limitation of

19  claim 31 of the '490 Patent, and thus Apple directly infringes this claim by making,

20  selling, offering for sale, and importing into the United States the Accused Products.

21  The invention of the '490 Patent relates to saving power in interprocessor

22  communications between a modem processor and an application processor.  As cellular

23  modem data rates increased, including because of technology developed by Qualcomm,

24  the industry shifted to using faster but more power-intensive interconnectivity buses,

25  like PCIe, so that the application processor (and the user) could take advantage of the

26  increased data rates.  Qualcomm engineers conceived of and developed the invention of

27  the '490 Patent to address the increased power consumption by these faster buses.  The

28  '490 Patent describes mechanisms to synchronize the transfer of downlink data from the

1   modem processor to the application processor and the transfer of uplink data from the
2   application processor to the modem processor, to reduce the time that the bus has to be
3   in an active mode and minimize the number of transitions between active and low power
4   modes (which drain power).

5       At the time of the invention, Qualcomm was providing Apple with modem
6   processors that interfaced with Apple's application processors in certain iPhones, and
7   Qualcomm shared information about the operation and benefits of its implementation of
8   the '490 Patent, called "UL-DL Sync," in the hopes of cooperatively reducing the power
9   consumption of the PCIe bus between the Qualcomm and Apple processors.   The
10  evidence will show, however, that Apple copied Qualcomm's patented invention to
11  implement a feature Apple calls ███████████████ to use in iPhones that do not
12  contain Qualcomm modem processors—the Accused Products—to attain the benefits of
13  the invention.

14      The Accused Products infringe claim 31 of the '490 Patent.  Each incorporates an
15  Apple A10 or A11 application processor and an Intel modem processor connected by a
16  PCIe interconnectivity bus.  Each also uses the same ████████████████████
17  █████████████████████ feature with the same general sequence of steps
18  used for uplink-downlink synchronization.  The Accused Products use ███████████
19  ████████ The Intel modem processor in the Accused Products ████████████
20  ██████████████████████████████████████████████
21  ██████████████████████████████████████████████
22  ███████████████████ Qualcomm will establish infringement of claim 31 by
23  evidence including the testimony of Qualcomm's expert Dr. R. Jacob Baker, Apple and
24  Intel technical documentation relating to ████████████████████, and
25  testimony of an Intel engineer.

26      Apple's primary non-infringement argument for the '490 Patent is that the
27  Accused Products do not literally meet the limitations "the modem processor configured
28  to hold modem processor to application processor data" and "the application processor

1  configured to hold application processor to modem processor data" because █████

2  ████████████████████████████████████████████ Apple

3  is incorrect.  First, Apple's contention that the claims require that data "must be held: *at*

4  *the . . . processor itself*, in the processor's own internal memory," rather than █████

5  ████████████████████████ is an attempt to read limitations into the claim that simply

6  are not present.  Dkt. 521 at 101 (emphasis in original).  Apple's position relies on

7  redefining the word "hold" as well as "processor."  Second, even if the claim was

8  literally interpreted as Apple contends, Qualcomm will show the terms would be met

9  under the doctrine of equivalents.  Each modem or application processor in the accused

10  products performs the same function (*i.e.*, accumulating rather than immediately sending

11  data to the other processor), in the same way (*i.e.*, keeping the data in storage to send at

12  a point in the future), to achieve the same result (*i.e.*, retaining data until expiration of

13  the modem timer) as the claim limitation.  ██████████████████████

14  ███████████████████████████████████████████████

15  ███████████████████████████████████████████████

16  ███████████████████████████████████████████████

17  Further, Apple agrees that prosecution history estoppel does not apply to this equivalent

18  because the limitations in question were not added during prosecution.

19  Apple also argues that the Accused Products do not meet the "after transmission"

20  limitations of claim 31.  Apple contends the claims literally require that "*all* downlink

21  data" be finished transmitting (*i.e.*, must be *received* by the application processor) before

22  transmission of uplink data.  Dkt. 521 at 105 (emphasis in original).  Apple is again

23  incorrect.  First, the term "all" does not appear in these limitations, nor have the claims

24  been construed to include it.  Nor should "transmission" be interpreted as "reception."

25  Second, even if claim 31 literally required "all" downlink data to be received before

26  uplink data starts to be pulled, Qualcomm will show these limitations would be met

27  under the doctrine of equivalents.  ████████████████████████

28  ████████████████ the Accused Products perform the same function (*i.e.*, conditioning

delivery of uplink data on downlink data), in the same way (*i.e.*, waiting for data from the modem processor), to achieve the same result (*i.e.*, synchronizing the transfer of uplink and downlink data to save power) as the claim limitation. The evidence will also show Qualcomm is not estopped from relying on the doctrine of equivalents for these limitations since the amendment Apple identifies in its estoppel argument was to overcome a reference that did not involve any interaction or synchronization between transmission of downlink and uplink data at all. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 725 (2002).

### 3. Apple Directly Infringes the Asserted Claims of the '936 Patent

The evidence at trial will show the '936 Accused Products meet each limitation of claims 19, 25, and 27 of the '936 Patent, and thus Apple directly infringes these claims by making, selling, offering for sale, and importing into the United States the Accused Products.

The invention of the '936 Patent relates to a programmable streaming processor that can execute mixed-precision, *e.g.*, full-precision and half-precision, instructions for processing graphics, and converting graphics data to the correct precision level for processing. Qualcomm engineers conceived of and developed this invention as part of their work improving the multimedia capabilities and efficiency of the industry-leading, full-featured System-on-Chip products Qualcomm provides mobile device makers such as Samsung and LG. These full-featured chipsets include a graphics processing unit, or GPU, that provides high-resolution graphics functionality for things like videogames on the mobile device. Using the invention of the '936 Patent in the GPU allows it to consume less power without sacrificing graphics performance by using high precision execution units where they are needed to maintain performance, but leveraging lower power, lower precision execution units for instructions where they are sufficient. Because power consumption is one of the most significant problems for mobile devices, decreasing power consumption by the GPU while maintaining graphics performance is

1   critical.  A GPU utilizing the invention can also occupy less space in the device because

2   the half-precision execution units are smaller than full-precision ones.  Thus, the

3   invention of the '936 Patent is a significant reason why Qualcomm's GPUs have led the

4   industry in performance for power and performance per size.

5        The evidence will show that each of the '936 Accused Products—iPhone 8,

6   iPhone 8 Plus, and iPhone X devices—utilize the invention of the '936 Patent and

7   therefore infringe.  Each incorporates an Apple A11 GPU, ███████████████████

8   ████████████████, that has a shader-core architecture called ███████.  The '936

9   Accused Products infringe claims 19, 25, and 27 by virtue of their incorporation of the

10  ████████████████████ shader-core architecture.  The evidence will show the ████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████ in a manner that infringes

16  the asserted claims of the '936 Patent.  The evidence will include the testimony of

17  Qualcomm's expert Dr. Murali Annavaram, the testimony of Apple employees, and

18  Apple documentation relating to the ███████████████ shader-core architecture.

19       Qualcomm understands that Apple raises three non-infringement arguments for

20  the '936 Patent.  First, Apple contends that Qualcomm fails to show that the accused

21  architecture is configured to receive and execute the claimed "conversion instruction."

22  But, Qualcomm will provide overwhelming evidence to demonstrate the infringing

23  functionality, including ████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████████;

10

1    and (v) the testimony of two Apple corporate representatives leaving no doubt that these

2    infringing conversion instructions are available to, and used by the Accused Products.

3        In response to this evidence regarding the configuration of the accused products,

4    Apple essentially raises a "failure of proof" argument.  According to Apple, because

5    Qualcomm has not shown the actual generation of the infringing instruction on an

6    accused device, it has not met its burden of proof.  This is legally erroneous.  *Warner-*

7    *Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005) (holding

8    that the patentee's evidence—showing that a particular reaction was "generally

9    understood" to occur under the circumstances—was sufficient, particularly where the

10   defendant provided "no reason to believe" that its product would "behave any

11   differently" than how the patentee alleged).[1]

12       Besides being legally erroneous, the burden of proof that Apple demands is

13   unrealistic and impossible.  As Qualcomm will demonstrate, ████████████████

14   ████████████████████████████████████ meaning that there is no

15   record on the Accused Device of their generation and execution.  As Qualcomm will

16   show, ████████████████████████████████████████████

17   ████████████████████████████████.  Because Qualcomm has

18   provided ample evidence showing how the accused products are configured and would

19   operate, and because Apple provides no persuasive reason to believe that its products

20   would behave differently, Qualcomm has met (and exceeded) the preponderance of the

21   evidence standard.

22       Second, Apple contends that the ████████████████████████ does

23   not meet the "executable instruction" from "a compiler that compiles the graphics

24   application instructions" limitation because, Apple argues, ████████████████

25

26   ─────────────────
        [1]  In addition, while Qualcomm agrees that a "configured to" claim requires more
27   than mere capability, Apple is wrong to suggest that this language somehow converts
     an apparatus claim into a method claim requiring evidence of actual use in the
28   infringing mode.  *E.g. Texas Advanced Optoelectric Solutions, Inc. v. Renesas*
     *Electronics Am., Inc.*, 888 F.3d 1322, 1346 (Fed. Cir. 2018).

1 ███████████████████████████████████████████████████

2 ████████████████████████████ This argument fails.  The evidence, including

3 the testimony of Apple's corporate designee and Apple documentation, will show that,

4 ███████████████████████████████████████████████████

5 ███████████████████████████████████████████████████

6 ███████████████████████████████████████████████████

7 ██████████ Certainly, the claim language does not preclude ████████████

8 ████████████ meeting the limitation, or ██████████████████████

9 ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ███████████

15 Even if the claim literally required compilation ██████████████,

16 Qualcomm will alternatively show the "compiler" limitation is satisfied under the

17 doctrine of equivalents because Apple's █████████████ performs substantially the

18 same function in substantially the same way to achieve substantially the same result as

19 the claimed compiler—*i.e.*, transformation of human readable code into machine

20 executable instructions.  Contrary to Apple's contention that Qualcomm is estopped

21 from relying on the doctrine of equivalents by an amendment during prosecution,

22 Qualcomm will show the amendment identified by Apple was limited to distinguishing

23 prior art that did not use a compiler in this process at all, and thus Qualcomm could not

24 have been expected to describe Apple's █████████████ in that amendment.  *See*

25 *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 725 (2002).  The

26 evidence will further show Apple's other non-infringement arguments similarly fail.

27 Third, Apple contends that Qualcomm has failed to show that the ████ does not

28 receive and execute "graphics instructions" as that term would be understood by person

of ordinary skill in the art.  This argument strains credibility.  As Qualcomm will show, the ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  As the Court has already determined, a claim term, such as "graphics instruction," is not indefinite merely because its application requires a context-driven analysis.  *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1366 (Fed. Cir. 2017).

### 4. Apple Actively Induces Infringement of the Asserted Patents

Qualcomm will demonstrate at trial by a preponderance of the evidence that Apple induces infringement of the Asserted Patents.  35 U.S.C. § 271(b).  Qualcomm has the burden of showing Apple's actions have induced infringing acts and that Apple knew or should have known its actions would induce actual infringements.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321–22 (Fed. Cir. 2009).  Qualcomm will meet this burden at trial.

As discussed above, the evidence will show that the Accused Products infringe the asserted claims of the Asserted Patents.  Further, Apple has had knowledge of the Asserted Patents, and the fact that the Accused Products infringe the asserted claims, since at least July 6, 2017, when Qualcomm filed this case.  However, Apple has continued making, selling, and importing the Accused Products into the United States, and encouraging customers and end users to use them in an infringing manner.  This, at a minimum, establishes Apple has knowingly induced infringing acts.  For example, anytime the phone turns on the modem is booted through functionality that infringes the '949 Patent.  As another example, the evidence will show there is no option for the user

to disable the ███████████████ functionality of the Accused Products that infringes the '490 Patent, so that any use of LTE by a customer results in direct infringement. ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

████ Apple encourages its users to turn on the Accused Products, use them with LTE cellular networks, and to use their graphics capabilities.

Thus, Qualcomm will show that Apple has knowingly induced others to infringe the Asserted Patents.

### 5. Apple Is Liable for Contributory Infringement of the Asserted Patents

Qualcomm will also demonstrate at trial by a preponderance of the evidence that Apple is liable for contributory infringement of the Asserted Patents. 35 U.S.C. § 271(c); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 (2011). In order to succeed on a claim of contributory infringement, Qualcomm must show there has been direct infringement, and that Apple supplied an important component and knew that the combination for which its components were especially made was both patented and infringing and that Apple's components have no substantial non-infringing uses. *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). Qualcomm will do so.

As discussed above, the evidence will show that the Accused Products infringe the asserted claims of the Asserted Patents. The evidence will also show that Apple has been aware of the Asserted Patents since at least July 6, 2017, when Qualcomm filed this case, and that Apple has known since that time that the Accused Products and their non-staple constituent parts were especially made or adopted for use in an infringing manner and have no substantial non-infringing uses. Thus, Apple contributes to infringement of the asserted claims by others by importing into the United States and selling in the United States the Accused Products and their non-staple constituent parts.

For example, the evidence will show the chipsets and software containing the infringing functionality are not suitable for substantial non-infringing use. With respect to the '949 Patent, the boot loader in the Accused Products has no non-infringing purpose but to boot the modem in an infringing manner. As another example, with respect to the '490 Patent, customers or end users cannot disable the infringing ████████████████ feature. The only way to avoid infringement would be to avoid using cellular data entirely, which is not a substantial use of the iPhone. Similarly, with respect to the '936 Patent, the ███████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

Thus, Qualcomm will demonstrate that Apple is liable for contributory infringement of the Asserted Patents.

### 6. Apple's Infringement Is Willful

Qualcomm will show at trial that Apple's infringement of the Asserted Patents has been (and continues to be) willful. To prove this, Qualcomm must show by a preponderance of the evidence that (1) the defendant had knowledge of each of the asserted patents and (2) the defendant subjectively intended to infringe the asserted patents because it knew or should have known that its actions constituted an unjustifiably high risk of infringement. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933-34 (2016); *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). Qualcomm will do so.

The evidence will show that Apple knew of Qualcomm's Asserted Patents and intentionally infringed them. Apple has had knowledge of the Asserted Patents, and its infringement of the asserted claims, since at least July 6, 2017, when Qualcomm filed this action. However, Apple has persisted in its infringement. Accordingly, since at latest July 6, 2017, Apple has willfully infringed these patents. *See Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1027 (N.D. Cal. 2017) ("[P]ost-filing

conduct alone can serve as the basis of a jury's willfulness finding and an award of enhanced damages"); *ZitoVault, LLC v. Int'l Bus. Machines Corp.*, No. 16-962-M, 2018 WL 2971131, at \*3 (N.D. Tex. Mar. 29, 2018) ("The Court can reasonably infer that if Defendants infringe, then they are deliberately continuing to do so despite notice in the Complaint.  Accordingly, Plaintiff has stated a claim for post-suit willful infringement against both Defendants."); *Progme Corp. v. Comcast Cable Commc'ns LLC*, No. 17-1488, 2017 WL 5070723, at \*12 (E.D. Pa. Nov. 3, 2017) (Court would "not deny Plaintiff the possibility of collecting enhanced damages related to [defendant's] post-suit conduct."); *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-1032, 2017 WL 8727249, at \*6 (E.D. Tex. Sept. 22, 2017) ("[A]n allegation that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement.").  Apple stipulated that it has made no effort to design around any of the patented inventions or identify a commercially available non-infringing alternatives. PX0746.  Apple's litigation conduct has also demonstrated a willful disregard for the patents rights that it knowingly infringes.  *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1023 (N.D. Cal. 2017) (noting that among the *Read* factors in assessing willfulness is "the infringer's behavior as a party to the litigation;") (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), abrogated on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*)).

## B.    THE ASSERTED PATENTS ARE VALID AND ENFORCEABLE

Qualcomm's Asserted Patents are valid and enforceable.  Qualcomm's patents are presumed valid.  35 U.S.C. § 282.  To overcome this presumption, Apple would have to prove its invalidity defenses by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).  Because Apple cannot carry this burden, its invalidity defenses fail, and Qualcomm's Asserted Patents must be found valid.

Apple contends the asserted claims of the Asserted Patents are anticipated by prior art.  To demonstrate anticipation, Apple would have to prove by clear and convincing

1   evidence that a single prior art reference discloses each claim limitation arranged or
2   combined in the same way as recited in the claim.  *Net MoneyIN, Inc. v. VeriSign, Inc.*,
3   545 F.3d 1359, 1371 (Fed. Cir. 2008).  Apple cannot carry this burden because the
4   claimed inventions were novel, and the references Apple puts forward do not disclose
5   each limitation of the asserted claims arranged or combined in the same way.

6       Apple also contends each of the asserted claims are invalid as obvious.  To
7   establish this, Apple has the burden of proving by clear and convincing evidence that
8   the claimed subject matter would have been obvious to an ordinary skilled artisan at the
9   time of the invention, based on (1) the scope and content of the prior art; (2) differences
10  between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent
11  art; and (4) relevant objective considerations.  *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d
12  1343, 1353 (Fed. Cir. 2013).  In addition, when "an obviousness defense relies on the
13  combination of two or more references, there must be some suggestion or motivation to
14  combine the references."  *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d
15  1359, 1368 (Fed. Cir. 2016) (quoting *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d
16  1339, 1355 (Fed. Cir. 1999)).  Apple cannot carry this burden because the claimed
17  inventions were not obvious, Apple cannot show a motivation to combine the references
18  in the combinations it puts forward, and the combinations do not disclose the claimed
19  inventions in any event.

20      Further, Qualcomm will present evidence at trial showing the relevant objective
21  considerations show the claimed inventions were not obvious.  Objective evidence of
22  nonobviousness includes evidence of copying, commercial success, praise by others,
23  failure of others, and long-felt need.  *See Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372,
24  1379 (Fed. Cir. 2012).  Qualcomm will present evidence showing its inventions solved
25  long-felt but unresolved needs of mobile device makers, including Apple, and that Apple
26  copied some of these inventions.  The infringing iPhones have also been commercially
27  successful, as have Qualcomm's mobile chipsets enabling the practice of the claimed
28  inventions in iPhones and other mobile devices.

Thus, Apple will not be able to show by clear and convincing evidence that the asserted claims of the Asserted Patents are invalid as obvious.

### 1.   The '949 Patent Is Valid and Enforceable

#### (a)   The Asserted Claims Are Not Invalid in Light of the CELL Handbook

Apple contends what it calls the "CELL Handbook" anticipates the asserted claims of the '949 Patent.  Apple cannot carry its burden of proving this by clear and convincing evidence first because Apple cannot actually establish the CELL Handbook was published as required to anticipate the '949 Patent.  Further, it does not disclose various limitations of the asserted claims, including the "hardware buffer" of the '949, or "an image header," including receiving said image header "separately" from "each data segment."  It also fails to disclose a "scatter loader controller" configured "to load the image header" or "to scatter load each received data segment based at least in part on the loaded image header," including scatter loading each data segment "directly from the hardware buffer to the system memory."  CELL does not further disclose an "executable software image being received by the secondary processor," as required by the asserted claims.

Apple contends as a fallback that the combination of CELL and Blackfin HR 537 renders the asserted claims of the '949 Patent obvious.  This is not the case at least because Blackfin HR does not disclose an "image header" as construed in the asserted claims, CELL lacks all the limitations described above, and CELL and Blackfin HR 537 are fundamentally incompatible with each other and therefore Apple cannot establish a motivation to combine the references.

#### (b)   The Asserted Claims Are Not Invalid in Light of Gobi1000 and Kim

Apple also contends Qualcomm "Gobi1000" Computers in combination with Korean Patent Application Pub. No. 2002/0036354 to Kim ("Kim") renders the asserted claims of the '949 Patent obvious.  Apple cannot carry its burden of proving this contention by clear and convincing evidence.  For example, the combination fails to

1 disclose a "hardware buffer"; Apple identifies temporary buffers as meeting this
2 limitation.  The combination also fails to disclose the limitations of a "scatter loader
3 controller" configured to "scatter load" data segments "directly from the hardware buffer
4 to the system memory," at least because ████████████████████████████████████
5 ████████████████████████████████████████████████████████████████████████████
6 ████████████████████████████   Further, as Apple admits, Gobi fails to disclose
7 "separately" receiving "an image header and each data segment," and a person of
8 ordinary skill in the art would not be motivated to combine it with Kim to remedy this
9 deficiency.  Kim is directed to a distributed system and the problem of overloading a
10 single system management processor by multiple concurrent loading requests from
11 different devices in that system. ████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████   Kim also does not disclose a multi-segment image
14 or an "image header."  A person of ordinary skill in the art would not be motivated to
15 combine these references.

(c)    Secondary Considerations, Including Apple's Copying,
Indicate the Invention Was Not Obvious

Qualcomm will demonstrate that objective considerations indicate the invention
of the '949 Patent was not obvious.

In particular, the evidence will show that Apple copied Qualcomm's invention
████████████████████████████████████ in the Accused Products.  Qualcomm will show that ██
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 █████████████████████████████████████

6     Qualcomm will also demonstrate the invention enjoyed industry praise, ███████

7 ████████████████████████████████████, which further shows the

8 invention was non-obvious.  The evidence will also show the invention of the '949

9 Patent addressed the long-felt and unmet need in the mobile device industry for better

10 performance, specifically improvements in boot-up speed, while reducing product size

11 and component costs, and that Qualcomm's products embodying the invention were

12 commercially successful.  For these additional reasons, Apple will not be able to prove

13 at trial by clear and convincing evidence that the claim is obvious.

14         (d)    The Asserted Claims Are Not Invalid Due to Derivation or Non-Joinder

15

16     Apple further contends the '949 Patent is invalid for derivation or failure to name

17 a co-inventor on the patent because Apple contends an Apple engineer named Arjuna

18 Siva had first come up with the idea for the '949 Patent and communicated it to

19 Qualcomm.  In order to show derivation, a party must show both "(1) prior conception

20 of the invention by another and (2) communication of that conception to the patentee

21 that is sufficient to enable him to construct and successfully operation the invention."

22 *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1376 (Fed. Cir. 2004) (internal

23 quotations omitted).  Prior conception must be proven with clear and convincing

24 evidence.  *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed.

25 Cir. 1997).  Similarly, "the burden of showing misjoinder or nonjoinder of inventors is

26 a heavy one and must be proved by clear and convincing evidence." *Hess v. Advanced

27 Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997).

28     Apple cannot and will not prove derivation or non-joinder by clear and convincing

1    evidence because the invention of the '949 Patent was not conceived of or invented by

2    Mr. Siva or anyone else at Apple. ██████████████████████████████████████

3    ████████████████████████████████████████████████████████ *See Regents*

4    *of Univ. of California v. Synbiotics Corp.*, No. 93-822GT, 1993 WL 645929, at *5 (S.D.

5    Cal. Oct. 13, 1993) (citing *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200,

6    1206 (Fed. Cir. 1991)) ("One who merely suggests an idea of a result to be

7    accomplished, rather than the means of accomplishing it, is not a joint inventor.").  The

8    evidence will further show that ████████████████████████████████████████████

9    █████████████████████████████████████████████████████████████████████

10   ███████████████████████████████, and fail to disclose the limitations

11   of the invention of the '949 Patent including that "the image header and each data

12   segment be[] received separately" and "scatter load each received data segment based at

13   least in part on the loaded image header, directly from the hardware buffer to system

14   memory."[2]

15        For the same reasons, Mr. Siva should not be named as an inventor, and there is

16   no invalidity for failure to name an inventor. ███████████████████████████████

17   ███████████████████████, and therefore did not contribute significantly (or at

18   all) to the conception of the claimed invention.

19              **2.     The '490 Patent Is Valid and Enforceable**

20                   (a)    Claim 31 is Not Invalid in Light of the Centrino Art

21        Apple contends that claim 31 of the '490 Patent is anticipated or rendered obvious

22   by a laptop with an Intel Centrino WiFi card.  As an initial matter, Apple cannot prove

23   invalidity by clear and convincing evidence because it has failed to introduce sufficient

24   evidence to demonstrate that prior art systems employing a Centrino WiFi card behaved

25   as it contends.  For example, numerous technical documents that describe relevant

26

27   ───────────────────────

28   [2]   Apple also bases an inequitable conduct defense on its contention that Mr. Siva should have been named as an inventor, but the parties have agreed this will be tried to the Court at a later date if necessary.

1  functionality of Centrino purportedly exist at Intel but were intentionally withheld from
2  Qualcomm.

3      Even if Centrino worked as alleged by Apple, Centrino still does not disclose or
4  render obvious multiple limitations of claim 31 of the '490 Patent. ███████████

5  ████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████
16 ██████████████████████████████

17     Apple falls back on the contention that if Centrino is missing limitations, it
18 nevertheless renders claim 31 obvious because a person of ordinary skill in the art would
19 have found it obvious to modify Centrino to include the limitations.  Apple does not
20 have any support for these contentions.  Centrino does not anticipate or render obvious
21 claim 31 of the '490 Patent.

22         (b)    Claim 31 Is Not Obvious in Light of Heinrich and Balasubramanian

23     Apple also claims the combination of Heinrich and Balasubramanian render claim
24 31 of the '490 Patent obvious, but Apple cannot show this by clear and convincing
25 evidence, either.  Balasubramanian is directed toward wireless communications in a
26 packet-switched system over a shared medium, and is therefore in a different field from
27 Heinrich or the '490 Patent that relate to interprocessor communications.  The

22

1   techniques and design considerations in a wireless packet-switched network are
2   divergent from those of interprocessor communications.  Heinrich does not suggest that
3   its techniques are applicable to networking, and Balasubramanian does not suggest that
4   its techniques are applicable to interprocessor communication.  They apply to distinct
5   stages of the data communications pipeline, and the types of accumulated data traffic in
6   the two references are incompatible.  The power saving goals of each reference are
7   incompatible with each other and with the '490 Patent.  Thus, a person of ordinary skill
8   in the art at the time of the invention of the '490 Patent would not be motivated to
9   combine them, nor would a person of ordinary skill in the art have a reasonable
10  expectation of success of doing so.

11         Moreover, Balasubramanian does not disclose ***any*** limitations of claim 31 of the
12  '490 Patent, and even if the two references were combined, they would fail to disclose
13  several limitations.  For example, Heinrich does not disclose "the modem processor pulls
14  data from the application processor," as required by the claim; it only discloses pushing
15  data.  It also does not disclose the application processor holding data "until the modem
16  processor pulls data," because it instead teaches one processor pushing data when it
17  detects the other is awake.   The combination also would not disclose "before the
18  interconnectivity bus transitions from an active power state to a low power state"
19  because neither reference teaches coordinating traffic across a bus during a single active
20  power state.

21         Apple cannot carry its burden of proving by clear and convincing evidence that
22  the asserted claims of the '490 Patent are invalid.

23              (c)     Secondary Considerations, Including Apple's Copying,
                        Indicate the Invention Was Not Obvious
24  Qualcomm will demonstrate that objective considerations indicate the invention
25  of the '490 Patent was not obvious.  In particular, the evidence will show that Apple
26  copied Qualcomm's invention ▮▮▮▮▮▮▮▮▮▮▮ for use in the Accused Products.
27         The evidence will show that on July 9, 2014 after disclosing the invention of the
28

1   '490 Patent to the Patent Office in provisional applications, █████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ██████████████████████████████████

17        This copying by Apple ████████ indicates that the invention of the '490 Patent

18  was not obvious.  Other objective considerations also indicate the '490 Patent was not

19  obvious, including the commercial success of products and processing embodying the

20  invention, the long-felt and unmet need for a power-efficient interprocessor

21  communication technique that would address the particular challenges of faster

22  interconnectivity buses like PCIe (plus the way that the invention of the '490 Patent

23  provided significant power savings to address the need), and industry praise for the

24  specific interprocessor communication technique described and claimed in claim 31 of

25  the '490 Patent.  For these additional reasons, Apple will not be able to prove at trial by

26  clear and convincing evidence that claim 31 of the '490 Patent is obvious.

27        **3.    The '936 Patent Is Valid and Enforceable**

28

        (a)      The Asserted Claims Are Entitled to a September 29, 2007 Priority Date

Qualcomm will present evidence showing that the asserted claims of the '936 Patent are entitled to a priority date of no later than September 29, 2007. Qualcomm engineer Yun Du recognized the need for the claimed mixed-precision shader architecture of the '936 Patent by July 26, 2007 because that day he communicated the idea to his colleagues and fellow inventors Chun Yu, Steve Molloy, and Golf Jiao. By mid-August 2007, he had completed a prototype design for a mixed-precision shader, by September 27 he was working on building a mixed precision shader architecture, and on September 28 he had received initial results showing the feasibility of using mixed-precision in his shader prototype and the improvement in power consumption that could be achieved. On the same date, he shared with his colleagues a shader architecture proposal that shows a complete conception of the invention of the '936 Patent. The evidence will further show the inventors of the '936 Patent diligently reduced the invention to practice between that time and the April 21, 2008 filing date of the '936 Patent. The evidence showing the conception and reduction to practice of the '936 Patent will include the testimony of inventor Yun Du and Qualcomm's expert Dr. Murali Annavaram, as well as documentary evidence.

        (b)      The Asserted Claims Are Not Invalid in Light of the NVIDIA Reference

Despite the evidence showing Qualcomm personnel's insight and diligence in realizing the inventions of the '936 Patent, Apple contends the invention was not novel or was obvious at the time in light of the prior art. Apple cannot carry its burden of proving either of these things by clear and convincing evidence. Apple contends a collection of a NVIDIA GeForce FX 5900—a graphics card intended for desktop computers that do not face the power constraints of mobile devices—the NV35 GPU on the card, and associated software (the "NVIDIA NV35 Products") anticipates the invention of the '936 Patent. However, the NVIDIA NV35 Products fail to disclose several limitations of claim 19 of the '936 Patent.

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ███████████████

8    Apparently recognizing these issues, Apple contends as a fall back that the

9 NVIDIA NV35 Products render the invention obvious when combined with one of two

10 references, "Kapasi" or "Holmer," but a person of ordinary skill in the art would not

11 have been motivated to combine the NVIDIA NV35 Products with either of these

12 references. ████████████████████████████████████████

13 ████████████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ███████████████████████ Accordingly, NVIDIA NV35 Products do

18 not anticipate or render obvious the asserted claims of the Asserted Patents.

19        (c)    The Asserted Claims Are Not Invalid in Light of the CELL
                Reference

20    Apple also contends a Mercury Systems CELL Processor anticipates and its

21 documentation and software ("Mercury CELL Products") anticipates claim 19 of the

22 '936 Patent, but the CELL processor was not even a graphics processor and does not

23 meet the "graphics instructions" or "graphics data" limitations of the claim. █████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████████

28

█████████████████████████████████████████████ Like
its contention for the NVIDIA NV35 Products, Apple further fails to identify any
"compiler" that would meet the claims.

Apple also argues the Mercury CELL Products in combination with Kapasi or
Holmer render claim 19 obvious but again there is no motivation to combine any of these
references. ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

The evidence will also show that objective considerations indicate the invention
of the '936 Patent were not obvious.  These include the commercial success of the
Qualcomm system-on-chip products that practice the '936 Patent, the long-felt but
unmet need for high-performance, power-efficient graphics functionality, and the
widespread industry praise for the power efficiency of these products.

Apple cannot carry its burden of proving by clear and convincing evidence that
the asserted claims of the '936 Patent are invalid.

## C. QUALCOMM'S PRODUCTS PRACTICE THE ASSERTED PATENTS

Qualcomm's products practice the patented inventions asserted in this case.
Having won summary judgment on the issue of pre-suit damages by contending that
Qualcomm does not mark its own practicing products, Apple is judicially estopped from
arguing the exact opposite at trial—that Qualcomm's products do not actually practice

the Asserted Patents after all. "Judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *Gonzalez v. Millard Mall Servs., Inc.*, No. 09CV2076-AJB WVG, 2012 WL 727867, at *2 (S.D. Cal. Mar. 6, 2012) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). Judicial estoppel is used "because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). In applying the doctrine, courts consider "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Gonzalez v. Millard Mall Servs., Inc.*, No. 09CV2076-AJB WVG, 2012 WL 727867, at *2 (S.D. Cal. Mar. 6, 2012) (quoting *United States v. Ibrahim,* 522 F.3d 1003, 1009 (9th Cir. 2008)). Here, the Court has held—based on Apple's argument—that Qualcomm is not entitled to pre-suit damages because it failed to mark its practicing products. Any argument by Apple that Qualcomm's products do not, in fact, practice the patents would be inconsistent with the predicate for this holding and would unfairly impose on Qualcomm both the ramifications of practicing and not practicing the claimed inventions. *See, e.g.*, *Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*, No. 07-cv-0894-DMS (POR), (S.D. Cal. Dec. 2, 2008) (ECF No. 182 at 9) (compelling production of sales data related to plaintiff's embodying products because "the information is relevant to [the plaintiff's] damages theory").[3] Having obtained summary judgment, it would be unfair to Qualcomm to allow Apple to evade pre-suit damages on this theory

---

[3] In seeking to compel discovery in this case, Apple argued that "Financial data related to Qualcomm's embodying products is indisputably relevant to Qualcomm's alleged damages." (Dkt. 384-2 at 2.)

1   while arguing at trial that the products do not embody the asserted patents.

2   **D.    QUALCOMM IS ENTITLED TO DAMAGES FOR APPLE'S WILLFUL INFRINGEMENT**

3   Because, as discussed above, Qualcomm will prove Apple is liable for
4   infringement, Qualcomm is entitled to damages adequate to compensate for the
5   infringement, which shall be no less than a reasonable royalty.  35 U.S.C. § 284.  A
6   reasonable royalty is determined based upon a hypothetical negotiation between a
7   willing licensor and a willing licensee occurring just before the infringement began.  *See*
8   *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011).[4]

9   Qualcomm is entitled to a reasonable royalty for each infringing iPhone sold in
10  the U.S. since July 6, 2017, the date Qualcomm filed its Complaint in this case.  Dkt. 1.
11  Qualcomm will show that a reasonable royalty for the '936 Patent is $0.55 per unit; a
12  reasonable royalty for the '490 Patent is $0.42 per unit; and a reasonable royalty for the
13  '949 Patent is $0.44 per unit.  With the exception of a difference in pro-rating math that
14  results in a variance of a single day of infringing sales, the parties do not dispute that
15  assuming validity and infringement are proven, from July 6, 2017 through September
16  29, 2018, actual and estimated infringing sales total[5]: ▮▮▮▮▮▮ accused devices for
17  the '936 Patent; ▮▮▮▮▮▮ accused devices for the '490 Patent; and ▮▮▮▮▮▮ accused
18  devices for the '949 Patent.  Qualcomm will also seek an accounting and ongoing
19  running royalty for infringing sales from October 1, 2018 forward, and seek pre-
20  judgment and post-judgment interest on any damages award.

21  Qualcomm's reasonable royalty rates for the '936 and '490 Patents are based on
22  the incremental profits attributable to power savings and increased battery life derived
23  from the patented features.  Qualcomm's technical experts opine as to the precise amount
24  of power savings attributable to each patent at the device-level; Qualcomm's economist

25

26

27  _____
    [4]  Qualcomm reserves the right to seek enhanced damages for willful infringement.
    [5]  Apple has refused to provide updated financial data for Quarters three and four of
28  its 2018 Fiscal Year, nor has it provided financial data for sales during its Fiscal Year
    2019.

1   and survey expert opines on the price premium associated with increased battery life in

2   smartphones; and Qualcomm's economist and damages expert uses those inputs to opine

3   as to the reasonable royalty that would be agreed to at the hypothetical negotiation.

4   Qualcomm's reasonable royalty rate for the '949 Patent is based on the minimum

5   incremental profit attributable to the patented feature as the cost of the flash memory

6   component saved by using the invention, since the invention has other benefits such as

7   increasing available board space as well as improving manufacturability and yield.

8   Qualcomm's economist and damages expert opines as to the proper cost estimate for

9   that component and uses that to opine as to the reasonable royalty that would be agreed

10   to at the hypothetical negotiation.

11        Dr. Kennedy will further testify that based on his analysis of the *Georgia-Pacific*

12   Factors and an analysis of a number of other factors, including financial factors, the

13   weighted average cost of capital, the parties litigation history, and deposition testimony

14   provided by Apple's witnesses, the relative bargaining power of Apple and Qualcomm

15   in the hypothetical negotiation would be balanced and support an equal split of the

16   incremental profits attributable to use of the patented inventions in the Accused

17   Products.

18 **III.**   **PROCEDURAL ISSUES**

19        Qualcomm is not aware of any procedural issues that require resolution by the

20   Court.  The parties have already agreed that trial as to Apple's affirmative defense of

21   inequitable conduct will be postponed until after a jury verdict has been reached and

22   tried to the Court at a later date if necessary.  (*See* Feb. 8, 2019 Hearing Transcript at

23   15:20-16:1.)

24 **IV.**   **EVIDENTIARY ISSUES**

25        The parties' respective Motions *in Limine* were fully briefed, a hearing was held

26   on February 22, 2019, and orders issued on February 22 and February 25.  Dkts. 620,

27   623.  In addition, the parties have raised a number of objections to one another's exhibits

28   and deposition designations.

1    DATED:  March 1, 2019                    Respectfully Submitted,

2

3                                       By */s/ Michelle Ann Clark*

4                                          Karen P. Hewitt (SBN 145309)
                                           kphewitt@jonesday.com
5                                          Randall E. Kay (SBN 149369)
                                           rekay@jonesday.com
6                                          John D. Kinton (SBN 203250)
                                           jkinton@jonesday.com
7                                          Kelly V. O'Donnell (SBN 257266)
                                           kodonnell@jonesday.com
8                                          4655 Executive Drive, Suite 1500
                                           San Diego, California 92121
9                                          Telephone: (858) 314-1200
                                           Facsimile: (858) 345-3178

10                                         QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
11                                         David A. Nelson (*pro hac vice*)
                                           (Ill. Bar No. 6209623)
12                                         davenelson@quinnemanuel.com
                                           Nathan A. Hamstra (*pro hac vice*)
13                                         (Ill. Bar No. 6286325)
                                           nathanhamstra@quinnemanuel.com
14                                         500 West Madison St., Suite 2450
                                           Chicago, Illinois 60661
15                                         Telephone: (312) 705-7400
                                           Facsimile: (312) 705-7401
16

17                                         Scott L. Watson (SBN 219147)
                                           scottwatson@quinnemanuel.com
18                                         Valerie A. Lozano (SBN 260020)
                                           valerielozano@quinnemanuel.com
19                                         Patrick T. Schmidt (SBN 274777)
                                           patrickschmidt@quinnemanuel.com
20                                         865 South Figueroa Street, 10th Floor
                                           Los Angeles, CA 90017
21                                         Telephone: (213) 443-3000
                                           Facsimile: (213) 443-3100
22

23                                         Richard W. Erwine (*pro hac vice*)
                                           (N.Y. Bar No. 2753929)
24                                         richarderwine@quinnemanuel.com
                                           Alexander Rudis (*pro hac vice*)
25                                         (N.Y. Bar No. 4232591)
                                           alexanderrudis@quinnemanuel.com
26                                         51 Madison Avenue, 22nd Floor
                                           New York, NY 10010
27                                         Telephone: (212) 849-7000
                                           Facsimile: (212) 849-7100

28

---

                                        31                CASE NO. 3:17-cv-1375-DMS-MDD
                                                     QUALCOMM INCORPORATED'S TRIAL BRIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Michelle A. Clark (SBN 243777)
michelleclark@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Plaintiff and
Counterclaim Defendants
QUALCOMM INCORPORATED and
QUALCOMM TECHNOLOGIES. INC.*

1

**CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that a true and correct copy of the above and

3   foregoing document has been served on March 1, 2019 to all counsel of record who

4   are deemed to have consented to electronic service via the Court's CM/ECF system

5   per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic

6   mail, facsimile and/or overnight delivery.

7          Executed on March 1, 2019 at San Francisco, California.

8

9                              */s/ Michelle Ann Clark*
                              Michelle Ann Clark
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 3:17-cv-1375-DMS-MDD
                                             QUALCOMM INCORPORATED'S TRIAL BRIEF