# EXHIBIT A

CONFIDENTIAL UNDER PROTECTIVE ORDER

Page 1

1     UNITED STATES INTERNATIONAL TRADE COMMISSION
2                     Washington, DC
3   In the matter of
4   CERTAIN MOBILE ELECTRONIC           INVESTIGATION NO:
    DEVICES AND RADIO FREQUENCY         337-TA-1065
5   AND PROCESSING COMPONENTS
    THEREOF
6
    _____/
7
8
9
10
11
12        ** TRANSCRIPT MARKED CONFIDENTIAL **
13          ** UNDER PROTECTIVE ORDER **
14   VIDEOTAPED DEPOSITION OF ARJUNA SIVASITHAMBARESAN
15                 Palo Alto, California
16             Thursday, February 15, 2018
17
18
19
20
21
22
23  Reported By:
24  LINDA VACCAREZZA, RPR, CLR, CRP, CSR. NO. 10201
25  JOB NO. 138016

Page 158

1   was more about the security and cryptography behind
2   the system.  And frankly, I didn't think my idea
3   was patentable because it's applying a well known
4   concept.
5       Q.   But a patent was granted on your idea,
6   Mr. Siva?
7           MR. O'NEILL:  Objection.
8           THE WITNESS:  A patent was granted in
9   relation to flashless boot, more around the
10  security side of things.
11  BY MR. HAMSTRA:
12      Q.   I'm sorry.  My question was unclear.  You
13  understand that the Qualcomm's '949 patent which
14  you claim to have invented issued, correct?
15      A.   Can you repeat the question again?  I
16  think something broke up.
17      Q.   Sorry.  Are you familiar with Qualcomm's
18  '949 patent relating to flashless boot?
19          MR. O'NEILL:  Objection.  Asked and
20  answered.
21          THE WITNESS:  I'm aware of that patent.
22  BY MR. HAMSTRA:
23      Q.   And you understand that that patent did
24  issue?
25      A.   I was made aware of it when I first met

Page 159

1   with my attorneys here.
2       Q.   Do you believe you should be the sole
3   inventor of that patent?
4           MR. O'NEILL:  Objection.
5           THE WITNESS:  I'm not sure I'm qualified
6   to answer that because I don't think the idea is
7   patentable.  I didn't think that it was.
8   BY MR. HAMSTRA:
9       Q.   You also haven't read the patent, correct?
10      A.   So pertaining to my idea, I didn't think
11  my idea was patentable.  I haven't read the patent.
12      Q.   You don't know what's recited in the
13  claims of the '949 patent, correct?
14      A.   Based on what I had said earlier, I think
15  my understanding is that the '949 patent does cover
16  my idea, at least at some level.
17      Q.   What is that understanding based on?
18      A.   It is based on discussions with my
19  attorneys here.
20      Q.   So your understanding that the '949 patent
21  covers your idea is based only on discussions with
22  attorneys; is that fair?
23          MR. O'NEILL:  Objection.
24          THE WITNESS:  So I have a certain
25  understanding of the '949 patent, and I believe it

Page 160

1   refers to my idea.
2   BY MR. HAMSTRA:
3       Q.   And that belief is based on what your
4   attorneys told you, correct?
5       A.   I think that's not correct.
6       Q.   What is your belief that the '949 patent
7   refers to your idea based on?
8       A.   My understanding is that the '949 patent
9   refers to the same design effectively outlined in
10  this document here, Exhibit 22.
11      Q.   And what is that understanding you just
12  described that the '949 patent refers to the same
13  design outlined in Exhibit 22 based on?
14      A.   So I have some understanding that there's
15  some litigation between Qualcomm and Apple over
16  flashless boot.  And given that I came up with the
17  idea for flashless boot, or my idea, I'm assuming
18  that Qualcomm is -- the patent is the same idea.
19      Q.   Why would you make that assumption?
20      A.   So I presented this idea.  There were
21  several hoops by which I got it finally made plan
22  of record on the iPhone 4S and we shipped with it.
23  So that was -- I know that my design was on that
24  product.  And my understanding of the litigation is
25  that it is in context of that product in the

Page 161

1   same -- for the same domain.
2       Q.   Is it your understanding that Qualcomm is
3   accusing iPhones with Qualcomm modems of
4   infringement?
5       A.   I'm only aware of --
6           MR. O'NEILL:  Let me just stop you.  To
7   the extent you can only answer that based on
8   privileged communications that you have had with
9   your counsel, I instruct you not to answer.
10  Otherwise, you can answer.
11          THE WITNESS:  I only know it in the
12  context of flashless boot.
13  BY MR. HAMSTRA:
14      Q.   You only know what in the context of
15  flashless boot?
16      A.   So I know I'm being deposed here today in
17  the context of my work on flashless boot.  And I
18  believe this patent was brought up.
19      Q.   Going back a little bit.  You understand
20  that the '949 patent describes the design outlined
21  in Exhibit 22, correct?
22          MR. O'NEILL:  Objection.  He's says he's
23  never reviewed it.
24          THE WITNESS:  To really confirm that, I
25  have to read the patent itself.

CONFIDENTIAL UNDER PROTECTIVE ORDER

Page 162

1  BY MR. HAMSTRA:
2      Q.  Which you've never done, correct?
3      A.  I believe that's true.
4      (Exhibit 23 was marked for identification.)
5  BY MR. HAMSTRA:
6      Q.  The court reporter has handed you Exhibit
7  23, supplement to streaming download protocol, a
8  Qualcomm specification, dated July 20th, 2007,
9  bearing Bates number APL-QC1065_02503572 through
10 02503597.
11     A.  Okay.
12     Q.  Mr. Siva, do you see a watermark on the
13 first page here?
14     A.  Yes.
15     Q.  And is it your understanding that this
16 watermark indicates that you downloaded the
17 specification on March 17, 2010?
18     A.  I do see that.
19     Q.  If you turn to Page 4 of Exhibit 23?
20     A.  What is the last few digits?
21     Q.  575.
22         And do you see Section 1.1, "Purpose"?
23     A.  Okay.
24     Q.  Let me switch gears a second, actually.
25 Do you have an understanding of what Exhibit 23 is

Page 163

1  describing?
2      MR. O'NEILL:  Objection.
3      THE WITNESS:  This is quite a large
4  document, but I can go based on the title.  The
5  supplement to streaming download protocol.
6  BY MR. HAMSTRA:
7      Q.  And do you recall anything about this
8  Qualcomm specification we are looking at, Exhibit
9  23?
10     A.  Is there a specific section you want me to
11 see whether it looks familiar?
12     Q.  Go ahead and flip through it.
13     A.  There's a lot of pages here.
14     Q.  Well, let just ask you a couple specific
15 questions.  Can you turn to Page 22, ending in
16 Bates numbers 593.
17         Actually, strike that.  I'm not going to
18 ask any further questions about this.
19         Mr. Siva, is there any of your testimony
20 today that you would like to change?
21     A.  No.
22     Q.  Did you rehearse any questions and answers
23 with your attorneys today or yesterday?
24     MR. O'NEILL:  Objection.  Instruct the
25 witness not to answer on the grounds of attorney-

Page 164

1  client privilege.
2      (Instruction not to answer.)
3      MR. HAMSTRA:  The fact of whether you
4  practiced questions and answers is privileged?
5      MR. O'NEILL:  What do you mean, questions
6  and answers?
7  BY MR. HAMSTRA:
8      Q.  Mr. Siva, did counsel practice with you
9  the examination, an examination he expects to --
10 strike that.
11         Did counsel practice with you the
12 questions he intends to ask you today?
13     MR. O'NEILL:  I instruct the witness not
14 to answer on attorney-client privilege grounds what
15 we have discussed in our meeting yesterday.
16     (Instruction not to answer.)
17     MR. HAMSTRA:  What substance would the
18 answer to that question reveal?
19     MR. O'NEILL:  So we are allowed to inquire
20 into your witness's prep?  Is that what we are
21 opening up here?
22     MR. HAMSTRA:  If --
23     MR. O'NEILL:  Like what you actually did
24 with them in the room?
25     MR. HAMSTRA:  At the level I'm asking you

Page 165

1  now, if there's a practice question and answer, I
2  think so.
3      MR. O'NEILL:  So the question is:  Did we
4  talk about any questions yesterday?  Because that
5  seems to get into the substance of what we were
6  talking about.
7  BY MR. HAMSTRA:
8      Q.  Let me ask a different question, then.
9  Did you receive any scripted questions and answers
10 yesterday, Mr. Siva?
11     MR. O'NEILL:  Just to clarify, you're
12 talking physically receive scripted questions?
13     MR. HAMSTRA:  Yes.
14     THE WITNESS:  No.
15     MR. HAMSTRA:  Subject to my earlier
16 complaints about his inability to cover some topics
17 as to Intel and as to after his departure in 2013,
18 I have no further questions.
19     MR. O'NEILL:  Okay.  Why don't we go off
20 for a few minutes and try to get thing lined up.
21     THE VIDEOGRAPHER:  The time is 5:43 p.m.
22 We are off the record.
23     (Recess taken from 5:43 p.m. to 5:44 p.m.)
24     THE VIDEOGRAPHER:  The time is 5:44 p.m.
25 We are on the record.  This marks the end to DVD