Nina S. Tallon, DC Bar No. 479481, *appearing pro hac vice*
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Phone: 202-663-6000 / Fax: 202-663-6363

Joseph J. Mueller, MA Bar No. 647567, *appearing pro hac vice*,
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: 617-526-6000 / Fax: 617-526-5000

Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Phone: (858) 678-5070/ Fax: (858) 678-5099

Ruffin B. Cordell, DC Bar No. 445801, *pro hac vice*, cordell@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, Suite 1000
Washington, D.C.  20024
Phone:  202-783-5070 / Fax:  202-783-2331

[*Additional counsel identified on signature page*]

*Attorneys for Defendant/Counterclaim Plaintiff Apple Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:17-cv-1375-DMS-MDD<br><br>**MEMORANDUM IN SUPPORT OF APPLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(a)**<br><br>TRIAL DATE: MARCH 4, 2019<br>JUDGE: HON. DANA SABRAW |

Case No. 3:17-CV-01375-DMS-MDD

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   APPLE IS ENTITLED TO JUDGMENT AS MATTER OF LAW OF
      NON-INFRINGEMENT..........................................................................1

      A.    Legal Standards ........................................................................1

      B.    Apple Is Entitled to Judgment of Non-Infringement of the '949
            Patent .......................................................................................2

      C.    Apple Is Entitled to Judgment of Non-Infringement of the '490
            Patent .......................................................................................7

      D.    Apple Is Entitled to Judgment of Non-Infringement of the '936
            Patent .....................................................................................11

III.  APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
      OF NO WILLFULNESS ......................................................................16

IV.   APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
      ON QUALCOMM'S DAMAGES CLAIMS.........................................18

V.    CONCLUSION ....................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*,
  No. 06-cv-2433, 2009 WL 10672071 (S.D. Cal. Mar. 2, 2009)..........................16

*Apple Inc. v. Samsung Elecs. Co.*,
  695 F.3d 1370 (Fed. Cir. 2012) ..............................................................................4

*Asetek Danmark A/S v. CMI USA Inc.*,
  852 F.3d 1352 (Fed. Cir. 2017) ..............................................................................3

*Asyst Techs., Inc. v. Emtrak, Inc.*,
  402 F.3d 1188 (Fed. Cir. 2005) ..............................................................................2

*Behne v. 3M Microtouch Sys., Inc.*,
  11 F. App'x 856 (9th Cir. 2001) .............................................................................1

*Carl Zeiss Vision Intern. GMBH v. Signet Armorlite, Inc.*,
  No. 07-cv-0894, 2010 WL 3636180 (S.D. Cal. Sept. 13, 2010) .............................1

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
  460 F.3d 1349 (Fed. Cir. 2006) ..............................................................................2

*CSP Techs., Inc. v. Sud-Chemie AG*,
  643 Fed. Appx. 953 (Fed. Cir. 2016).......................................................................2

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ............................................................................13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)................................................................................................2

*Frac Shack Inc. v. Fuel Automation Station LLC¸*
  No. 16-cv-02275, 2018 WL 5792613 (D. Colo. Nov. 5, 2018)...........................13

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  136 S. Ct. 1923 (2016) ..........................................................................................15

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
  370 F.3d 1131 (Fed. Cir. 2004). .............................................................................2

*Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*,
    873 F.2d 1422 (Fed. Cir. 1989) ....................................................................5, 14

*Lucent Techs. Inc. v. Gateway, Inc.*,
    No. 02-cv-2060, 2007 WL 925354 (S. D. Cal. Mar. 6, 2007)............................14

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
    690 F.3d 1354 (Fed. Cir. 2012) .........................................................................1

*Plano Encryption Techs., LLC v. Alkami, Inc.*,
    No. 2:16-cv-1032, 2017 WL 3654122 (E.D. Tex. Aug. 23, 2017).....................13

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992) ..........................................................................16

*Riles v. Shell Expl. & Prod. Co.*,
    298 F.3d 1302 (Fed. Cir. 2002) ...........................................................................1

*Sleep Number Corp. v. Sizewise Rentals, LLC*,
    No. ED CV 18-00356, 2018 WL 5263065 (C.D. Cal. June 26, 2018) ...............16

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003) .........................................................................16

*Stickle v. Heublein, Inc.*,
    716 F.2d 1550 (Fed. Cir. 1983) .........................................................................15

*Torres v. City of Los Angeles*,
    548 F.3d 1197, 1205 (9th Cir. 2008) ...................................................................1

*In re Varma*,
    816 F.3d 1352 (Fed. Cir. 2016) .........................................................................13

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ...........................................................................1

*Vulcan Eng'g Co. v. Fata Aluminum, Inc.*,
    278 F.3d 1366 (Fed. Cir. 2002) .........................................................................15

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
    837 F.3d 1358 (Fed. Cir. 2016) .........................................................................15

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) .........................................................................17

**Rules**

Federal Rule of Civil Procedure 50(a)...................................................................1, 17

Local Rule 5.4.............................................................................................................23

I.     **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant Apple Inc. ("Apple") respectfully moves for judgment as a matter of law ("JMOL") that (1) Apple has not infringed any claim of any asserted patent; (2) Plaintiff Qualcomm Incorporated ("Qualcomm") cannot meet its burden to show willfulness; and (3) Qualcomm is not entitled to its claimed damages.

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  In evaluating whether JMOL is proper, courts in this Circuit look to whether the trial evidence, when viewed in the light most favorable to the non-moving party, "permits only one reasonable conclusion." *Carl Zeiss Vision Intern. GMBH v. Signet Armorlite, Inc*., No. 07-cv-0894, 2010 WL 3636180, at *1 (S.D. Cal. Sept. 13, 2010) (quoting *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008)); *see also Behne v. 3M Microtouch Sys., Inc*., 11 F. App'x 856, 858-59 (9th Cir. 2001) ("Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion[.]").

II.    **APPLE IS ENTITLED TO JUDGMENT AS MATTER OF LAW OF NON-INFRINGEMENT**

A.     **Legal Standards**

To establish infringement, Qualcomm must prove by a preponderance of the evidence that the accused products satisfy every limitation in the asserted claims.  If even one limitation is missing or not met as claimed, there is no literal infringement. *See Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1308 (Fed. Cir. 2002); *see also Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1370 (Fed. Cir. 2012).

"To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial."

*VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014).  Prosecution history estoppel "limits the broad application of the doctrine of equivalents by barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution."  *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002)).  Prosecution history estoppel applies when the applicant "mak[es] a narrowing amendment to the claim" for a reason "[]related to patentability."  *Conoco*, 460 F.3d at 1363; *see also Festo*, 535 U.S. at 735; *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1141-43 (Fed. Cir. 2004).  Application of the doctrine of equivalents is also limited by the "all elements rule," which provides that the doctrine does not apply if doing so would vitiate an entire claim limitation—i.e., asserting an infringement theory that would effectively eliminate the claim limitation or render it meaningless.  *See Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005).  The doctrine of equivalents is also limited by the disclosure-dedication doctrine, which "bars a patentee from using the doctrine of equivalents to recapture claim scope that it disclosed in the specification but did not literally include in the patent's claims."  *CSP Techs., Inc. v. Sud-Chemie AG*, 643 Fed. Appx. 953, 958 (Fed. Cir. 2016).

## B.   Apple Is Entitled to Judgment of Non-Infringement of the '949 Patent

Qualcomm accuses Apple's iPhone 7, 7 Plus, 8, 8 Plus, and X containing an Intel baseband chipset of infringing claims 1, 2, and 8 of U.S. Patent No. 8,838,949 (the "'949 patent").  Qualcomm failed to introduce evidence at trial that would allow a reasonable jury to conclude that Apple infringes any asserted '949 patent claim, either literally or under the doctrine of equivalents.

*First*, as Qualcomm itself has confirmed, it offered no evidence at trial on asserted claim 8.  Apple is thus entitled to a judgment that it does not infringe that

claim.  (Trial Tr. at 1040:2-9 (Qualcomm's counsel confirming no evidence presented regarding claim 8); *id.* [Rinard] at 358:4-9 (confirming Dr. Rinard "only spoke about [claims] 1 and 2"); *id.* at 388:13-18 (Dr. Rinard admitting he "presented [his] infringement opinions with respect to two claims in the '949 patent, claim 1 and claim 2" and no other claims).)

*Second*, Qualcomm also admits that it offered no evidence directed to an indirect infringement theory for any asserted '949 patent claim; as such, judgment is warranted in Apple's favor on those infringement theories as well.  (*Id.* at 1039:20-1040:1 (Qualcomm's counsel confirming no evidence presented on indirect infringement); *id.* [Rinard] at 388:22-389:4 (Dr. Rinard admitting he did not offer contributory infringement or inducement opinions for any claim).)

*Third*, no reasonable jury could conclude that the accused products meet the requirement for the modem processor to be configured "to scatter load *each received data segment* based at least in part on the loaded image header."  Dr. Rinard admitted that Segment 0 is a received segment that contains data—i.e., that it meets the plain meaning of a "data segment."  (*Id.* at 399:19-20 ("Q. There is no dispute [Segment 0] is received.  A. That's right as well."); *id.* at 401:18-20 ("Q. To be very, very clear, [Segment 0] is a segment that contains data, correct?  A. Correct.").)  He also did not offer any opinion that Segment 0 is scatter loaded at all—including based at least in part on the loaded image header.  (*Id.* at 397:23-398:5 (confirming no opinion offered that Segment 0 is scatter loaded).)   And, he conceded that Segment 0 is not loaded into memory based on what he described as the "image header," i.e., the combination of the ELF program header table and the ELF header.  (*Id.* at 361:12-18 ("Q. In fact, neither the ELF program header table nor the ELF header specifies where Segment 0 will be placed in system memory, correct?  A. That's right."); *id.* at 361:19-362:2 ("Q. Claim 1 requires an image header, correct?  A. It has to have an image header, yes. Q. And the image header has to specify where the data segments are to be placed in

system memory, right?  A. I believe you're reading the claim correctly. . . . Q. It doesn't do that for Segment 0; we can agree on that?  A. Yes.").)  Therefore, because the evidence confirms that Segment 0 ***is*** a received data segment that is ***not*** "scatter loaded based at least in part on the loaded image header," no reasonable jury could find infringement of claims 1 or 2.

Dr. Rinard argued that Segment 0 is not a "data segment."  But the parties are required to apply plain meaning to that term, and Dr. Rinard did not identify how that plain meaning—i.e., a segment that contains data—is not met.  (Dkt. 637-4 [Qualcomm's Proposed Suppl. Jury Instructions] at 4; Dkt. 637-2 [Apple's Proposed Suppl. Jury Instructions] at 3.)  *See Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1359-60 (Fed. Cir. 2017) (affirming instruction to apply ordinary meaning to unconstrued claim terms).  Therefore, no reasonable jury could accept that argument.

Dr. Rinard also argued that Apple infringes because claim 1 is a "comprising" claim.  (Trial Tr. [Rinard] at 307:11-23.)  But that argument is legally wrong.  The fact that claim 1 uses the word "comprising" cannot be used to vitiate the requirement to scatter load "***each*** received data segment" (instead, it simply means that claim 1 can still be met if things ***other than*** data segments are received but not scatter loaded). *See Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1379 (Fed. Cir. 2012) (rejecting argument that use of "comprising" in a claim that required "a plurality of heuristic models" where "***each*** heuristic module" used a predetermined algorithm could be met despite "the addition of other modules that do not use different heuristic algorithms because such addition would impermissibly wipe out the express limitation that require[d] ***every*** module to have a unique heuristic algorithm").[1]

Dr. Rinard also offered a new opinion for the first time on cross examination that Apple infringes because claims 1 and 2 supposedly only require scatter loading

---

[1]     All emphases have been added unless otherwise indicated.

just two received data segments—regardless of how many other data segments are received.  (Trial Tr. [Rinard] at 398:16-399:17, 410:23-411:19, 411:25-412:5, 412:19-413:7, 415:3-23.)   Apple has moved to strike this new opinion because (1) it was undisclosed, and (2) it would be error to allow the jury to consider that argument, which is premised on a legally incorrect reading of the claim.  (*See* Dkt. 663 [Mot. to Strike].)  No reasonable jury could find infringement for this reason as well.

**Fourth**, Qualcomm and Dr. Rinard both admit that Qualcomm did not offer any evidence concerning the doctrine of equivalents for the '949 patent.  (Trial Tr. at 1040:11-22 (Qualcomm's counsel confirming no evidence presented on doctrine of equivalents for '949 patent); *id.* [Rinard] at 389:11-13 ("Q. You weren't asked a single question by your lawyer about the doctrine of equivalents, correct?  A. That's correct.").)   Apple is therefore entitled to JMOL on Qualcomm's doctrine of equivalents theories for the '949 patent.  *See Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) ("The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.").

In any event, the evidence confirms that Qualcomm's pre-trial equivalents argument under the "each received data segment" limitation is barred by prosecution history estoppel.  Qualcomm overcame prior art rejections by adding the limitation requiring scatter loading "***each*** received data segment," while arguing this new limitation was "patentably distinguishable."  Further, Qualcomm's argument would vitiate the limitation and substantially alter the scope of the claim.  Allowing the claims to cover a scenario in which some data segments are not scatter loaded using the claimed approach would defeat the purported efficiency gained from that approach.  Moreover, the evidence at trial confirmed that the function-way-result test for equivalents is not met because at least the way is substantially different (loading data segments in ways other than based on the image header) and the result is

substantially different (potential delayed loading of the executable software image contrary to the patent's claim to improve the efficiency of such loading processes).

*Finally*, no reasonable jury could find that the accused products meet the "image header" requirement of the asserted claims.  The parties' agreed construction of image header is "a header associated with the entire image that specifies *where the data segments are to be placed*."  (Trial Tr. [Rinard] at 359:9-14.)   On cross examination, Dr. Rinard admitted that the parties' agreed construction of "image header" requires that "the image header has to specify the final designation for *each* segment."  (*Id*. at 359:19-21 ("Q. And the image header has to specify the final designation for each segment, correct?  A. I believe that's the correct interpretation of image header, correct.").)

Yet, Dr. Rinard admitted that what he alleges is the image header in the accused products—the combination of the ELF Header and ELF Program Header Table—does not specify where in system memory Segment 0 will be placed.  (*Id*. at 361:12-18 ("Q. In fact, neither the ELF program header table nor the ELF header specifies where Segment 0 will be placed in system memory, correct?  A. That's right."); *id*. at 361:19-362:2 ("Q. Claim 1 requires an image header, correct?  A. It has to have an image header, yes.  Q. And the image header has to specify where the data segments are to be placed in system memory, right?  A. I believe you're reading the claim correctly. … Q. It doesn't do that for Segment 0; we can agree on that?  A. Yes.").)  As discussed above, Segment 0 is a "data segment"; therefore, no reasonable jury could find that Apple's accused products meet the "image header" requirement—because there is no dispute that what Dr. Rinard identifies as the claimed "image header" fails to specify where in system memory Segment 0 will be placed.

## C.    Apple Is Entitled to Judgment of Non-Infringement of the '490 Patent

Qualcomm accuses the iPhone 7, 7 Plus, 8, 8 Plus, and X containing an Intel baseband chipset of infringing claim 31 of U.S. Patent No. 9,535,490 ("the '490 patent").   Qualcomm failed to introduce evidence at trial that would allow a reasonable jury to conclude that the accused Apple iPhones infringe the sole asserted '490 patent claim, either literally or under the doctrine of equivalents.

*First*, Qualcomm introduced no evidence at all regarding any purported indirect infringement of the '490 patent.  Indeed, Dr. Baker expressly confirmed during cross-examination that he did not present any opinions on induced or contributory infringement.  (Trial Tr. [Baker] at 548:12-19.)  JMOL is therefore appropriate on these issues.

*Second*, the evidence at trial confirmed that the accused iPhones do not have "an application processor configured to hold [uplink] data" as required by claim 31. Rather, in the accused products, uplink data is held in memory external to the application processor.  Dr. Baker testified that in the accused iPhones, uplink data is not stored in Apple's A10 and A11 processor logic chip.  (*Id.* at 554:13-16.)  Instead, Dr. Baker confirmed that uplink data is stored in DRAM (or dynamic random access memory), which is a separate chip that is attached to the A10 and A11's processor logic chip.   (*Id.* at 554:13-16 ("In the accused iPhones, the data is stored in DRAM[.]"); *id.* at 554:17-555:4 ("The processor logic chip and the DRAM chips are different chips.").)  As Dr. Baker further testified, Apple's own documents confirm that the DRAM memory is external to the processor logic chip.  (*Id.* at 559:17-560:14 (conceding that DX-451 [Top Level Micro-Architecture Specification] describes the DRAM memory as external to the processor logic chip).)

*Third*, the evidence confirmed that the accused iPhones do not have a "modem processor configured to hold [downlink] data."   Rather, in the accused iPhones,

downlink data is held in memory external to the modem processor.  During cross-examination, Dr. Baker conceded that in the accused iPhones, "[d]ownlink data is stored in the modem processor in ***external DRAM chips*** to the logic chip in the modem processor[.]"   (Trial Tr. [Baker] at 570:3-6; *see also id.* at 570:7-10 (conceding that in the accused iPhones, the DRAM chip is a different and separate chip from the modem processor logic chip).)  Based on this record, no reasonable jury could find that the accused iPhones have "an application processor configured to hold [uplink] data" or a "modem processor configured to hold [downlink] data."

Moreover, Qualcomm's arguments that the accused products satisfy, under the doctrine of equivalents, the "[application/modem] processor configured to hold" limitations of claim 31 of the '490 patent are barred by the "all elements rule." Applying claim 31 to allow uplink and downlink data to be held anywhere on either side of the PCIe communication bus in the accused iPhones would render the "[application/modem] processor configured to hold" language of claim 31 meaningless and would replace that language with just "hold."  Dr. Baker agreed that claim 31 requires "an application processor configured to hold" data.  (*Id.* at 565:17-19.)  By contrast, for example, claim 16 does not specify "about the memory or where it's located."  (*Id.* at 566:9-21.)

Qualcomm's doctrine of equivalents arguments for these limitations are also barred by the disclosure-dedication doctrine because the specification of the '490 patent discloses two embodiments for storing data—*i.e.*, storing data in external memory "coupled to the processor" or in a "storage medium . . . integral to the processor"—but Qualcomm drafted claim 31 to cover only the latter embodiment. Dr. Baker confirmed that the '490 patent describes two different ways to store data: "the storage could be coupled to the processor" "or it may be integral to the processor."  (*Id.* at 565:4-10; *see also* JX-7 ['490 Patent] at 17:15-19 (disclosing storage medium "coupled to the processor" and storage medium "integral to the

processor").)  Claim 31 claims storage integral to the processor, but cannot cover storage coupled to the processor under the disclosure-dedication doctrine.

Even if Qualcomm were not barred by the "all elements rule" or by the disclosure-dedication doctrine, the evidence at trial confirmed that the accused iPhones do not satisfy the "[application/modem] processor configured to hold" limitation of claim 31 of the '490 patent under the doctrine of equivalents because the accused iPhones are substantially different from the claimed invention.  Storing data in external DRAM (as in the accused iPhones) is substantially different from storing data in internal memory (as required by the claimed invention) because, for example, storing data in internal memory allows for faster data access and transmission, and consumes less power.  As Dr. Baker confirmed, there are differences between SRAM memory internal to the processor and external DRAM memory, including that SRAM allows for faster access to data and consumes less power compared to DRAM.  (Trial Tr. [Baker] at 568:6-23.)  Dr. Baker also testified that DRAM is generally less expensive than SRAM per unit of storage.  (*Id.* at 568:24-569:1.)  No reasonable jury could find that Qualcomm has met its burden to show infringement under the doctrine of equivalents.

**Fourth**, the evidence at trial showed that the accused iPhones do not transmit uplink data "after transmission" of the held downlink data.  Instead, as Dr. Baker admitted on cross-examination, uplink and downlink data transfers overlap in the accused products.  (*Id.* at 572:5-8 ("Q. Because in the iPhones, as you've talked about, the period when the downlink data is transmitted overlaps with the period when uplink data is transmitted, correct?   A. Yes.").)   Transmission of uplink data after transmission of held downlink data (as required by the claimed invention) is distinct from overlapping uplink and downlink data transmissions (as in the accused iPhones) because the claimed invention requires sequential data transfers.  (JX-7 ['490 Patent] at claim 31: "wherein the modem processor is further configured [to] pull data from

the application processor *after transmission* of *the* modem processor to application data.")  During cross-examination, both Dr. Baker and Mr. Krishna conceded that claim 31 can be practiced using a half-duplex bus, which only supports sequential data transfers.  (Trial Tr. [Krishna] at 457:5-458:25; *id.* [Baker] at 575:13-22.)  As Mr. Krishna explained, half-duplex buses are like "a one-lane highway" that can only transmit data in one direction at a time.  (*Id.* [Krishna] at 458:16-25.)  Mr. Krishna was further impeached with testimony in which he admitted that Figure 5, which he testified illustrates the claimed invention, shows that *all* the downlink data is sent followed by *all* the uplink data in the same active power cycle.  (*Id.* [Krishna] at 455:4-6; *id.* at 460:20-461:20.)  Finally, both Mr. Krishna and Dr. Baker conceded that it is possible to use a PCIe bus to connect a modem processor to an application processor without infringing the '490 patent.  (*Id.*  [Krishna] at 473:14-22; *id.* [Baker] at 545:16-19.)  Accordingly, no reasonable jury could find that the iPhones transmit uplink data "after transmission" of the held downlink data.

Qualcomm's arguments that the accused products satisfy, under the doctrine of equivalents, the "after transmission" limitation of the '490 patent are barred by prosecution history estoppel.  Qualcomm has not overcome the presumption of estoppel because Qualcomm's amendments and arguments during prosecution required a specific scheduling technique narrowing the "after transmission" limitation to exclude overlapping uplink and downlink transmissions.  (JX-8 ['490 File History] at 366-67, 371-74.)  Qualcomm's argument is also barred by the "all elements rule" because applying claim 31 to allow the transmission of uplink data to occur before the transmission of all downlink data would vitiate the uplink "after transmission" of downlink limitation.

Even if Qualcomm were not barred by prosecution history estoppel or by the "all elements rule," the evidence at trial demonstrated that the accused iPhones do not satisfy the "after transmission" limitation of claim 31 of the '490 patent under the

doctrine of equivalents because the claimed invention is substantially different from the accused iPhones.  In the accused iPhones, the transfer of downlink data overlaps with the transfer of uplink data, whereas the claimed invention requires sequential data transfers.  *See infra* at 9-10.  Dr. Baker offered nothing more than a conclusory opinion on the doctrine of equivalents.  (Trial Tr. [Baker] at 515:21-516:10.) Although Dr. Baker testified that the accused iPhones achieve the same result, he failed to meaningfully explain how the accused iPhones perform the same function in the same way to achieve that same result.  (*Id.*)  As a result, no reasonable jury could find infringement of the claim under the doctrine of equivalents.

### D.    Apple Is Entitled to Judgment of Non-Infringement of the '936 Patent

Qualcomm accuses the iPhone 8, 8 Plus, and X containing an Intel baseband chipset of infringing claims 19, 25, and 27 of U.S. Patent No. 8,633,936 (the "'936 patent").   Qualcomm  failed  to  introduce  evidence  at  trial  that  would  allow  a reasonable jury to conclude these products infringe any asserted '936 patent claim, directly or indirectly, literally or under the doctrine of equivalents.

*First*, Qualcomm offered no evidence at all on asserted claim 25.  Qualcomm's expert, Dr. Murali Annavaram, offered testimony only on claims 19 and 27.  (*See* Trial Tr. [Annavaram] at 703:4-7 ("Q. . . . Am I right, you only testified about two claims, independent claim 19 and dependent claim 27?  That's the extent of your infringement opinion?  A. That is correct, ma'am."); *see also id.* at 635:8-656:25 (opinion on claim 19); *id.* at 657:1-12 (opinion on claim 27).)  Accordingly, Apple is entitled to JMOL on claim 25 of the '936 patent.

*Second*, Qualcomm introduced no evidence at all regarding any purported indirect infringement of the '936 patent.  Dr. Annavaram expressly confirmed that he had offered no opinion on indirect infringement.  (*Id.* at 661:20-662:6 (testifying that

he offered no opinion on contributory or induced infringement).)  JMOL is therefore appropriate on the issues of induced and contributory infringement.

*Third*, the evidence showed that the accused Apple products do not meet the '936 patent's "compiler" limitations, which recite that the graphics and conversion instructions are "executable" instructions "generated by *a compiler* that compiles graphics application instructions."  (JX-1 ['936 Patent] at claim 19; *see also* Trial Tr. [Annavaram] at 671:20-23, 672:2-4.)  The evidence showed that *three, separate compilers* are required to generate executable instructions for the graphics processing unit in the accused Apple products.  Apple's Metal Front-End Compiler ("Metal Compiler") takes as input Metal shading language and outputs Apple Intermediate Representation ("AIR") code.  (*E.g.*, Trial Tr. [Annavaram] at 642:11-16, 676:3-11.)  Apple's Mid-Level Translator Compiler ("Translator Compiler") takes as input the AIR code and outputs LLVM-IR code.  (*E.g.*, *id*. at 642:22-24, 678:7-13, 678:20-23.)  And Apple's AGX Back-End Compiler ("AGX Compiler") takes as input the LLVM-IR code and outputs instructions that are executable by the graphics processing unit.  (*E.g.*, *id*. at 680:10-24.)

None of these three compilers meets claim 19's requirement to both compile "graphics application instructions" and generate "executable" instructions.  As Dr. Annavaram testified:

1.  The Metal Compiler outputs AIR code, not executable instructions.  (Trial Tr. [Annavaram] at 676:7-11 ("Q. And then is it accurate to say, sir, that what happens then from the front-end compiler it's -- the output of the front-end compiler is something called AIR; is that right?  A. The front-end compilation process generally [outputs] what is called AIR, Apple Intermediate Representation, that we talked about."); *see also* PX-2753 [Duprat Dep.] at 208:11-14 ("Q. Is the AIR intermediate representation executed on the [GPU]?

A. It is not.  And it is never transmitted to the GPU.") (played at Trial Tr. 626:6).)

2. The Translator Compiler neither takes as input graphics application instructions nor outputs executable code.  (Trial Tr. [Annavaram] at 678:20-23 ("Q. What goes into the midlevel compiler are not the graphics application instructions, right?  Those went into the front-end compiler on the Mac, correct?  A. That is fair to say, yes."); *id.* at 679:22-25 ("Q. . . . Just to make sure we're clear then, what comes out of the midlevel compiler, this LLVM(IR) is not machine executable code, correct?  A. IR is not machine executable code."); *see also id.* at 678:7-13, 679:4-9.)

3. The AGX Compiler does not take as its input graphics application instructions.  (*Id.* at 680:25-681:9 ("Q. And -- but what goes in the back-end compiler are not the graphics applications instructions?  A. It's the IR. . . .  Q. So they're not graphics application instructions, correct, sir?  A. That's correct."); *see also id.* at 680:10-20.)

Summarizing the flaws in his own analysis, Dr. Annavaram testified:  "Neither of [the front-end nor the back-end] will do the job of transforming high-level programming language to execut[able] [] instructions in the machine."  (*Id.* at 643:14-17.)

Because these facts were undisputed, Dr. Annavaram's infringement opinion was premised on considering the Metal, Translator, and AGX Compilers to be a single combined "chain."  (*Id.* at 643:2-5, 671:7-10.)  The evidence does not support this contention, and instead shows that the Metal Compiler runs on a ***separate device*** and at a ***different time*** than the Translator and AGX Compilers.  (*Id.* at 688:22-689:1 ("Q. . . . [T]he front-end compilation occurs on one device, the Mac, and the back-end compilation occurs on a different device, the iPhone, correct, sir?  A. That's correct, ma'am."); *id.* at 686:9-11 ("Q. And those compilations don't even have to happen at the same time under your scenario?  A. That certainly is true."); *see also id.* at 642:19-

21, 642:25-643:1, 673:14-20, 676:15-19, 680:5-9, 685:5-9.)  Rather, these separate compilers are *separated* by Apple's App Store, which puts an entire marketplace in between application developers and iPhone users—each with opposing interests in an arms-length purchase-and-sale transaction.  (*Id.* at 676:15-19.)   The different compilers that each opposing group uses are thus *separate* compilers, and *none* meets the claim language requiring a compiler that both compiles graphics application instructions and generates executable instructions.  *See, e.g.*, *In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016) ("For a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice [to] have two dogs, each able to perform just one of the tasks."); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1342 (Fed. Cir. 2016); *Frac Shack Inc. v. Fuel Automation Station LLC¸* No. 16-cv-02275, 2018 WL 5792613, at \*5 (D. Colo. Nov. 5, 2018) (concluding that while the claimed system may have multiple controllers, "[e]ach of these controllers must be able to *both* respond to multiple signals from sensors, *and* provide multiple signals to valves" to meet the claim language); *Plano Encryption Techs., LLC v. Alkami, Inc*., No. 2:16-cv-1032, 2017 WL 3654122, at \*10 (E.D. Tex. Aug. 23, 2017) (holding that a claim reciting "*a storage medium* having stored therein a plurality of programming instructions" was limited to a device in which "*one particular medium* must store all of these instructions").[2]

---

[2]      None of the theories advanced by Dr. Annavaram justifies merging Apple's three separate compilers into a theoretical chain.  *First*, Dr. Annavaram testified that a portion of the '936 patent specification disclosed a single compiler that runs on different platforms.  (Trial Tr. [Annavaram] at 711:3-712:10.)  But this passage in fact describes a multi-*processor* compiler—not multiple, separate compilers.  (JX-1 ['936 Patent] at 13:66-14:2 ("[C]ompiler 402 may be formed by *one or more processors* executing computer-readable instructions associated with the compiler software."); *see also* Trial Tr. [Annavaram] at 720:11-19.)  And the following passage, also cited by Dr. Annavaram, discloses the entire multi-processor compiler being implemented on a development platform, not a single compiler formed out of different platforms.  (JX-1 ['936 Patent] at 14:2-4 ("In one aspect, *these one or more processors* may be

**Fourth**, Qualcomm offered no evidence of infringement of the "compiler" limitations—or any other limitations of the '936 patent—under the doctrine of equivalents. Dr. Annavaram expressly confirmed that he had offered no opinion on infringement under the doctrine of equivalents. (Trial Tr. [Annavaram] at 662:7-9.) Accordingly, JMOL on the doctrine of equivalents is appropriate. *See Lear Siegler*, 873 F.2d at 1425 ("The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.").[3]

---

part of, or implemented in, the application development platform used by application developers.").) Further, Dr. Annavaram confirmed that the claims of the '936 patent do not used the word compiler "chain," which is the focus of his analysis. (Trial Tr. [Annavaram] at 671:15-19.) **Second**, Dr. Annavaram opined that Apple considers the Metal, Translator, and AGX Compilers a single compiler. (*Id.* at 644:2-645:7, 712:11-713:7.) But the out-of-context statements Dr. Annavaram says support his conclusion do not change the undisputed facts showing that none of Apple's three compilers meet the claim language—in particular because the document cited in Dr. Annavaram's demonstratives predates the release of the accused products by **seven years**. (*Id.* at 691:20-24, 692:19-22, 699:9-11.)

[3]     Any doctrine of equivalents opinion for the "compiler" limitations would have been futile because the doctrine of equivalents is unavailable for those limitations due to prosecution history estoppel, which applies because Qualcomm added these limitations via amendment to overcome the prior art. (*See* JX-2 ['936 File History] at .417 (showing language added via amendment); *id.* at .385 (amendment made in response to the examiner's rejection of the claim as "unpatentable over Holmer (US007418606B2) and Leung (US005784588A)"); *id.* at .431-32 (applicant arguing to the examiner that: (i) "current amendments further emphasize the differences between claim 1 and Holmer"; (ii) "compiler" limitations were a "contrast to the techniques of Holmer"; and (iii) then claim 21 (current claim 19) was "allowable for at least all the same reasons" as claim 1).) The presumption of estoppel cannot be overcome at least because Qualcomm cannot show that the rationale for amendments to the "compiler" limitations was no more than tangentially related to the equivalent. *See Lucent Techs. Inc. v. Gateway, Inc.*, No. 02-cv-2060, 2007 WL 925354, at *7 (S. D. Cal. Mar. 6, 2007), *aff'd*, 525 F.3d 1200, 1217-18 (Fed. Cir. 2008) (finding amendments made during prosecution "directly related to the same subject matter and . . . not tangential"); Dkt. 580 [Summary Judgment Order] at 6 (concluding "Qualcomm [had] not met its burden to show the [tangential relation] exception

## III.   APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OF NO WILLFULNESS

To the extent the Court finds that Qualcomm has not waived its arguments regarding willful infringement (*see* Dkt. 636 [Apple Trial Brief] at 21-23; Dkt. 608 [Amended Joint Pretrial Order] at 12), Apple is entitled to judgment as a matter of law no willfulness.  Based on the evidence presented at trial, no reasonable jury could find that Apple's alleged infringement was willful.  As the Supreme Court explained in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1933 (2016), "culpability [for willful infringement] is generally measured against the knowledge of the actor at the time of the challenged conduct."  "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."  *Id.* Whether an accused infringer has reasonable litigation defenses is relevant to whether or not its conduct is "egregious" enough to enhance damages.  *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1363 (Fed. Cir. 2016) (observing that, after *Halo*, "objective reasonableness is one of the relevant factors" in determining whether enhanced damages are warranted).  To show willfulness, a patentee must prove that the alleged infringer acted without a "reasonable basis for believing it had a right to do the acts." *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1565 (Fed. Cir. 1983) ("[M]ore is necessary to support a finding of 'willfulness' than that the infringing acts were not inadvertent. The court must determine that the infringer acted in disregard of the patent, that is, that the infringer had no reasonable basis for believing it had a right to do the acts."); *see also Vulcan Eng'g Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002) ("The tort of willful infringement arises upon deliberate disregard for the property rights of the patentee. … When it is found that the infringer

---

applie[d]" where Qualcomm rewrote the claim and "added the [pertinent] limitation to the claimed invention").

acted without a reasonable belief that its actions would avoid infringement, the patentee has established willful infringement, which may be accompanied by enhanced damages."); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992) ("[T]his court has approved such awards where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful.").

Although, post-*Halo*, reasonable defenses are no longer a *per se* bar to a finding of willfulness, they remain highly relevant to assessing an accused infringer's subjective intent. Here, where Qualcomm has offered **no** evidence of any subjective intent by Apple to infringe any asserted patent claim, and Apple has offered several reasonable defenses to Qualcomm's claims (including defenses that are supported by the record in ITC Investigation No. 337-TA-1065),[4] judgment as a matter of law on the issue of willfulness is appropriate. *See Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06-cv-2433, 2009 WL 10672071, at * 2 (S.D. Cal. Mar. 2, 2009) (granting motion for judgment as a matter of law of no willful infringement where defendant raised "substantial question" about validity of asserted patent); *see also State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1063-64 (Fed. Cir.

---

[4]    Qualcomm successfully moved *in limine* to exclude evidence relating to the outcomes of the companion ITC Investigation No. 1065. At least two of the outcomes from that Investigation are relevant to rebut Qualcomm's willfulness arguments, should the Court determine that those arguments are not waived. First, Qualcomm asserted the same claims of the '936 patent in that Investigation as it does in this case. The Administrative Law Judge determined that Apple does not infringe the asserted claims of the '936 patent, a determination that the ITC has decided not to review, making it a final determination. *Cf. Sleep Number Corp. v. Sizewise Rentals, LLC*, No. ED CV 18-00356, 2018 WL 5263065, at *7 (C.D. Cal. June 26, 2018) (holding that a prior ITC investigation finding infringement permitted an inference of willful infringement in the subsequent district court case). Second, Qualcomm also asserted the '949 patent in the ITC Investigation, but withdrew the patent prior to the hearing. In sum, there are two outcomes that strongly undercut any claim of willfulness against Apple with respect to the '936 and '949 patents.

2003) (upholding trial court's grant of Rule 50 motion on no willful infringement because defendants had "a substantial defense to infringement").

## IV.    APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON QUALCOMM'S DAMAGES CLAIMS

Even if Qualcomm could establish liability—and it cannot for the reasons set forth above—the evidence at trial confirmed that Qualcomm is not entitled to its claimed damages.  Qualcomm has not met its burden of proving damages, and its damages case rests entirely on expert testimony that is premised on unreliable methodologies.  *See Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1318-22 (Fed. Cir. 2010).

For the '936 and '490 patents, the evidence confirmed that Qualcomm's damages theory was built on a series of unreasonable and unsupported steps.  ***First***, Qualcomm's technical experts were not able to reliably determine the power savings purportedly created by the technologies claimed in the asserted patents.   For the '490 patent, Qualcomm's expert Dr. Baker admitted that he had not performed any testing of Apple's actual products (Trial Tr. [Baker] at 531:1-7 ("A. One might ask why ***I didn't just look at the Apple phones directly and make measurements on the Apple phones***, and to do that I would need to be able to enable disable the downlink/uplink synchronization, and I didn't have access to the software, so I had to use these documents to guide me in what would be a reasonable use of the power in the phone") and had instead looked at Qualcomm's test platform.  (*Id.* at 530:24-531:1.)  Further, to determine the component power usage figures, Dr. Baker relied on studies that did not include Apple iPhones.  (*Id.* at 532:6-21.)

For the '936 patent, Dr. Annavaram provided no evidence that the benchmark test results from PX-726, which are the basis of his opinion that using the accused conversion instructions reduces the number of required instructions (and power) by an average of 18.5%, are representative of the average use of an iPhone.  (*Id.*

18        Case No. 3:17-CV-01375-DMS-MDD

[Annavaram] at 657:24-659:10.)  In addition, Dr. Annavaram conceded that he had no basis to dispute that Apple had enabled constant hoisting (*id.* at 719:5-10), and that if data is hoisted into the state load program as 16-bit data, there is no need for the MFUNI conversion instruction.  (*Id.* at 716:3-10.)  But his calculations failed to account for constant hoisting.  Further, Dr. Annavaram used Dr. Baker's unreliable determination that the GPU accounts for 14% of power consumption in the accused iPhones.  (*Id.* at 660:1-8.)  Finally, for his estimate that 59% of the shader power is consumed by the GPU, Dr. Annavaram relied on an analysis of Qualcomm's products, not the accused iPhones.  (*Id.* at 660:9-19, 706:5-707:6, 706:22-707:6 ("Q. Yet despite all that, instead of using Apple information in this chart, you used information that came from a document that was talking about Qualcomm products, not Apple products; is that right, sir?  A. Yes.").)

*Second*, Qualcomm's survey expert, Jeffrey Prince, Ph.D., used unreliable methods to attempt to calculate the value of additional battery life.  Dr. Prince started with a survey from another case that was not designed for the three asserted patents.  (*Id.* [Prince] at 759:19-760:14.)  Thus, Dr. Prince sought to quantify the value of two extra hours of "heavy use" of a smartphone, which is unrelated to the '949 and '490 patents and not apportioned to the battery life improvements Qualcomm claims are offered by those patents.  (*See id.* at 761:24-762:10; 768:7-19, 771:8-773:5 ("Q. And the bottom line, sir, is you didn't test the features in your survey against of all of these other features, did you?  A. I didn't need to.  Q. But you didn't do it.  A. I did not."); *id.* at 836:17-23.)  Dr. Prince's survey also tested only seven attributes of his hypothetical phones, excluding many significant features of the accused devices.  (*Id.* at 770:6-773:5 ("Q. We can go on and on.  There are [sic] many, many other features in the iPhone beyond the ones that you tested, correct?  A. That's right.").)  That narrow focus, coupled with the lack of a "none of the above" option (allowing survey not to select a hypothetical phone) led to unreliable results, such as that consumers

would be willing to pay $112.97 more for airplane mode—even where there are much less expensive phones offering that feature.  (*Id.* at 768:20-21 ("Q. And you did not include a none-of-the-above, right?   A. That's right."); *id.* at 769:3-10, 777:16-778:12.)

**Third**, Dr. Kennedy relied on Dr. Annavaram's and Dr. Baker's faulty power savings analysis and Dr. Prince's flawed survey results to reach unreliable damages conclusions.  (*Id.* [Kennedy] at 901:24-902:3 ("Q. Sir, you created a formula for your hypothetical negotiation directed to power savings, correct?   A. Created a formula.  The power savings come directly from the technical experts."); *id.* at 904:6-11, 905:2-10, 912:24-913:4, 913:24-914:7.)  Moreover, Dr. Kennedy used a figure of thirteen cents per minute of battery life based on Dr. Prince's survey (*id*. at 916:3-16), but Dr. Prince offered no opinion supporting the value of one minute of battery life.  (*Id.* [Prince] at 774:14-16.)

For the '949 patent, Dr. Kennedy based his damages on his estimate of the cost of a 32 MB NAND flash component.  (*Id.* [Kennedy] at 922:7-11.)  But to derive this cost estimate, he relied on a single retail price from Arrow.com, even though he conceded that Apple would not have purchased from Arrow.com.  (*Id*. at 925:24-926:7, 926:17-18 ("Q. And you used a website that Apple wouldn't use, correct?  A. Correct.").)

As to all three patents, Dr. Kennedy's conclusion that the parties would have agreed to a 50/50 split is without support of any real-world evidence.  (*Id*. at 927:11-13, 928:9-18, 929:19-21, 930:24-931:10.)  Further, Qualcomm has presented no evidence that Apple would have agreed to a running royalty structure for patents such as those asserted here.  Dr. Kennedy identified no evidence that Apple has ever entered into a running royalty agreement for non-standard essential patents such as the patents asserted in this case.  (*Id*. at 933:12-16.)  To the contrary, the evidence is that Apple's practice has been to enter into lump sum agreements.  (*Id*. at 933:17-

934:5, 934:25-935:13, 935:20-936:7, 936:8-11 ("Q. And Apple, of course, in this hypothetical negotiation of yours would be bringing their lump sum preference to the table, correct?  A. Sure."); PX-2758 [Whitt Dep.] at 19:3-15, 65:20-66:7 (played at Trial Tr. 729:4-5).)

Because Qualcomm's damages claims are speculative and based entirely on unreliable expert testimony, judgment as a matter of law should enter that Qualcomm is not entitled to its claimed damages.

## V.    CONCLUSION

For all the foregoing reasons, Apple respectfully requests that the Court grant judgment as a matter of law in Apple's favor on the issues of non-infringement, willfulness, and damages.

Dated:  March 11, 2019                    Respectfully submitted,

By: /s/ *Nina S. Tallon*_____
Nina S. Tallon, DC Bar No. 479481
*pro hac vice*, nina.tallon@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Phone: 202-663-6000 / Fax: 202-663-6363

Mark D. Selwyn, SBN 244180,
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Phone: 650-858-6000 / Fax: 650-858-6100

William F. Lee, MA Bar No. 291960
*pro hac vice*, william.lee@wilmerhale.com
Joseph J. Mueller, MA Bar No. 647567
*pro hac vice*, joseph.mueller@wilmerhale.com
Timothy Syrett, MA Bar No. 663676
*pro hac vice*, timothy.syrett@wilmerhale.com
Richard W. O'Neill, pro hac vice,
richard.o'neill@wilmerhale.com
Bradley M. Baglien, pro hac vice,
bradley.baglien@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: 617-526-6000 / Fax: 617-526-5000

Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Frank Albert, SBN 247741, albert@fr.com
Joanna M. Fuller, SBN 266406, jfuller@fr.com
Katherine D. Prescott, SBN 215496
prescott@fr.com
Betty H. Chen, SBN 24056720
betty.chen@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Phone: 650-839-5070 / Fax: 650-839-5071

Ruffin B. Cordell, DC Bar No. 445801

1      *pro hac vice*, cordell@fr.com
       Lauren A. Degnan, DC Bar No. 452421
2      *pro hac vice*, degnan@fr.com
       FISH & RICHARDSON P.C.
3      1000 Maine Avenue, S.W. Suite 1000
       Washington, D.C. 20024
4      Phone: 202-783-5070 / Fax: 202-783-2331
5
       William A. Isaacson, DC Bar No. 414788
6      *pro hac vice*, wisaacson@bsfllp.com
       Karen L. Dunn, DC Bar No. 1002520
7      *pro hac vice*, kdunn@bsfllp.com
       BOIES, SCHILLER & FLEXNER LLP
8      1401 New York Avenue, N.W.
       Washington, DC 20005
9      Phone: 202-237-2727 / Fax: 202-237-6131
10
       Benjamin C. Elacqua, TX SBN 24055443
11     *pro hac vice*, elacqua@fr.com
       John P. Brinkmann, TX SBN 24068091
12     *pro hac vice*, brinkmann@fr.com
       FISH & RICHARDSON P.C.
13     One Houston Center, 28th Floor
       1221 McKinney
14     Houston, TX 77010
       Phone: 713-654-5300 / Fax: 713-652-0109
15
16     Brian P. Boyd, GA SBN 553190
       *pro hac vice*, bboyd@fr.com
17     FISH & RICHARDSON P.C.
       1180 Peachtree St., NE, 21ST Floor
18     Atlanta, GA 30309
       Phone: 404-892-5005 / Fax: 404-892-5002
19
20     *Attorneys for Apple Inc.*
21
22
23
24
25
26
27
28

1

**CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that a true and correct copy of the above and

3  foregoing document has been served on March 11, 2019 to all counsel of record

4  who are deemed to have consented to electronic service via the Court's CM/ECF

5  system per Civil Local Rule 5.4.  Any other counsel of record will be served by

6  electronic mail, facsimile and/or overnight delivery.

7        Executed on March 11, 2019 at San Diego, CA.

8

9                                */s/ Nina S. Tallon*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28